**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YIMIN HUANG, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNDIAL GROWERS INC., TORSTEN KUENZLEN, JAMES KEOUGH, EDWARD HELLARD, GREG MILLS, GREGORY TURNBULL, LEE TAMKEE, ELIZABETH CANNON, COWEN AND COMPANY, LLC, BMO NESBITT BURNS INC., RBC DOMINION SECURITIES INC., BARCLAYS CAPITAL CANADA INC., CIBC WORLD MARKETS INC., and SCOTIA CAPITAL INC.,<br><br>    Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yimin Huang ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC")

1

filings by Sundial Growers Inc. ("Sundial" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1.    Plaintiff brings this securities class action on behalf of persons who purchased or otherwise acquired Sundial securities pursuant and/or traceable to Sundial's Registration Statement (defined below) issued in connection with Sundial's August 1, 2019 initial public stock offering (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

2.    In August 2019, Defendants held the IPO, issuing approximately 11 million shares of common stock to the investing public at $13 per share, pursuant to the Registration Statement.

3.    By the commencement of this action, Sundial's shares trade significantly below its IPO price. As a result, investors were damaged.

## JURISDICTION AND VENUE

4.    The claims alleged herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 771(a)(2) and 77o.

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 22 of the Securities Act (15 U.S.C. §77v).

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District. Pursuant to the Underwriter Agreement (defined below), the Southern District of New York is an appropriate venue.

7.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of Sundial securities in this District.

### PARTIES

8.      Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased Sundial shares pursuant and/or traceable to the IPO and was damaged thereby.

9.      Defendant Sundial is incorporated in the Province of Alberta, Canada and maintains its principal executive offices in Calgary in Alberta, Canada. Sundial purports to produce and market craft pioneering cannabis brands to "Heal, Help and Play." Sundial operates five facilities, including two facilities in Alberta, Canada and three in the United Kingdom, and as of August 2019, was building a third Canadian facility in British Columbia. Sundial's shares are listed on NASDAQ under the ticker symbol "SNDL." The Company's registered agent for service of process in the U.S. is Corporation Service Company, 1180 Avenue of the Americas, Suite 210, New York, NY 10036- 8401. The transfer agent and registrar for Sundial's common stock in the U.S. is Equity Stock Transfer, LLC at its principal office in New York, New York.

10.     Defendant Torsten Kuenzlen ("Kuenzlen") is, and was at the time of the IPO, a member of Sundial's Board of Directors (the "Board") and the Company's Chief Executive Officer ("CEO"). At the time of the IPO, Kuenzlen owned approximately 3.7 million Sundial shares, or 4.94% of the Company's common stock. Defendant Kuenzlen signed or authorized the signing and issuance of the Registration Statement.

3

11.     Defendant James Keough ("Keough") is, and was at the time of the IPO, the Chief Financial Officer ("CFO") of Sundial. Defendant Keough reviewed, contributed to, and signed the Registration Statement. Defendant Keough signed or authorized the signing and issuance of the Registration Statement.

12.     Defendant Edward Hellard ("Hellard"), is, and was at the time of the IPO, Sundial's Executive Chairman of the Company's Board. At the time of the IPO, Hellard owned approximately 24.5 million Sundial shares, or 32.3% of the Company's common stock. Defendant Hellard signed or authorized the signing and issuance of the Registration Statement.

13.     Defendant Greg Mills ("Mills") is, and was at the time of the IPO, the Non-Executive Chairman of the Company's Board. Defendant Mills signed or authorized the signing and issuance of the Registration Statement.

14.     Defendant Gregory Turnbull ("Turnbull") is, and was at the time of the IPO, a member of the Company's Board. Defendant Turnbull signed or authorized the signing and issuance of the Registration Statement.

15.     Defendant Lee Tamkee ("Tamkee") is, and was at the time of the IPO, a member of the Company's Board. Defendant Tamkee signed or authorized the signing and issuance of the Registration Statement.

