UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YIMIN HUANG, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:19-cv-08913-ALC |
| Plaintiff, | CLASS ACTION |
| v. | |
| SUNDIAL GROWERS INC., TORSTEN KUENZLEN, JAMES KEOUGH, EDWARD HELLARD, GREG MILLS, GREGORY TURNBULL, LEE TAMKEE, ELIZABETH CANNON, COWEN AND COMPANY, LLC, BMO NESBITT BURNS INC., RBC DOMINION SECURITIES INC., BARCLAYS CAPITAL CANADA INC., CIBC WORLD MARKETS INC., and SCOTIA CAPITAL INC., | |
| Defendants. | |
| DANIEL GULACSY, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:19-cv-10157-ALC |
| Plaintiff, | CLASS ACTION |
| v. | |
| SUNDIAL GROWERS INC., TORSTEN KUENZLEN, JAMES KEOUGH, EDWARD HELLARD, GREG MILLS, GREGORY TURNBULL, LEE TAMKEE, and ELIZABETH CANNON, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF RICARDO TRISTAN'S MOTION TO CONSOLIDATE RELATED CASES, APPOINT LEAD PLAINTIFF AND APPROVE SELECTION OF LEAD COUNSEL**

1212976 V1

## I.    INTRODUCTION

Both of the above-referenced securities class actions pending before this Court are brought on behalf of persons who purchased or otherwise acquired Sundial Growers Inc. ("Sundial" or the "Company") securities pursuant and/or traceable to Sundial's Registration Statement (defined below) issued in connection with Sundial's August 1, 2019 initial public stock offering (the "IPO" or "Offering").  The cases commonly seek to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act"). Accordingly, Movant Ricardo Tristan ("Mr. Tristan" or "Movant") hereby moves to consolidate the two above-captioned securities class actions, which present common questions of fact and law such that consolidation will promote judicial economy.

In addition, Mr. Tristan moves for appointment as lead plaintiff.  The PSLRA governs the selection of the lead plaintiff in class actions asserting claims under the federal securities laws and requires a court to appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  "The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the one who: (1) 'filed the complaint or made a motion in response to a notice,' (2) 'has the largest financial interest in the relief sought by the class,' and (3) 'otherwise satisfies the requirements of [Federal Rule of Civil Procedure] Rule 23.'  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc)." *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (Carter, J.).

Here, Ricardo Tristan ("Mr. Tristan" or "Movant"), a Certified Public Accountant who works as a Finance Accountant for an energy trading company based in Houston, Texas, respectfully submits that he is the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  Mr. Tristan's motion is timely, and his losses of

approximately $59,581 in connection with his purchases of Sundial securities in connection with the IPO represent the largest known financial interest in the relief sought by the class. *See* Declaration of Reed Kathrein in Support of the Motion of Mr. Tristan for Consolidation of Related Cases, Appointment as Lead Plaintiff and Approval of His Selection of Counsel ("Kathrein Decl."), Exs. A & B. In addition to asserting the largest financial interest, Mr. Tristan satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the class and because he will fairly and adequately represent the class. *See infra* Section III.3.a., b.

Finally, Mr. Tristan moves for approval of his choice of counsel, Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), which has the requisite experience, resources and track record to represent the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## II.     FACTUAL BACKGROUND

Sundial, based in Alberta, Canada, is engaged in producing and marketing of cannabis for the adult-use market. Among its leading products are Lemon Riot, Daydream, Zen Berry, Twilight, Tropical Bliss, Pillow Talk, and Citrus Punch.

On or about July 30, 2019, Sundial filed an amended registration statement on Form F-1, which was declared effective on August 1, 2019. Huang Compl., ¶30, ECF No. 1; Gulacsy Compl., ¶20, ECF No. 1. On August 1, 2019, Sundial filed with the SEC the final prospectus for the IPO of common stock on Form 424B4 (the "Prospectus"), which forms part of the Registration Statement, and sold 11 million shares of Sundial common stock to the investing public at $13 per share for gross proceeds of approximately $134.4 million, excluding $8.58 million in commissions paid to the Underwriter Defendants. Huang Compl., ¶31; Gulacsy

Compl., ¶22.  Thereafter, the Company's shares were listed for trading on NASDAQ in U.S. dollars under the ticker symbol "SNDL."  Huang Compl., ¶32; Gulacsy Compl., ¶23.

