**SHEARMAN & STERLING LLP**

599 Lexington Avenue
New York, NY 10022-6069
+1.212.848.4000

ahakki@shearman.com
212.848.4924

April 9, 2020

<u>Via ECF</u>
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007

Re:  <u>*In re Sundial Growers Inc. Securities Litigation*, Master File No. 1:19-cv-08913-ALC</u>

Dear Judge Carter:

    We write on behalf of all defendants in accordance with Your Honor's Individual Practices to identify the bases for our anticipated motion to dismiss the Amended Consolidated Complaint ("ACC") and to respectfully request a pre-motion conference.[1]

    Sundial, a Canada-based producer of cannabis products, launched its initial public offering ("IPO") on August 1, 2019.  Thereafter, publicly traded Canadian cannabis companies have faced substantial headwinds as the industry has suffered for reasons having nothing to do with the allegations in this case.  Impermissibly attempting to deploy the federal securities laws to insure against share price declines, however, plaintiffs purport to assert class action claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").[2]  The ACC fails to state a claim for at least the following reasons.

    ***The ACC Does Not Identify Any Actionable Misstatement Or Omission.***  Plaintiffs allege that the IPO offering documents "omitted material and persistent quality control problems that had resulted in material returns."  ACC ¶ 9.  This claim primarily relies on conclusory allegations regarding the purported dissatisfaction of a single Sundial customer, Zenabis Global

---

[1]  We represent defendant Sundial Growers Inc. ("Sundial") and the individual defendants in the above-referenced action.  The individual defendants consist of Torsten Kuenzlen, James Keough, Edward Hellard, Greg Mills, Gregory Turnbull, Lee Tamkee, and Elizabeth Cannon, all of whom are Canadian.  The underwriter defendants, which are separately represented, consist of Cowen and Company, LLC, BMO Nesbitt Burns Inc., RBC Dominion Securities Inc., Barclays Capital Canada Inc., CIBC World Markets Inc., and Scotia Capital Inc.  Pursuant to Section 2.A. of the Court's Individual Practices, this request for a pre-motion conference stays the deadline for defendants to move or answer.

[2]  Three substantially similar cases were filed in New York State Supreme Court in New York County and consolidated before Justice Barry Ostrager.  Defendants' motion to dismiss the consolidated amended complaint is pending.

SHEARMAN.COM

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the state of Delaware, which laws limit the personal liability of partners.

Inc. ("Zenabis"), which allegedly returned product to Sundial and terminated its supply agreement. ACC ¶¶ 5, 46-48, 63-65. But this single alleged instance cannot serve as the basis for Securities Act claims because, as courts have recognized, "some level of customer discontent is a fact of life" and the "occasional disgruntled customer" does not indicate larger damage to a company's business. *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 120 (S.D.N.Y. 2010). Moreover, the securities laws do not require disclosure of an adverse event before it is investigated and determined. *See, e.g.*, *In re Stemline Therapeutics Inc. Sec. Litig.*, 313 F. Supp. 3d 543, 550 (S.D.N.Y. 2018). Nothing in the ACC sufficiently alleges that the purported Zenabis return and supply agreement termination were complete in advance of the IPO.[3] In any event, baseless allegations do not "carry [plaintiffs'] assertions beyond the bar of speculation." *See Huang v. AirMedia Inc.*, 2017 WL 1157134, at *8 (S.D.N.Y. Mar. 27, 2017) (Carter, J.).

Nor do the ACC's vague, repetitive allegations that Sundial generally had "quality control issues," "failures" and "problems" (ACC ¶¶ 2, 4, 5, 9, 45, 46, 63, 65) demonstrate any material misrepresentation. It is telling that while Sundial is licensed by, and must comply with the regulations of, Health Canada, there is no allegation that Sundial failed to do so. Likewise, while the ACC repeatedly refers to "material returns" (ACC ¶¶ 2, 9), it fails to identify a single customer or alleged instance other than Zenabis. A pleading that offers "no concrete facts" to support bald assertions that alleged problems are widespread is subject to dismissal. *See, e.g.*, *IAC/InterActiveCorp*, 695 F. Supp. 2d at 120–21.[4]

Similarly insufficient and entirely unsupported are the ACC's allegations that Sundial "improperly recognized C$3–4 million in revenue prematurely" by accelerating "invoices" or "shipments." *See* ACC ¶¶ 6, 59. These baseless and internally inconsistent allegations—did Sundial accelerate shipments or accelerate invoices?—are entitled to no weight.[5] Further, the ACC's contention (ACC ¶¶ 49-50, 58-61) that Sundial's revenue estimates violated International Financial Reporting Standards ("IFRS") is inapposite because—as the IPO documents expressly state—the estimates were not prepared in accordance with IFRS. The estimates also reflect inactionable opinions that are not adequately alleged to be materially false. *See, e.g.*, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

