

55 Broadway, 10th Floor
New York, New York 10006
T: 212-363-7500
F: 212-363-7171
www.zlk.com

Adam Apton
aapton@zlk.com

April 14, 2020

**VIA CM/ECF**

The Honorable Judge Andrew L. Carter Jr.
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

        Re:    *In re Sundial Growers Inc. Securities Litigation*
               Master File No. 1:19-cv-08913-ALC

Dear Judge Carter:

      We represent the Lead Plaintiffs 0998735 BC LTD and David Draiman ("Plaintiffs") in this action. By April 9, 2020 letter, Defendants requested a pre-motion conference to file a motion to dismiss. Dkt. No. 62. For the following reasons, Defendants' arguments are incorrect. That said, pursuant to this Court's Individual Rules and Practices, 2.D.i., by April 30, 2020, Plaintiffs will amend the Complaint, Dkt. No. 50, adding additional, material facts they have uncovered since filing the Complaint and correcting a typographical error.

      Defendants' arguments for dismissal are meritless. Plaintiffs allege strict liability and negligence claims against Defendants under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933.[1] These sections impose liability on a security's issuer or underwriter when the Offering Documents or prospectus contains "a material omission in contravention of an affirmative legal disclosure obligation." *Litwin v. Blackstone Grp.*, 634 F.3d 706, 715 (2d Cir. 2011); *see also Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (Section 11 "imposes liability for a material misstatement of fact or an omission to state a fact that renders a statement made materially misleading").

      On or just before August 1, 2019, Sundial Growers Inc. ("Sundial") filed with the SEC a final Registration Statement and a final Prospectus in connection with its initial public offering ("Offering Documents"). The Offering Documents "estimated" that Sundial's revenue for the quarter ended June 30, 2019—one month prior to the final Offering Documents—would be between $19.0 million and $21.0 million gross and between $18.0 million and $20.0 million net. ¶58. This was false, the Complaint alleges, because Sundial's revenue was at least 15% less than its purported estimates for the quarter that closed one month before it filed the final Offering

---

[1] Citations to "¶__" below refer to paragraphs in Plaintiffs' Amended Consolidated Complaint ("Complaint"). Dkt. No. 50.

Documents. Sundial had included $3 million to $4 million in revenue it recognized in violation of International Financial Reporting Standard ("IFRS") 15. ¶¶59-61. Accordingly, Sundial's Offering Documents contained a "material misstatement of fact." *See, e.g., In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 737-38 (S.D.N.Y. 2015) (denying, in part, motion to dismiss; misstatement of revenues of as little as 4.7% are actionable).

Defendants argue that these allegations are "entitled to no weight" because the Complaint contradicts itself. Dkt. No. 62 at 2 (citing ¶¶6, 59). From a typographical error, Defendants sow contradiction where none exists. The Complaint is consistent, alleging that in violation of accounting rules, Sundial improperly accelerated *revenue*, invoicing customers for product it had *not* shipped during the quarter ended June 30, 2019—the quarter preceding the Offering. *See* ¶6 (included revenue despite not having shipped product until subsequent quarters); ¶51 (prematurely recognized revenue, "having not shipped material amounts . . . ."). These paragraphs align with ¶59, alleging that in violation of IFRS 15, Sundial improperly recognized revenue, "accelerating invoices but failing to ship" product. Reviewing the Complaint under Fed. R. Civ. P. Rule 8(a)'s notice pleading standard, the Court will take as true, drawing all reasonable inferences in Plaintiffs' favor, that Sundial accelerated revenue, recognizing it on product it had not shipped. *See Meyer*, 761 F.3d at 249 (reversing dismissal of complaint alleging violations of the Securities Act, stating, "[a]t this stage, dismissal is appropriate only where appellants can prove no set of facts consistent with the complaint that would entitle them to relief").[2]

Defendants' other arguments also fail. Their claim that Sundial did not prepare its "estimates" in accordance with IFRS is wrong. *See* ¶60 ("On July 1, 2018 the group adopted IFRS 15 . . .," one year prior to the Offering Documents). The Offering Documents do not state, as Defendants insist, that Sundial's "estimates" for the quarter ended June 30, 2019 "were not prepared in accordance with IFRS." Dkt. No. 62, at 2. Rather, as to "estimates" for the quarter that closed one month before the effective date of the offering, the Offering Documents state that "[t]hese estimates should not be viewed as *a substitute* for our full interim. . . financial statements prepared in accordance with IFRS." It would be senseless for Sundial to estimate revenue for a quarter that had already closed, including in that "estimate" material revenue that accounting rules prohibited them from recognizing. Not only, therefore, do Defendants mistakenly paraphrase the Offering Documents but their assertion begets an unreasonable inference. In light of its mandate to draw reasonable inferences in Plaintiffs' favor, this Court will reject Defendants' senseless assertion and any inference therefrom.