16.     Defendant Elizabeth Cannon ("Cannon") is, and was at the time of the IPO, a member of the Company's Board. Defendant Cannon signed or authorized the signing and issuance of the Registration Statement.

17.     The Defendants named in ¶¶10-16 are referred to herein as the "Individual Defendants." The Individual Defendants each signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the

4

underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Sundial investors, all motivated by their own and the Company's financial interests.

18.     Defendant Cowen and Company, LLC ("Cowen") is an investment banking firm that acted as an underwriter of Sundial's IPO, helping to draft and disseminate the IPO documents. Cowen's principal place of business is located at 599 Lexington Avenue, New York, NY 10022. Cowen's registered agent for service of process in New York is Cogency Global Inc., 10 East 40th Street, 10th Floor, New York, NY 10016.

19.     Defendant BMO Nesbitt Burns Inc. ("BMO") is an investment banking firm that acted as an underwriter of Sundial's IPO, helping to draft and disseminate the IPO documents. BMO's principal place of business is located at 100 King Street West, Toronto, Ontario M5X 1H3, Canada.

20.     Defendant RBC Dominion Securities Inc. ("RBC") is an investment banking firm that acted as an underwriter of Sundial's IPO, helping to draft and disseminate the IPO documents. RBC's principal place of business is located at 200 Bay Street, Suite 400, South Tower, Toronto, Ontario M5J 2W7, Canada.

21.     Defendant Barclays Capital Canada Inc. ("Barclays") is an investment banking firm that acted as an underwriter of Sundial's IPO, helping to draft and disseminate the IPO documents. Barclays' principal place of business is located at 333 Bay Street, Toronto, ON M5H 2R2, Canada.

22.     Defendant CIBC World Markets Inc. ("CIBC") is an investment banking firm that acted as an underwriter of Sundial's IPO, helping to draft and disseminate the IPO documents.

CIBC's principal place of business is 161 Bay Street, Brookfield Place, Toronto, Ontario M5J 2S8, Canada.

23.     Defendant Scotia Capital Inc. ("Scotia") is an investment banking firm that acted as an underwriter of Sundial's IPO, helping to draft and disseminate the IPO documents. Scotia's principal place of business is 40 King Street West Scotia Plaza 68th Floor Toronto, ON M5W 2X6, Canada.

24.     Cowen, BMO and RBC were joint book-running managers or lead underwriters for the IPO. Barclays and CIBC were bookrunners and Scotia was a co-manager for the IPO.

25.     Defendants Cowen, BMO, RBC, Barclays, CIBC and Scotia are referred to herein as the "Underwriter Defendants."

26.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

    (a)     The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Sundial, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

    (b)     The Underwriter Defendants also demanded and obtained an agreement from Sundial and the Individual Defendants that Sundial would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Sundial had purchased millions of dollars in directors' and officers' liability insurance.

    (c)     Representatives of the Underwriter Defendants also assisted Sundial and the

Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Sundial, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning Sundial's most up-to-date operational and financial results and prospects.

(d)    In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Sundial's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Sundial securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about Sundial would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Sundial's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Sundial's existing problems as detailed herein.

(e)    The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

27.    Sundial and the Underwriter Defendants entered into an underwriting agreement, dated July 31, 2019, with respect to the shares being offered in the IPO (the

"Underwriting Agreement"). Subject to the terms and conditions of the underwriting agreement, each of the Underwriter Defendants severally agreed to purchase from Sundial the number of shares set forth opposite its name below at a price of US$13.00 per share payable in cash on the closing date of the IPO:

| Underwriter | Number of Shares |
|---|---|
| Cowen and Company, LLC | 3,575,000 |
| BMO Nesbitt Burns Inc. | 3,135,000 |
| RBC Dominion Securities Inc. | 1,760,000 |
| Barclays Capital Canada Inc. | 990,000 |
| CIBC World Markets Inc. | 990,000 |
| Scotia Capital Inc. | 550,000 |
| Total | 11,000,000 |

28.     Sundial, the Individual Defendants, and the Underwriter Defendants are referred to collectively as "Defendants."

**Materially False and Misleading
Statements Issued During the Class Period**

29.      Sundial purports to be a producer and marketer of premium cannabis for the adult-use market.

30.     On or about July 30, 2019, Sundial filed with the SEC an amended registration statement on Form F-1 (Registration No. 333-232573), which was signed by the Individual Defendants and was declared effective on August 1, 2019 (the "Registration Statement").