As alleged in the Actions, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects in the Registration Statement.  Huang Compl., ¶¶34-42; Gulacsy Compl., ¶¶25-30.  Specifically, the Registration Statement represented that Sundial was a producer of "high-quality cannabis in small batches" and that "we produce high-quality, consistent cannabis" and that the Company's operating model results in "strong customer loyalty."  Huang Compl., ¶34; Gulacsy Compl., ¶25.  However, the Registration Statement failed to disclose to investors that due to material quality issues, Zenabis Global Inc. ("Zenabis"), a Sundial customer, had returned or rejected a total of 554 kg of cannabis (approximately 1,221 pounds) to Sundial.  Huang Compl., ¶35; Gulacsy Compl., ¶26.  The complaints allege that the cannabis shipped by Sundial to Zenabis was returned to Sundial because it contained visible mold, parts of rubber gloves and other non-cannabis material.  *Id.*   Moreover, the complaints allege that the Registration Statement's risks warnings concerning failures that *may* occur in Sundial's inventory or contingencies relating to the Company's supply agreements with major customers were misleading since material failures in the Company's inventory had already occurred invoking the supply agreement contingencies.  Huang Compl., ¶38; Gulacsy Compl., ¶29.

As alleged in the complaints, the market learned the truth on August 16, 2019, when *Marketwatch* reported that Sundial had sold a half ton of pot that was returned by corporate buyer Zenabis Global Inc. because it contained visible mold, parts of rubber gloves and other non-cannabis material, according to people familiar with the matter.  Huang Compl., ¶40;

Gulacsy Compl., ¶31.  *Marketwatch* reported that the attempted sale would be the equivalent of 10% of Sundial's total second-quarter cannabis sales of five metric tons or roughly C$2.5 million ($1.9 million), assuming a price of C$5 per gram."  *Id.*  The *Marketwatch* article noted that the Company had "included a number of risks around inventory spoilage in its IPO filing but not [*sic*] did not include a reference to a half ton of returned cannabis."  Huang Compl., ¶41; Gulacsy Compl., ¶32.  The *Marketwatch* article further observed that the Registration Statement did not disclose the Zenabis shipment as a contingency.  *Id.*

The Complaints allege that since the IPO, and as a result of the disclosure of material adverse facts omitted from Sundial's Registration Statement, Sundial's stock price has fallen substantially below its IPO price of $13, damaging Plaintiff and Class members.  Huang Compl., ¶42; Gulacsy Compl., ¶33.

### III.   ARGUMENT

**A.   The Related Actions Should Be Consolidated**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011).  To date, Movant is aware of the two above-captioned Related Actions in this District against Defendants.  Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact.  *Id.*; *Stone v. Agnico-Eagle Mines, Ltd.*, 280 F.R.D. 142, 144 (S.D.N.Y. 2012) (consolidating securities class actions); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (same); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  Here the Related Actions are based upon the same alleged misconduct, name the

same Defendants, allege the same class, and assert the same claims.  Consolidation, therefore, is appropriate.  *Id*.

**B.      Movant Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA requirements are both procedural and substantive.  *Id*.  The Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be ***most capable of adequately representing*** the interests of class members in accordance with this subparagraph.

15 U.S.C. § 77z-1(a)(3)(B)(i) and 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

The PSLRA provides that the Court shall adopt a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
>
> 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  S*ee also*

*VimpelCom*, 151 F. Supp. 3d at 475.  Movant meets these requirements and should, therefore, be appointed as Lead Plaintiff.

**1.      Movant's Motion Is Timely**

The pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  15 U.S.C. § 78u-4(a)(3)(A)(i).  The notice published in this action on September 25, 2019

- 5 -

advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by the lead plaintiff deadline.  *See* Published Notice, Kathrein Decl., Exhibit C.  Because Movant filed the motion within sixty days of publication of the notice of action, the motion is timely.