***The ACC Fails To Plead A Material Misrepresentation in Light of the Extensive, Detailed Offering Document Risk Disclosures.*** The IPO prospectus included more than thirty pages of detailed risk disclosures that warned investors about the "high degree of risk" associated with Sundial's business, including the "risks inherent in an agricultural business" and of "crop

---

[3] *Compare, e.g.*, ACC ¶ 5 ("During the second quarter of 2019 . . . Zenabis . . . returned or rejected a total of 554 kilograms") *with* ACC ¶¶ 63, 65 ("***by the time of the IPO***, Sundial had delivered 554 kilograms of unusable cannabis . . . which Zenabis ***was then*** forced to return or reject") (emphasis added); *see also* ACC ¶ 48 ("***After the end of the second quarter***, Zenabis terminated its agreement to purchase cannabis from Sundial"); ACC ¶¶ 5, 47 ("Sundial executives . . . asked Zenabis to defer returning [the] shipment until the third quarter, ***after the IPO***.") (emphasis added).

[4] The ACC's allegations regarding statements about "high-quality" products (*e.g.*, ACC ¶¶ 64-65), as well as the ACC's contention that alleged omissions violated Item 303 (*id.* ¶ 26), fail for the same reasons.

[5] For example, the ACC alleges both that Sundial "accelerated shipments of C$3 million to C$4 million of revenue during the second quarter of 2019" (*see, e.g.*, ACC ¶ 6) and "accelerat[ed] invoices but fail[ed] to ship C$3 million to C$4 million of product" during the second quarter of 2019 (*see, e.g.*, ACC ¶ 59).

2

failure."[6]  While the ACC strains to allege that the very "risk disclosures" that "warn[ed]" of "quality control failures" were misleading because they supposedly omitted that such risks had "already materialized" (ACC ¶¶ 62-63), Sundial openly explained that these risks had already manifested and acknowledged its dependency on a limited number of grow facilities in which disruptions had already occurred and could occur again in the future.  Sundial also clearly warned that quality issues could occur "as a result of a failure in [the company's] (or [its] service providers') quality control systems," and disclosed the risks of quality variances.  Any alleged misrepresentation therefore is "immaterial as a matter of law" where—as here—it is "sufficiently balanced by cautionary language within the same prospectus." *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 413 (S.D.N.Y. 2009).

*Plaintiffs Fail To State A Claim Under Section 12(a)(2) For Additional Reasons.*  The ACC asserts Section 12(a)(2) claims against Sundial and the underwriter defendants, but fails to plead that plaintiffs purchased shares from any of these defendants, much less all, and merely pleads purchases "pursuant and/or traceable" to offering documents, which is not sufficient.  *See In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 311 (S.D.N.Y. 2011); *see also Yung v. Lee*, 432 F.3d 142, 147-49 (2d Cir. 2005) (*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), compels the conclusion that Section 12(a)(2) does not apply to secondary sales).

*Plaintiffs Fail To State A Claim Under Section 15.*  Plaintiffs' Section 15 claims necessarily fail because they plead neither a primary claim nor any "meaningful culpable conduct [by an individual defendant] beyond mere status as a director or officer."  *See Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010).

*There Is No Personal Jurisdiction Over The Individual Defendants*.  The ACC fails to allege any acts in the United States by the foreign individual defendants giving rise to plaintiffs' claims.  *See, e.g., In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008).

The ACC should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), as well as Rule 9(b).[7]

Respectfully submitted,

*/s/ Adam S. Hakki*
Adam S. Hakki


cc: Counsel of Record (via ECF)

---

[6]  The IPO prospectus is incorporated by reference into the ACC and, therefore, can be considered on a motion to dismiss.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

[7]  The ACC fails to adequately allege material misrepresentations under any pleading standard and therefore should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  In addition, the ACC is subject to dismissal for failure to plead with particularity under Rule 9(b), which is applicable because the claims "sound in fraud."  *See, e.g., Rombach v. Chang*, 355 F.3d 164, 170 (2004).  For example, the ACC alleges—albeit baselessly—that defendants knew of facts "concealed" from investors (ACC ¶ 89) and "improperly accelerated shipments" (ACC ¶ 6).