In addition, even if this Court accepts that "estimates" for the already closed quarter were statements of opinion, Dkt. No. 62 at 2, they are still actionable. *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), stands squarely for the proposition that a reasonable investor expects that Defendants honestly believe their "estimates" and their "estimates" are not undermined by materially adverse information. *Id*. at 188-94. By the effective date of the Offering, Defendants knew that, *during the already-closed quarter*, Sundial had not shipped product representing 15%-16.7% of the net revenue they had "estimated." Nor

---

[2] Even as the allegations are evident and consistent from the context of the Complaint, Plaintiffs will amend ¶6, l. 6, to state, "Sundial accelerated revenue of C$3 million to C$4 million [] during the second quarter of 2019 . . . ." and ¶51, l. 3, to state, "Sundial improperly accelerated revenue of C$3 million to C$4 million [] in the second quarter of 2019."

can Defendants leverage the Offering Document's "cautionary language" to escape liability. *See In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.").[3]

Plaintiffs also allege that the Offering Documents included materially untrue statements about Sundial's quality control systems. *E.g.*, ¶62 ("Failure in our quality control systems may adversely impact our sales volume, market share and profitability."), ¶64 ("we produce high-quality, consistent cannabis in individual, fully controlled room environments. . . . Our purpose-built indoor modular grow rooms enable us to produce large volumes of high-quality cannabis in small batches"). These statements omitted that Sundial's quality control had already failed. Sewage, mold, and fungus had infiltrated the company's production processes and, as a result, at least 10% of Sundial's product during the second quarter (ended June 30, 2019) was defective and returned. ¶¶63, 65. By discussing its quality control, Sundial triggered "a duty to tell the whole truth" and not omit material adverse information. *See Meyer*, 761 F.3d at 250 (citing *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002)).

Just as Defendants' substantive arguments are without merit, so too are their procedural arguments. First, Plaintiffs have adequately pleaded standing to pursue claims under Section 12(a)(2) of the Securities Act against the Underwriter Defendants. "[T]he fact that Plaintiffs did not identify which Underwriter Defendant they purchased shares from does not defeat their claim at this stage." *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, No. 18-cv-10320 (AJN), 2020 U.S. Dist. LEXIS 55410, at *41 (S.D.N.Y. Mar. 30, 2020).

Second, contrary to Defendant's assertion, the Complaint need not affirmatively allege "culpable participation" adequately to state a claim under § 15." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d at 746; *see also In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 773 (S.D.N.Y. 2012) ("While the Second Circuit has yet to address the question of whether a plaintiff bringing a Section 15 claim must allege 'culpable participation,' a majority of judges in this District-including the undersigned-have held such an allegation is not required").

Third, Defendants' personal jurisdiction argument ignores black letter law, subjecting to the jurisdiction of this Court directors, such as Defendants, ¶24, who sign offering documents. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005) ("The signing of documents filed with the SEC which form the basis for Plaintiffs' claims is sufficient contact with the jurisdiction to justify this Court's exercise of jurisdiction over Purves."); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 305-06 (E.D.N.Y. 2002) (holding that the "signing the Offering Documents was enough to put the defendant on notice of potential suit in the United States and shows purposeful availment," thus conferring personal jurisdiction over her, and citing cases).

For the foregoing reasons, this Court will ultimately deny Defendants' motion to dismiss.

---

[3] Plaintiffs' amendment will include additional facts on this point showing that Defendants' reliance on *Omnicare* is misplaced.

                                        Respectfully,

                                        Levi & Korsinsky, LLP

                            By: _____
                                        Adam M. Apton

cc:     All counsel of record