31.     On August 1, 2019, Sundial filed with the SEC the final prospectus for the IPO of common stock on Form 424B4 (the "Prospectus"), which forms part of the Registration Statement, and sold 11 million shares of Sundial common stock to the investing public at $13 per share for gross proceeds of approximately $134.4 million, excluding $8.58 million in commissions paid to the Underwriter Defendants.

32.     On August 1, 2019, the Company's shares were listed for trading on NASDAQ in U.S. dollars under the ticker symbol "SNDL."

33.     On August 1, 2019, Defendant Kuenzlen rang the opening bell on the day of the IPO in New York and Company representatives, including Defendants Hellard, Keough and Cannon, visited the NASDAQ MarketSite in Times Square in New York City.

34.     The Registration Statement represented that Sundial was a producer of "high-quality cannabis in small batches" and that "we produce high-quality, consistent cannabis" and that the Company's operating model results in "strong customer loyalty."

35.     These representations were untrue statements of material fact because, before the IPO, due to material quality issues, Zenabis Global Inc. ("Zenabis"), a Sundial customer, had returned or rejected a total of 554 kg of cannabis (approximately 1,221 pounds) to Sundial. Indeed, the cannabis shipped by Sundial to Zenabis was low quality and was returned to Sundial because it contained visible mold, parts of rubber gloves and other non-cannabis material.

36.     Moreover, the Registration Statement purported to warn investors about risks of failure of Sundial's quality control systems, contamination of, or damage to, its cannabis inventory, while failing to disclose that a material failure had already occurred:

> **_Failure in our quality control systems may adversely impact our sales volume, market share and profitability._**
>
>     The quality and safety of our products are critical to the success of our business and operations. As such, it is imperative that our (and our service providers') quality control systems operate effectively and successfully. Quality control systems can be negatively impacted by the design of the quality control systems, the quality training program, and adherence by employees to quality control guidelines. Although we strive to ensure that all of our service providers have implemented and adhere to high caliber quality control systems, we could experience a significant failure or deterioration of such quality control systems. If, as a result of a failure in our (or our service providers') quality control systems, contamination of, or damage to, our inventory or packaged products occurs, we may incur significant costs in replacing the inventory and recalling products. We

may be unable to meet customer demand and may lose customers who have to purchase alternative brands or products. In addition, consumers may lose confidence in the affected products. A loss of sales volume from a contamination event may occur, and such a loss may affect our ability to supply our current customers and to recapture their business in the event they are forced to switch products or brands, even if on a temporary basis. We may also be subject to legal action as a result of a contamination, which could result in negative publicity and affect our sales. During this time, our competitors may benefit from an increased market share that could be difficult and costly to regain.

37.     These representations in the Registration Statement contained untrue statements of material fact because, before the IPO, Sundial's quality control systems had already been negatively impacted as Sundial had already experienced a material failure or deterioration of such quality control systems, and Sundial's quality control systems failed to operate effectively and successfully. Indeed, at the time of the IPO, Sundial failed to disclose that: (1) Sundial failed to supply saleable cannabis in line with contractual obligations to Zenabis; and (2) due to material quality issues, Zenabis had to return or reject a total of 554 kg of cannabis from Sundial, valued at approximately U.S. $1.9 million (C$2.5 million).