### 2.    Movant Has The Largest Financial Interest In The Relief Sought By The Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, Movant suffered substantial losses of approximately $59,581 on his purchases of Sundial securities in connection with the IPO.  *See* Kathrein Decl., Exs. A & B.  Specifically, Movant purchased 6,500 shares of Sundial common stock in the IPO, retaining all of those shares through the present, at a net cost of $84,565.  *See id.*  To the best of Mr. Tristan's knowledge, there are no other applicants seeking Lead Plaintiff appointment that have a larger financial interest in this litigation.

### 3.    Movant Satisfies The Requirements Of Rule 23

In addition to possessing a significant financial interest, Movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  "When moving for appointment as lead plaintiff, 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'"  *VimpelCom*, 151 F. Supp. 3d at 477, quoting *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y.2010).

### a.      Mr. Tristan's Claims Are Typical

"The typicality requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.*, quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Here, Mr. Tristan, like other putative class members, purchased Sundial shares based on materially false and misleading statements in the Registration Statement and suffered financial loss as a result.  Thus, Mr. Tristan's claims "arise[ ] from the same course of events" as those of other class members and he will "make[ ] similar legal arguments to prove the defendant[s'] liability" under the Securities Exchange Act, and thus, it satisfies the typicality requirement.  *Id*.

### b.      Mr. Tristan Is Adequate

"'The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *VimpelCom*, 151 F. Supp. 3d at 477-78, quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Here, Mr. Tristan has retained Hagens Berman as its lead counsel, competent and experienced counsel, based on its past experience in securities fraud class actions.  Kathrein Decl., Ex. D (describing securities fraud class actions in which the firm served as lead counsel or co-lead counsel).  Further, Mr. Tristan's "significant financial interest should ensure vigorous advocacy on behalf of the class." *Id*., quoting *Foley*, 272 F.R.D. at 131.  Finally, there is no conflict between Mr. Tristan and the members of the class.  Therefore, Mr. Tristan makes the requisite

preliminary showing that the adequacy and typicality requirements have been met, and it is the presumptive lead plaintiff.

**C.      The Court Should Approve Movant's Selection Of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  "The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  *Peters v. Jinkosolar Holding Co., Ltd.*, No. 1:11-cv-07133-JPO, 2012 WL 946875, at *12 (S.D.N.Y. Mar. 19, 2012) (*quoting Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)).

Courts rely on counsel's past experience when determining whether the lead plaintiff's selection is appropriate.  *See, e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) (relying on a declaration detailing counsel's extensive experience with complex class action litigations); *see also Peters*, 2012 WL 946875, at *12 (approving movant's choice of counsel upon law firms' submission of "resumes demonstrating extensive experience and success prosecuting cases similar to this one").

Movant has selected Hagens Berman to serve as Lead Counsel for the proposed Class. Hagens Berman has previously been appointed as lead counsel and has a demonstrated ability to work in an efficient fashion in the class's best interests.  *See* Hagens Berman Firm Résumé, Kathrein Decl., Ex. D.  Hagens Berman is one of the country's leading securities litigation firms, advising clients in both individual and class action cases.  *See* Kathrein Decl., Ex. D at p. 31. Hagens Berman is currently serving as Lead Counsel or Co-lead Counsel in several high-profile securities class actions.  *See* Kathrein Decl., Ex. D at p. 32.  Thus, the Court may be assured that

Hagens Berman "has the requisite experience necessary to serve as lead counsel, and thus will be able to effectively prosecute the consolidated action." *Glavan v. Revolution Lighting Technologies, Inc.*, No. 1:19-cv-04252-JPO, 2019 WL 3406582, at *5 (July 29, 2019 S.D.N.Y.) (quoting *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014)).

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Mr. Tristan as Lead Plaintiff pursuant to the PSLRA; (3) approve Mr. Tristan's selection of Hagens Berman to serve as Lead Counsel for the putative Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: November 25, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Jason A. Zweig*
    JASON A. ZWEIG, JZ-8107

555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman

HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Jason A. Zweig*
JASON A. ZWEIG