38.     The Registration Statement represented the following concerning contingencies as of December 31, 2018, while failing to disclose material facts concerning contingencies relating to Sundial's supply agreement with Zenabis had occurred at the time of the IPO:

**Contingencies**
                                        *   *   *
We have entered into several supply agreements to provide dried cannabis and cannabis products to certain other licensed producers. The contracts require the provision of various amounts of dried cannabis on or before certain dates. In the fiscal year ended December 31, 2018, we recorded $3.3 million in expenses resulting from a settlement, litigation reserve and penalty associated with our non-delivery of products under certain of these agreements within the agreed time frame.

39.     These representations in the Registration Statement contained untrue statements of material fact because Sundial failed to disclose that at the time of the IPO that: (1) Sundial

failed to supply saleable cannabis in line with contractual obligations to Zenabis; and (2) due to material quality issues, Zenabis had to return or reject a total of 554 kg of cannabis to Sundial, valued at approximately U.S. $1.9 million (C$2.5 million).

40. On August 16, 2019, *Marketwatch* published an article that stated, in part, that the "newest cannabis company on Wall Street, Sundial Growers Inc., sold a half ton of pot that was returned by corporate buyer Zenabis Global Inc. because it contained visible mold, parts of rubber gloves and other non-cannabis material, according to people familiar with the matter. The attempted sale would be the equivalent of 10% of Sundial's total second-quarter cannabis sales of five metric tons. The batch of cannabis would be worth roughly C$2.5 million ($1.9 million), assuming a price of C$5 per gram."

41. The *Marketwatch* article continued to state that the Company "included a number of risks around inventory spoilage in its IPO filing but not did not include a reference to a half ton of returned cannabis. Sundial did not mention the half-ton return during a road show presentation in Toronto, according to one investor who heard the pitch. In the IPO filing and its quarterly-earnings filing with the Securities and Exchange Commission, the company disclosed about $3.3 million in penalties for not delivering cannabis as promised to partners; those contingencies were from 2018."

42. Since the IPO, and as a result of the disclosure of material adverse facts omitted from Sundial's Registration Statement, Sundial's stock price has fallen substantially below its IPO price, damaging Plaintiff and Class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action on behalf of all those who purchased Sundial securities pursuant and/or traceable to the Registration Statement (the "Class").

Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sundial or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)      whether Defendants violated the Securities Act;

b)      whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

c)      to what extent the members of the Class have sustained damages and the proper

measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as

a class action.

## COUNT I
## Violations of Section 11 of the Securities Act Against All Defendants

49.     Plaintiff incorporates all the foregoing by reference.

50.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on

behalf of the Class, against all Defendants.

51.     The Registration Statement contained untrue statements of material facts, omitted

to state other facts necessary to make the statements made not misleading, and omitted to state

material facts required to be stated therein.

52.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and

omissions.

53.     None of the Defendants named herein made a reasonable investigation or

possessed reasonable grounds for the belief that the statements contained in the Registration

Statement were true and without omissions of any material facts and were not misleading.

54.     By reason of the conduct herein alleged, each Defendant violated or controlled a

person who violated §11 of the Securities Act.

55.     Plaintiff acquired Sundial securities pursuant to the Registration Statement.

56.     At the time of their purchases of Sundial securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

57.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT II
## Violations of Section 12(a)(2) of the Securities Act Against All Defendants

58.     Plaintiff incorporates all the foregoing by reference.

59.     By means of the defective Prospectus, Defendants promoted, solicited, and sold Sundial securities to Plaintiff and other members of the Class.

60.     The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased Sundial securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

61.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired Sundial securities.

62. By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Sundial securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

63. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT III
## Violations of Section 15 of the Securities Act Against the Individual Defendants

64. Plaintiff incorporates all the foregoing by reference.

65. This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

66. The Individual Defendants were controlling persons of Sundial by virtue of their positions as directors or senior officers of Sundial. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of Sundial. The Company controlled the Individual Defendants and all of Sundial's employees.

67. Sundial and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or

authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

68.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment and relief as follows:

A.     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

B.     awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

C.     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: September 25, 2019          **THE ROSEN LAW FIRM, P.A.**

By:/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com


*Counsel for Plaintiff*