**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE SUNDIAL GROWERS INC.
SECURITIES LITIGATION

Master File No. 1:19-cv-08913-ALC

This Document Relates To:
All Actions

This Consolidated Action Is Related To:
1:20-cv-03579-ALC

Oral Argument Requested

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT**
**MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .....................................................................................................................4

        A.     Quality Control Issues And Risks Disclosed By Sundial ...........................4

        B.     Second Quarter 2019 Preliminary Revenue Estimates ...............................5

        C.     The Securities Act Litigation ....................................................................7

ARGUMENT ..........................................................................................................................7

    I.     PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER
          SECTIONS 11 AND 12(a)(2) OF THE SECURITIES ACT ................................7

        A.     The Complaint Fails To Allege Facts Demonstrating A Material
            Misstatement Or Omission About Quality Control ....................................8

            1.     Quality Control Issues And Risks Were Accurately And
                Extensively Disclosed ......................................................................8

            2.     The Alleged Quality-Related Statements Are
                Also Inactionable As A Matter Of Law .........................................13

            3.     The Complaint Does Not Demonstrate Any Other
                Unsatisfied Affirmative Obligation To Disclose ...........................15

        B.     The Complaint Fails To Allege Facts Demonstrating The
            Estimated Preliminary Revenue Ranges Were A Material
            Misrepresentation....................................................................................17

    II.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER
          SECTION 12(a)(2) OF THE SECURITIES ACT FOR SEVERAL
          ADDITIONAL REASONS ...............................................................................21

    III.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER
          SECTION 15 OF THE SECURITIES ACT .......................................................22

    IV.    THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
          SHOULD BE DISMISSED FOR LACK OF
          PERSONAL JURISDICTION...........................................................................22

CONCLUSION......................................................................................................................23

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                                 **Page**

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
    2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)........................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................8

*In re AstraZeneca Sec. Litig.*,
    559 F. Supp. 2d 453 (S.D.N.Y. 2008)..........................................................................22, 23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).................................................................................................1

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)...............................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................8

*Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*,
    2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ....................................................................9

*Coronel v. Quanta Capital Holdings Ltd.*,
    2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ..................................................................19

*In re Coty Inc. Sec. Litig.*,
    2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ..........................................................16, 17

*Dekalb Cty. Emps.' Ret. Sys. v. Controladora Vuela Compañía de Aviación,
    S.A.B. de C.V.*,
    2016 WL 3685089 (S.D.N.Y. July 6, 2016) ..................................................................20

*Eaves v. Designs for Fin., Inc.*,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011)...............................................................................1

*ECA v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)............................................................................................14

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
    2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ...............................................................14

*In re Focus Media Holding Ltd. Litig.*,
    701 F. Supp. 2d 534 (S.D.N.Y. 2010)............................................................................16

*Garber v. Legg Mason, Inc.*,
    2009 WL 3109914 (2d Cir. Sept. 30, 2009) .....................................................................1

*Griffin v. PaineWebber, Inc.*,
  2001 WL 740764 (S.D.N.Y. June 29, 2001) ........................................................22

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995)...........................................................................................21

*Huang v. AirMedia Grp. Inc.*,
  2017 WL 1157134 (S.D.N.Y. Mar. 27, 2017) ......................................................20

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991)...............................................................................10

*In re IAC/InterActiveCorp Sec. Litig.*,
  695 F. Supp. 2d 109 (S.D.N.Y. 2010).......................................................11, 12, 18

*International Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945).............................................................................................22

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
  2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)...........................................10, 12, 18

*In re Lehman Bros. Sec. & Erisa Litig.*,
  799 F. Supp. 2d 258 (S.D.N.Y. 2011)..................................................................21

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)........................................................................8, 15, 22

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
  643 F. Supp. 2d 366 (S.D.N.Y. 2009)..................................................................15

*Netshoes Sec. Litig.*,
  105 N.Y.S.3d 846 (N.Y. Sup. Ct. N.Y. Cnty. 2019).............................................20

*Nguyen v. MaxPoint Interactive, Inc.*,
  234 F. Supp. 3d 540 (S.D.N.Y. 2017)..................................................................16

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
  2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) .................................................10, 17

*Olkey v. Hyperion 1999 Term Tr., Inc.*,
  98 F.3d 2 (2d Cir. 1996).................................................................................15, 19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015).......................................................................................14, 15

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018)..................................................................13

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008)..............................................................................12, 13

*Pinter v. Dahl*,
    486 U.S. 622 (1988).....................................................................................................21

*Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010).........................................................................22

*Pyramid Holdings, Inc. v. Inverness Med. Innovations, Inc.*,
    638 F. Supp. 2d 120 (D. Mass. 2009).........................................................................11

*Rombach v. Chang*,
    355 F.3d 164 (2004)..............................................................................................8, 19

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003).......................................................................................22

*In re Royal Bank of Scotland Grp. plc Sec. Litig.*,
    2012 WL 3826261 (S.D.N.Y. Sept. 4, 2012)..............................................................20

*In re Stemline Therapeutics Inc. Sec. Litig.*,
    313 F. Supp. 3d 543 (S.D.N.Y. 2018)....................................................................12, 14

*In re Sundial Growers Sec. Litig.*,
    No. 655178/2019 (N.Y. Sup. Ct. N.Y. Cnty. May 15, 2020)........................................ *passim*

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016).......................................................................................14

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)............................................................21

*Vaccaro v. New Source Energy Partners L.P.*,
    2016 WL 7373799 (S.D.N.Y. Dec. 19, 2016).............................................................17

*Yung v. Lee*,
    432 F.3d 142 (2d Cir. 2005).......................................................................................21

**Regulations**

17 C.F.R. § 229.303 ..................................................................................................16, 17

Defendants Sundial Growers Inc. ("Sundial"), Torsten Kuenzlen, James Keough, Edward Hellard, Greg Mills, Gregory Turnbull, Lee Tamkee, and Elizabeth Cannon (collectively, the "Individual Defendants"), and Cowen and Company, LLC, BMO Nesbitt Burns Inc., RBC Dominion Securities Inc., Barclays Capital Canada Inc., CIBC World Markets Inc., and Scotia Capital Inc. (collectively, the "Underwriter Defendants"), through their respective undersigned counsel, respectfully submit this memorandum of law in support of their joint motion to dismiss the Second Amended Consolidated Complaint (the "Complaint" or "SAC"), pursuant to Rules 12(b)(2), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("FRCP").[1]

## PRELIMINARY STATEMENT

Sundial, a Canada-based producer of cannabis products, launched its initial public offering ("IPO") on August 1, 2019. Thereafter, publicly traded Canadian cannabis companies faced substantial headwinds as stocks throughout the industry suffered for reasons having nothing to do with the allegations in this case.[2] Impermissibly attempting to deploy the federal securities laws to insure against investment risks and share price declines which are wholly

---

[1]     Defendants cite to allegations in the Complaint solely for purposes of the motion to dismiss, but do not concede the accuracy of any such allegations and reserve their rights to contest the truth of any allegations. Defendants also refer to certain SEC filings, reports and statements relied upon or referred to in the Complaint, as well as other documents publicly filed with the SEC. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Garber v. Legg Mason, Inc.*, 2009 WL 3109914, at *3 (2d Cir. Sept. 30, 2009). On a motion to dismiss, a court may consider matters subject to judicial notice, including documents publicly filed with the SEC. *Eaves v. Designs for Fin., Inc*., 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011). References to "Ex. [ ]" are to exhibits annexed to the Declaration of Daniel Kahn, filed contemporaneously with this memorandum. The Prospectus, dated July 31, 2019 (*see, e.g.*, SAC ¶ 1), is attached as Exhibit 2. Unless otherwise indicated, internal citations and quotation marks are omitted.

[2]     *See, e.g.*, Karen Owram, *After 'blood spilled' in 2019, pot firms brace for 2020 repeat*, BNN BLOOMBERG (Dec. 10, 2019), https://www.bnnbloomberg.ca/after-blood-spilled-in-2019-pot-firms-brace-for-2020-repeat-1.1360562.

unrelated to the allegations in this case, plaintiffs purport to assert class action claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").  But these claims are subject to dismissal for several, independent reasons, and indeed they have already been dismissed by Justice Barry R. Ostrager of the Commercial Division of the New York State Supreme Court (the "New York Court") in a detailed and well-reasoned decision in a parallel and largely identical putative class action (the "NYS Action").  The New York Court dismissed the NYS Action in its entirety, finding:

> [D]efendants put forth documentary evidence, specifically the Offering Documents, *which utterly refute plaintiff's claims*. . . .  *Because plaintiff failed to identify any materially false or misleading statements or omissions in the Offering Documents, the Complaint must be dismissed*.

*In re Sundial Growers Sec. Litig.*, No. 655178/2019, at *11–12 (N.Y. Sup. Ct. N.Y. Cnty. May 15, 2020), Dkt. No. 39 (the "NYS Dismissal") (emphasis added).[3]

Here, the Complaint advances the very same causes of action on behalf of the very same putative class in connection with the very same IPO based on many of the very same allegations as the NYS Action.  The Complaint generally alleges that the offering documents "omitted material and persistent quality control problems that had resulted in material returns in advance of the IPO" and "provided revenue estimates that included material, improperly accelerated revenue."  SAC ¶ 2.  As the New York Court found in the NYS Action, however, the offering documents reveal plaintiffs' claims to be baseless.

*First*, the Complaint's vague, repetitive allegations that Sundial generally had "quality control issues," "quality control failures" and "quality control problems" (SAC ¶¶ 2, 3, 5, 6, 7,

---

[3]     The NYS Dismissal is attached to the Declaration as Exhibit 1.  The consolidated amended complaint in the NYS Action (the "NYS Complaint") is attached to the Declaration as Exhibit 3.

44, 45, 63, 64, 66) entirely fail to demonstrate any material misrepresentation, particularly in light of—as highlighted in the NYS Dismissal—"the robust 35-page risk disclosure section of the Offering Documents."  NYS Dismissal at 9.  Moreover, "[c]ontrary to [the] allegations, the Offering Documents . . . contain a discussion of quality problems that had already occurred at the time of the IPO."  *Id*. at 10.  Further, the statements on which the Complaint focuses—references to Sundial's cannabis products as "high quality"—are paradigmatic examples of nonspecific, favorable characterizations that are plainly inactionable under the securities laws.  Such statements constitute "corporate puffery, too vague to be actionable," as well as statements of opinion "sufficiently offset by robust risk disclosures."  *Id.* at 7–8.  Plaintiffs are therefore left to rely on the allegation that a single customer, Zenabis Global Inc. ("Zenabis"), returned product to Sundial as the result of supposed quality control issues.  But the purported dissatisfaction of a single customer cannot serve as the basis for a Securities Act claim and, as the New York Court concluded, "even if Sundial produced a defective order and the order was returned to Sundial, that incident does not render any of the statements plaintiff[s] identified from the Offering Documents false or misleading."  *Id.* at 7.

**_Second_**, the Complaint's contention that "certain estimated preliminary" revenue ranges in the Prospectus (*see, e.g.*, SAC ¶¶ 50–51) were somehow misleading is likewise "utterly refuted" by the Prospectus itself.  The Prospectus expressly stated that "[t]hese estimates should not be viewed as a substitute for [Sundial's] full . . . financial statements prepared in accordance with [International Financial Reporting Standards ("IFRS")]" and warned that investors "should not place undue reliance on this preliminary data."  Prospectus at 21.  And contrary to Plaintiffs' attempts to claim otherwise, that Sundial's CEO allegedly "admitted" that sales were completed in the second quarter when allegedly they could have been delayed until the third quarter does

3

not render the second-quarter recognition of the revenue associated with those sales improper. As the Complaint itself confirms, the actual revenue reported at quarter-end—after the IPO—turned out to be directly within the projected "estimated preliminary" range included in the offering documents.  SAC ¶ 50.

*Finally*, plaintiffs' Section 12(a)(2) claims are subject to dismissal for the additional reason that the Complaint fails to plead that plaintiffs purchased shares directly from any defendant at all, much less any particular defendant.  In addition, plaintiffs' claims against the Individual Defendants, all of whom are Canadian, are subject to dismissal because the Complaint alleges no facts justifying the exercise of personal jurisdiction.

For all these reasons and as further discussed herein, respectfully, this Court should dismiss the Complaint in its entirety with prejudice.

## BACKGROUND

### A.    Quality Control Issues And Risks Disclosed By Sundial

Companies that produce agricultural products face heightened quality control risks and—as the offering documents made clear—Sundial's products are no exception.  Indeed, the Prospectus included thirty-five pages of detailed risk disclosures that warned investors about the "high degree of risk" associated with Sundial's business (*see* Prospectus at 23–57), including the "risks inherent in an agricultural business" and of "crop failure" (*id.* at 39).  *See also* NYS Dismissal at 9–10.  The Prospectus made clear that these quality control risks were not merely theoretical.  To the contrary, Sundial explained that these risks had already manifested. Prospectus at 27, 39; *see also* NYS Dismissal at 10.  For example, Sundial disclosed that "*[w]e have had to dispose of crops in the past due to crop disease.* Such instances *often lead to reduced crop quality*. . . ."  Prospectus at 39 (emphasis added); *see also* NYS Dismissal at 9. Moreover, with respect to its grow facilities, Sundial explained that disruptions *had already*

4

*occurred* and could occur again in the future.  Prospectus at 26–27.  For example, the Prospectus stated:

> [A]ll our cultivation and production activities are conducted at our Olds Facility and Rocky View Facility, and our licences from Health Canada are specific to those facilities.  ***Disruptions at, or adverse changes or developments*** . . . including . . . ***equipment or process failures, production errors, disease or infestation of our crops, fires, breakdowns of our sewage system*** . . . ***could materially adversely impact our production of cannabis***.  ***For example***, a fire at our Olds Facility in December 2018 damaged a portion of our crops and caused some delays. . . .

*Id.* at 27 (emphasis added); *see also* NYS Dismissal at 9–10.

Likewise, Sundial plainly disclosed potential quality control system "failure" and the risks of quality variances and product returns.  Prospectus at 40–41.  For example:

> Failure in our quality control systems may adversely impact our sales volume, market share and profitability. . . .  ***If, as a result of a failure in our*** (or our service providers') ***quality control systems***, ***contamination of***, or damage to, ***our inventory*** or packaged products ***occurs***, ***we may incur significant costs in replacing the inventory and recalling products*** . . . and ***[we] may lose customers***. . . .
>
> ***Manufacturers and distributors of consumer goods products are sometimes subject to the recall or return of their products for a variety of reasons***, ***including*** . . . ***product defects, such as contamination,*** [and] ***adulteration***. . . .  Although we have detailed procedures in place for testing our finished [cannabis] products, ***there can be no assurance that any quality, potency or contamination problems will be detected in time to avoid unforeseen product recalls***, regulatory action or lawsuits, whether frivolous or otherwise.

*Id.* (emphasis added); *see also* SAC ¶ 61; NYS Dismissal at 9–10.  Sundial thus clearly warned that products may be returned for a variety of reasons, including "product defects, such as contamination [and] adulteration."  Prospectus at 41; *see also* NYS Dismissal at 9–10.

## B.    Second Quarter 2019 Preliminary Revenue Estimates

The Prospectus included what it described as "unaudited," "estimated," "preliminary" ranges of revenue for the second quarter of 2019.  Prospectus at 21.  Investors were clearly cautioned not to "place undue reliance" on these estimates:

> Presented below are certain ***estimated preliminary*** financial results . . . .  These ***estimated preliminary*** results are based on the information available to us at this time.  For estimates of gross revenue and net revenue, ***we have provided ranges, rather than specific amounts, because these results are preliminary***.  We are not able to provide an estimate of net loss and comprehensive loss . . . at this time. . . .  ***As these estimates and descriptions are preliminary in nature, our actual results may vary materially from the estimated preliminary results*** presented here and will not be finalized until after we close this offering.
>
> These are ***forward-looking statements*** and may differ from actual results.  ***These estimates should not be viewed as a substitute for our full interim or annual financial statements prepared in accordance with IFRS.  Accordingly, you should not place undue reliance on this preliminary data***. . . .

*Id*. (emphasis added).  Notably, the Prospectus specifically identified the included financial statements that were presented in accordance with IFRS, and that list did not include the estimated preliminary revenue ranges for the second quarter of 2019.  *See id*. at ii–iii.[4]

The Prospectus also clarified that notwithstanding expected "gross revenue [ ] between $19.0 million and $21.0 million and net revenue [ ] between $18.0 million and $20.0 million," Sundial "expect[ed] to report a significant net loss and comprehensive net loss" for the second quarter of 2019.  *Id*. at 21.  And when it reported its financial results for the second quarter on August 14, 2019, Sundial's reported revenue fell squarely within those estimates: approximately $20.3 million in gross revenue and $19.3 million in net revenue.[5]  Thus, as the Complaint

---

[4]     The offering documents also clarified:  "Revenue also includes the net consideration to which we expect to be entitled."  Prospectus at 110.  Inexplicably, the Complaint quotes a note on revenue recognition from the historical financial statements appended to the Prospectus for an entity that was acquired by Sundial after the period of the quoted financial statements.  *Compare* SAC ¶ 61, *with* Prospectus at F-46, F-79.

[5]     *See* Ex. 4 at 2 (Sundial Growers Inc., Form 6-K (filed Aug. 14, 2019)).  Sundial's annual report on Form 20-F, filed on March 31, 2020, repeated the same gross revenue figure (and relied on the same net revenue figure).  *See* Ex. 5 at 14 (Exhibit 15.1, Sundial Growers Inc., Form 20-F (filed Mar. 31, 2020)).

acknowledges, Sundial's offering documents "correctly 'estimated' the results that Sundial later reported." SAC ¶ 50.

### C.    The Securities Act Litigation

The first putative class action asserting alleged violations of the Securities Act in connection with Sundial's IPO was filed on September 9, 2019, in the New York Court. *See* Ex. 6 at 1 (NYS Action Consolidation Order).  A second such action was filed in that court on September 23, 2019, and a third on September 27, 2019. *See id*. at 1–2.  Complaints initiating this action were filed in this Court on September 25, 2019 and November 1, 2019.  On October 23, 2019, the New York Court consolidated the three cases filed in the New York Court into the NYS Action. *See id*. at 4.  On December 20, 2019, this Court consolidated the two federal cases into a single action.[6]

On May 15, 2020, the New York Court issued the NYS Dismissal, dismissing all claims with prejudice.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER SECTIONS 11 AND 12(a)(2) OF THE SECURITIES ACT

A complaint asserting claims for violations of Sections 11 and 12(a)(2) of the Securities Act must allege facts demonstrating that the offering documents contained:  (1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing

---

[6]      Plaintiffs filed a consolidated amended complaint on February 18, 2020.  Pursuant to the Court's Individual Practices, defendants requested a pre-motion conference in anticipation of their motion to dismiss by letter dated April 9, 2020.  Plaintiffs responded on April 14, 2020, indicating their intent to further amend their complaint.  On April 27, 2020, the Court so-ordered the parties' proposed schedule for the filing of the further amended complaint and defendants' motion to dismiss it.  Plaintiffs filed the Complaint on April 30, 2020.

disclosures from being misleading.  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358–59 (2d Cir. 2010).  It is also well-settled that the "heightened pleading standard of Rule 9(b) . . . applies to claims brought under Section 11 and Section 12(a)(2) . . . when the claim sounds in fraud."  *Rombach v. Chang*, 355 F.3d 164, 166 (2004).  Here, the Complaint includes allegations—albeit baseless—of, e.g., "improperly accelerating revenue" and "manipulation." *See, e.g.*, SAC ¶¶ 2, 7, 48, 51, 57.  Though the Complaint purports to disclaim allegations of fraud (*see id.* ¶¶ 74, 83, 88), such a "disclaimer of fraud is insufficient" to avoid Rule 9(b).  *See In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006). Accordingly, plaintiffs must plead their claims with particularity, *Rombach*, 355 F.3d at 170, a standard the Complaint manifestly fails to satisfy.  Even in the absence of a heightened pleading standard, however, the Complaint is still subject to dismissal because it does not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs' claims should be dismissed for failure to adequately plead violations of the Securities Act.  As the New York Court found:  "Because plaintiff[s] failed to identify any materially false or misleading statements or omissions in the Offering Documents, the Complaint must be dismissed."  NYS Dismissal at 11–12.

### A.   The Complaint Fails To Allege Facts Demonstrating A Material Misstatement Or Omission About Quality Control

#### 1.   Quality Control Issues And Risks Were Accurately And Extensively Disclosed

As in the NYS Action, the Complaint alleges that "there were quality issues in Sundial's product since 2018, chiefly, the shipment that was sent to Zenabis was deficient and contained mold and foreign objects."  NYS Dismissal at 9; *see also, e.g.*, SAC ¶¶ 2, 3, 5, 6; NYS

Complaint ¶¶ 5, 62, 66–68.  On that basis, plaintiffs claim that Sundial's disclosures about potential quality control issues and statements that its cannabis was "high-quality" were misleading.  SAC ¶¶ 2, 63–66.  But "plaintiff[s] ignore[] the robust 35-page risk disclosure section of the Offering Documents" and that "this exact type of risk was disclosed in the Offering Documents."  NYS Dismissal at 9–10 (quoting several examples of relevant risk disclosures from the Prospectus).

As the New York Court held with respect to the very same quality-related claims: "Based on the context of the alleged misrepresentations, their general nature, and their placement amongst robust risk disclosures . . . the Prospectus itself[] utterly refutes plaintiff[s]' . . . causes of action for violations of Section 11 and Section 12(a)(2) of the Securities Act."  *Id.* at 10.  The inclusion of risk disclosures reflecting "information alleged in the Complaint to have been withheld from prospective investors renders the Complaint insufficient as a matter of law."  *Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *8 (S.D.N.Y. Jan. 14, 2010).  Thus, plaintiffs' claims fail because the Prospectus disclosed the very information that they allege to have been concealed.  *See* NYS Dismissal at 11.

Among the extensive "Risk Factors" disclosures, the Prospectus clearly addressed the "quality and safety" of Sundial's products and quality control systems and specifically disclosed the potential for "contamination."  Prospectus at 40–41.  It also highlighted the risk that the company might lose customers and "incur significant costs in replacing the inventory" in the event of quality control issues.  *Id*.  The Prospectus emphasized that cannabis is a "biological asset" that "is subject to the risks inherent in the agricultural business, including risks of crop failure."  *Id*. at 39–40.  It advised of the vulnerability to "disease [and] infestation," and that

products may be recalled or returned "for a variety of reasons, including public health and public safety risks [and] product defects, such as contamination [or] adulteration." *Id*. at 27, 39, 41.

Significantly, as the New York Court recognized, "[c]ontrary to plaintiff[s'] allegations, the Offering Documents do contain a discussion of quality problems that had already occurred at the time of the IPO." NYS Dismissal at 10. The Prospectus explained that the company "had to dispose of crops in the past due to crop disease." Prospectus at 39. It also warned of disruptions at its facilities, including "fires [and] breakdowns of our sewage system" and highlighted as an "example" of such disruptions that had already occurred "a fire at our Olds Facility in December 2018" that "damaged a portion of our crops and caused some delays in our production cycle." *Id.* at 27. In light of these explicit disclosures, anyone who read the Prospectus (including the New York Court) would have understood the possibility of quality control issues—and that they had occurred. Furthermore, cautionary statements "are not actionable to the extent plaintiffs contend defendants should have stated that the adverse factors 'are' affecting financial results rather than 'may' affect financial results." *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *7 (S.D.N.Y. Mar. 31, 2010).

In fact, Sundial's public disclosures stated "exactly the 'fact' that [plaintiffs] contend[] has been covered up." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762–63 (2d Cir. 1991); *see also* NYS Dismissal at 9–10. No reasonable investor would have believed that Sundial's statements constituted a guarantee of perfect quality control or that quality control issues had never arisen. *See Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280, at *14 (S.D.N.Y. Sept. 30, 2008) ("[M]ultiple and prominent cautions regarding past, then-existing, and potential problems . . . warned investors of both potential and actual [risks].").

Additionally, with respect to the allegations about Zenabis's alleged return or rejection of product and purported subsequent termination of its supply agreement, the alleged failure to disclose the dissatisfaction of a single customer cannot serve as the basis of a claim for violation of the securities laws.  Courts have recognized that "some level of customer discontent is a fact of life" and the "occasional disgruntled customer" does not indicate larger damage to a company's business.  *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 120 (S.D.N.Y. 2010).

Nor does the Complaint's baseless attempt to transform Zenabis's alleged dissatisfaction into a broader attack on Sundial's quality control processes save the Complaint from dismissal. A pleading that offers "no concrete facts" to support bald assertions that alleged problems are widespread cannot support claims under Section 11 or 12(a)(2).  *Id.* at 120–21.  For example, in *IAC/InterActiveCorp*, plaintiffs unsuccessfully alleged that defendants omitted discussion of "bad business practices" but cited only one example of "discontent among [defendants'] suppliers and customers."  695 F. Supp. 2d at 118–20.  Plaintiffs' allegations were insufficient because (among other reasons) "[t]aken alone, a complaint from a customer or supplier is trivial information; it does not show that a business's fortunes are actually declining."  *Id.*; *see also Pyramid Holdings, Inc. v. Inverness Med. Innovations, Inc.*, 638 F. Supp. 2d 120, 127–28 (D. Mass. 2009) (dismissing Section 11 and 12(a)(2) claims because "[w]ithout further context . . . such as the frequency of customer complaints in relation to the number of products sold, and a typical frequency of customer complaints for similar products made by other companies," witnesses' accounts were insufficient "to support claims of major integration problems").[7]

---

[7]     To the extent the Complaint alleges that the purported Zenabis return or rejection was subject to disclosure because it resulted from the alleged broad quality control issues, the securities laws do not require disclosure of adverse issues before they are investigated and

11

Finally, plaintiffs' conclusory and vague assertions that Sundial generally had "quality control issues," "quality control failures" and "quality control problems" (SAC ¶¶ 2, 3, 5, 6, 7, 44, 45, 63, 64, 66) do not cure the failure of the Complaint to allege facts demonstrating a material misrepresentation, no matter how often repeated.  *See, e.g.*, *IAC/InterActiveCorp*, 695 F. Supp. 2d at 120–21.  Nor do the Complaint's references to vague alleged statements by purported unnamed former employees with unidentified positions.  "Sketchy at best, these allegations do not provide enough detail to nudge plaintiffs' claims across the line from conceivable to plausible."  *Id.* at 119; *see also Ladmen Partners*, 2008 WL 4449280, at *16 ("This allegation is entirely dependent on information purportedly obtained at an unspecified date from 'confidential sources' . . . [and] simply too vague and conclusory to state a claim.").[8]

For example, the Complaint alleges that there were "quality control problems" at Sundial's Olds Facility "soon after it opened," including "moisture, mold and fungus," and that one unidentified former employee stated that the "basement nursery frequently flooded,

---

determined.  For example, in *In re Stemline Therapeutics Inc. Sec. Litig.*, 313 F. Supp. 3d 543 (S.D.N.Y. 2018), the court found that a drug company's alleged failure to disclose that a clinical trial participant had died prior to the offering could not support a claim for violations of the Securities Act where the Complaint did not demonstrate that an inquiry into the cause of death had been completed prior to the offering.  *Id.* at 550; *see also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 671–72 (S.D.N.Y. 2008) (finding omissions of alleged deficiencies in quality control program inactionable where plaintiff failed to show that defendant "knew, or should have known" that its program "was defective at the time of the IPO").  The Complaint fails to allege that Sundial completed any investigation of the alleged Zenabis complaint—let alone that its causes or impacts were determined—prior to the IPO.

[8]     Even more so, the bald assertions that the Complaint does not even bother to try attributing even to unidentified former employees are plainly inadequate.  For example, the Complaint baselessly suggests that Sundial executives "asked Zenabis to defer" the alleged return "so that it would not impact the second quarter 2019 'estimates.'"  SAC ¶ 6.  No source is cited.  *See, e.g.*, *IAC/InterActiveCorp*, 695 F. Supp. 2d at 120–21; *see also Ladmen Partners*, 2008 WL 4449280, at *16.  Nor does this unfounded allegation render any statement in the offering documents materially false or misleading.

sometimes with sewage." SAC ¶ 44. But the Complaint does not allege facts demonstrating the pervasiveness—or lack thereof—of any such alleged issues. In any event, such statements are directly addressed by the Prospectus, which highlighted that cannabis is "vulnerable to various pathogens including bacteria, fungi, viruses," warned of disruptions at its facilities, including "fires [and] breakdowns of our sewage system," and disclosed that the company has already experienced such disruptions and "had to dispose of crops in the past due to crop disease." Prospectus at 27, 39; *see also* NYS Dismissal at 9–10. And it is telling that—as the Complaint expressly acknowledges—while Sundial must comply with the regulations of its regulator, the Canadian federal department regulating the cannabis industry (Health Canada), there is no allegation that Sundial failed to do so. SAC ¶ 4; *see also Panther Partners*, 538 F. Supp. 2d at 671 (recognizing that an "'adequate' quality control program does not mean zero defects").

2. The Alleged Quality-Related Statements Are Also Inactionable As A Matter Of Law

The Complaint's challenges of Sundial's statements about the "high-quality" nature of its cannabis products (*see, e.g.*, SAC ¶ 65) are independently deficient as they are inactionable corporate puffery and statements of opinion. As the New York Court determined: "Here, the terms 'high quality' and 'premium' are clear examples of puffery because they are general and not subject to verification. At most, 'high quality' and 'premium' are statements of opinion, which are also not actionable." NYS Dismissal at 8.

Respectfully, this Court should reach the same conclusion. "Courts widely recognize that generalized statements of corporate aspiration and optimism are inactionable puffery on which no reasonable investor would rely." *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 231–33 (S.D.N.Y. 2018) (dismissing claims regarding company's statements about its quality-assurance procedures and "commit[ment] to serving safe, high quality food" as inactionable

puffery); *see also In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *11

(S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) ("vague, optimistic

statements" such as "best-in-class capabilities and durable long-term take-or-pay contacts with

blue-chip customers" constitute inactionable puffery). Sundial's statements about its "high-

quality" products are precisely the type of general, optimistic descriptors that "do[] not give rise

to securities violations." *See, e.g.*, *ECA v. JP Morgan Chase Co*., 553 F.3d 187, 206

(2d Cir. 2009).

As the Supreme Court explained in *Omnicare, Inc. v. Laborers District Council

Construction Industry Pension Fund*, 575 U.S. 175 (2015), "a sincere statement of pure opinion

is not an 'untrue statement of material fact,' regardless [of] whether an investor can ultimately

prove the belief wrong." *Id.* at 186. Instead, to be actionable, plaintiffs generally must allege an

opinion statement was not honestly believed when made or that it contained embedded facts that

are false or did not "fairly align[] with the information" the speaker had at the time. *Id*. at 188–

89. Thus, "meeting the standard under *Omnicare* 'is no small task for an investor.'" *Tongue v.

Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare*, 575 U.S. at 194). The Complaint

fails to allege facts demonstrating that these opinions were not correct, much less not sincerely

held. The alleged dissatisfaction of a single customer and vague allegations of quality control

issues certainly do not preclude Sundial from opining that its cannabis is "high-quality." "A

reasonable investor understand[s] that opinions sometimes rest on a weighing of competing facts,

and does not expect that *every* fact known to an issuer supports its opinion statement." *Stemline*,

313 F. Supp. 3d at 550 (emphasis in original) (quoting *Omnicare*, 575 U.S. at 177, 189–90));

*Tongue*, 816 F.3d at 210 (same).

14

In any event, Sundial's optimistic statements were counterbalanced by risk disclosures, cautioning, for example, that the company "could experience a significant failure or deterioration of [its] quality control systems," as well as the attendant "adverse" financial impact. *See* Prospectus at 40–41. Such counter-balanced statements expressing predictions, hopes, beliefs and aspirations are also protected under the "bespeaks caution" doctrine. *See, e.g.*, *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (dismissing Section 11 and 12(a)(2) claims where "the prospectuses when read in their entirety are not overly sanguine but instead 'bespeak caution'"); *see also* NYS Dismissal at 7–10 (these statements were "sufficiently offset by robust risk disclosures").

3.   The Complaint Does Not Demonstrate Any Other
     Unsatisfied Affirmative Obligation To Disclose

As the New York Court held:  "[E]ven if Sundial produced a defective order and the order was returned to Sundial, that incident does not render any of the statements plaintiff[s] identified from the Offering Documents false or misleading simply because that specific instance is not reported in the Offering Documents."  NYS Dismissal at 7.  "[I]t is well established that there is no liability in the absence of a duty to disclose, even if the information would have been material."  *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009).  The Complaint fails to allege how Sundial was under any duty to disclose information about an allegedly dissatisfied customer or say more than it did about the challenges it faced. Because an omission is actionable under the securities laws only when the defendant had a duty to disclose the omitted facts, plaintiffs' claims cannot be maintained in light of the Complaint's failure to identify such a duty.  *See Morgan Stanley Info. Fund*, 592 F.3d at 360–61; *see also* NYS Dismissal at 10–11.

15

As in the NYS Action, this Complaint attempts to invoke Item 303 of Regulation S-K (SAC ¶¶ 25–26, 47; *see also* NYS Complaint ¶ 63) in a futile attempt to cure its pleading deficiencies.  But as the New York Court highlighted, such effort fails because "the Offering Documents, including the 'Risk Factors' section, contained a lengthy discussion of many risks inherent in investing in Sundial common stock, including the risks that plaintiff contends materialized."  NYS Dismissal at 11.

Moreover, the Complaint misleadingly quotes a part of Item 303(a)(3)(i) to assert that the alleged Zenabis return was required to be disclosed as "an unusual or infrequent event."  SAC ¶ 47.  But the Complaint omits that the events to be disclosed are only those "that materially affected the amount of reported income from continuing operations."  17 C.F.R. § 229.303(a)(3)(i).  No income (or loss) amount was even reported for the second quarter at the time of the IPO.  *See* Prospectus at 21 ("We are not able to provide an estimate of net loss and comprehensive loss and net loss and comprehensive loss per share at this time.").[9]

Further, the Complaint's assertion that the alleged Zenabis return was "a known uncertainty required to be disclosed under Item 303(a)(3)(ii)" (SAC ¶ 47) ignores that Item 303

---

[9]     To the extent that Zenabis's termination of its supply agreement is alleged to be an "unusual or infrequent event" subject to disclosure, the Complaint also does not allege that this termination happened prior to the IPO.  *See* SAC ¶ 47 ("After the end of the second quarter, Zenabis terminated its agreement to purchase cannabis from Sundial.").  Regardless, a company "has no general obligation to disclose the results of a quarter in progress."  *Nguyen v. MaxPoint Interactive, Inc*., 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017) (dismissing Section 11 and 12(a)(2) claim based on failure to disclose financial changes that occurred before the IPO, but impacted the quarter in progress); *see also In re Coty Inc. Sec. Litig*., 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) ("Defendants were not required to disclose a drop in sales that began in June, merely two weeks before the Registration Statement became effective."); *In re Focus Media Holding Ltd. Litig*., 701 F. Supp. 2d 534, 539–40 (S.D.N.Y. 2010) (dismissing Section 11 and 12(a)(2) claims for alleged "failure to disclose financial information about the third quarter before that quarter had concluded").  The Complaint also does not allege that the Zenabis supply agreement was material to Sundial's operations.  *Cf.* SAC ¶ 47.

requires an issuer to "[d]escribe any known trends or uncertainties that have had or that the

***registrant reasonably expects will have a material . . . impact*** on net sales or revenues or income

from continuing operations."  17 C.F.R. § 229.303(a)(3)(ii) (emphasis added).  Moreover, "Item

303 does not require companies to disclose isolated occurrences," *In re Noah*, 2010 WL

1372709, at *6, and the Complaint itself expressly alleges that the alleged Zenabis return was an

"unusual or infrequent event" (SAC ¶ 47).  The Complaint also fails to allege that any non-

disclosed trend or uncertainty would have been material, much less that Sundial knew it would

be at the time of the IPO.  *See, e.g., Vaccaro v. New Source Energy Partners L.P.*, 2016 WL

7373799, at *4 (S.D.N.Y. Dec. 19, 2016) (to state an Item 303 claim, plaintiffs must adequately

allege a "material. . . unfavorable impact");  *In re Coty*, 2016 WL 1271065, at *5 ("Knowledge

of a trend is an essential element triggering disclosure under Item 303.").  In any event, the

alleged Zenabis return was the "exact type of risk [that] was disclosed in the Offering

Documents."  NYS Dismissal at 9.  Thus, plaintiffs have "likewise failed to demonstrate that

defendants breached their independent duties under Item 303."  *Id.* at 10.

### B.  The Complaint Fails To Allege Facts Demonstrating The Estimated Preliminary Revenue Ranges Were A Material Misrepresentation

The Complaint also challenges what it acknowledges to be "***estimated preliminary***"

revenue ranges included in the Prospectus but fails to advance any well-pled allegations that

there was anything false or misleading about them.  Not only were the estimated preliminary

ranges couched in robust warnings not to rely on them, but they turned out to be correct.

The Complaint claims that the "estimated preliminary" ranges were somehow misleading

because Sundial allegedly "accelerat[ed] revenue into the second quarter of 2019 without having

shipped the product to customers," purportedly in violation of IFRS 15.  SAC ¶ 48.  Plaintiffs

allege that Sundial recognized "C$3 million to C$4 million of revenue in the second quarter that

17

really belonged in the third quarter." *Id*. ¶ 57.  Plaintiffs assert that IFRS 15 "required" Sundial to recognize revenue only "when a performance obligation is satisfied by transferring a promised good or service to a customer (which is when the customer obtains control of that good or service)." *Id*. ¶ 49.

As an initial matter, these allegations are premised entirely on comments supposedly made by Sundial's then-CEO at an August 25, 2019 board meeting. *Id*. ¶ 57.  But the Complaint fails to identify the source of these allegations and does not even purport to provide any context. Once again, "[s]ketchy at best, these allegations do not provide enough detail to nudge plaintiffs' claims across the line from conceivable to plausible." *IAC/InterActiveCorp*, 695 F. Supp. 2d at 119; *see also Ladmen Partners*, 2008 WL 4449280, at *16.

Further, contrary to plaintiffs' assertion that Sundial's CEO "expressly admitted" to "improperly accelerating revenue materially and artificially" (SAC ¶ 57), there plainly was (i) no such "admi[ssion]," (ii) no mention of having done anything "improper[]," and (iii) no statement that there was any acceleration of "revenue" in the absence of actual sales. *See id*. ¶ 58.  And while plaintiffs contest that IFRS required transfer of the cannabis to the customer to recognize revenue, there is absolutely no indication in the alleged statement that Sundial did not transfer control of the relevant cannabis to the customer in the second quarter when the revenue was allegedly recognized.  That Sundial allegedly completed sales in the second quarter that perhaps could have been completed instead in the third quarter does not constitute a violation of the securities laws.  *See, e.g*., *In re AmTrust Fin. Servs., Inc. Sec. Litig*., 2019 WL 4257110, at *15 (S.D.N.Y. Sept. 9, 2019) (dismissing Securities Act claim based on allegedly improper revenue recognition where "the reported result could have been reached by an appropriate method given appropriate historical data and judgments").

Moreover, the Prospectus clearly identified these "estimated preliminary . . . ranges" as "forward-looking statements" that "may differ from actual results." Prospectus at 21. Sundial also clearly explained: "***These estimates should not be viewed as a substitute for our full interim or annual financial statements prepared in accordance with IFRS.***" *Id*. (emphasis added). The Prospectus also repeatedly characterized the ranges as "preliminary" and "estimated." *Id*. Indeed, the Prospectus cautioned very specifically regarding these estimates: "As these estimates and descriptions are preliminary in nature, our actual results may vary materially from the estimated preliminary results presented here and will not be finalized until after we close this offering." The Prospectus also clearly warned: "***[Y]ou should not place undue reliance on this preliminary data*. . . .**" *Id*. (emphasis added).

Accordingly, the estimated preliminary ranges are inactionable because no reasonable investor could have considered them to have been misleading. *See, e.g.*, *Coronel v. Quanta Capital Holdings Ltd.*, 2009 WL 174656, at *18 (S.D.N.Y. Jan. 26, 2009) ("In light of such language . . . no reasonable investor could have considered the . . . estimate as a guarantee of much other than a rough account of initial estimated losses."). The company's predictions are also protected under the "bespeaks caution" doctrine. *See, e.g.*, *Rombach*, 355 F.3d at 173 ("Under the bespeaks caution doctrine, alleged misrepresentations in a stock offering are immaterial as a matter of law if it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering"); *Olkey*, 98 F.3d at 5 (dismissing Securities Act claims where "the prospectuses when read in their entirety are not overly sanguine but instead 'bespeak caution'"). "[T]he statements that plaintiff[s] identif[y] are offset by robust warnings and risk disclosures." *See* NYS Dismissal at 4. For these reasons alone, the claims are subject to dismissal.

Additionally, even if IFRS were somehow applicable to these "preliminary estimates," it is subject to judgment and discretion. *Cf. Netshoes Sec. Litig.*, 105 N.Y.S.3d 846, 854 (N.Y. Sup. Ct. N.Y. Cnty. 2019). A mere alleged deviation from IFRS does not create a material misstatement or omission that is actionable under the Securities Act. *Dekalb Cty. Emps.' Ret. Sys. v. Controladora Vuela Compañía de Aviación, S.A.B. de C.V.*, 2016 WL 3685089, at *2 (S.D.N.Y. July 6, 2016) (dismissing Securities Act claims where plaintiffs had "not established that any deviation from IFRS accounting standards . . . suggests materiality"). Moreover, "to be actionable, the plaintiffs need to allege facts demonstrating that [the company] did not subjectively believe its accounting judgments at the time that these judgments were made." *Netshoes*, 105 N.Y.S.3d at 854. Plaintiffs here do not. Therefore, allegations of misrepresentations regarding revenue also fail for this reason.

The Complaint itself alleges that the estimates "correctly" corresponded to the actual revenue subsequently reported for the second quarter, when financial results were finalized and reported—after the IPO. Thus, once again, plaintiffs have "not articulated sufficient factual allegations to carry [their] assertions beyond the bar of speculation." *See Huang v. AirMedia Grp. Inc.*, 2017 WL 1157134, at *8 (S.D.N.Y. Mar. 27, 2017) (Carter, J.); *see also In re Royal Bank of Scotland Grp. plc Sec. Litig.*, 2012 WL 3826261, at *8 (S.D.N.Y. Sept. 4, 2012), *aff'd sub nom. Freeman Grp. v. Royal Bank of Scotland Grp. PLC*, 540 F. App'x 33 (2d Cir. 2013) (rejecting claim based upon alleged IFRS violations because plaintiffs' allegations about the factual premise of the violations were "insufficient to state a claim of material misstatement or omission under the Securities Act"). For this reason as well, plaintiffs' claims concerning the estimated preliminary ranges should be dismissed.

II.     **PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER SECTION 12(a)(2) OF THE SECURITIES ACT FOR SEVERAL ADDITIONAL REASONS**

Section 12(a)(2) claims can only be asserted against a "statutory seller," which is someone who either (a) "passed title, or other interest in the security, to the buyer for value" or (b) "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interest or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988). Moreover, a Section 12(a)(2) claim can only be maintained against such a seller by "the person purchasing such security ***from him***." 15 U.S.C. §77l(a)(2) (emphasis added). As the Supreme Court made clear, to be liable as a seller, a defendant must be "the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." *Pinter*, 486 U.S. at 643–44.

The Complaint alleges that the two named plaintiffs "purchased or ***otherwise acquired*** Sundial stock ***pursuant and/or traceable*** to the Registration Statement and Prospectus issued in connection with Sundial's IPO on August 1, 2019." SAC ¶ 14 (emphasis added). Thus, the Complaint does not confirm that they purchased shares at all, much less in the IPO. For these reasons, the Section 12(a)(2) claims must be dismissed in their entirety. *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 311 (S.D.N.Y. 2011) ("A complaint that alleges that the plaintiff purchased its securities 'pursuant and/or traceable to' the Offering Documents is not sufficient."); *see also Yung v. Lee*, 432 F.3d 142, 147–49 (2d Cir. 2005) (*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), compels the conclusion that Section 12(a)(2) does not apply to secondary sales).

Additionally, as to the Underwriter Defendants, the Complaint also perforce "fails to allege that [either plaintiff] purchased shares directly from a specific Underwriter Defendant." *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *25 (S.D.N.Y. Sept. 28, 2012) (dismissing Section

12(a)(2) claim).  And as to Sundial, "in a firm commitment underwriting, such as this one, the public cannot ordinarily hold the issuers liable under section 12, because the public does not purchase from the issuers." *Rosenzweig v. Azurix Corp*., 332 F.3d 854, 871 (5th Cir. 2003). Furthermore, the Complaint does not allege that any defendant was "directly involved in the actual solicitation of [either plaintiff's] purchase." *Griffin v. PaineWebber, Inc*., 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (dismissing Section 12(a)(2) claim).  The Section 12(a)(2) claims should be dismissed for these reasons as well.

## III.   PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER SECTION 15 OF THE SECURITIES ACT

Plaintiffs' Section 15 claims are unsustainable because the Complaint fails to plead a primary claim under Section 11 or 12(a)(2) against Sundial.  *See* NYS Dismissal at 11; *see also, e.g.*, *Morgan Stanley Info. Fund*, 592 F.3d at 366.  "Plaintiffs must also allege, to make out a Section 15 claim, meaningful culpable conduct [by an individual defendant] beyond mere status as a director or officer." *Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc*., 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010).  Because the Complaint disclaims any "meaningful culpable conduct" by any defendant (*see* SAC ¶¶ 74, 83, 88), plaintiffs' Section 15 claims fail for this reason as well.

## IV.   THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

As to the Individual Defendants—all of whom are Canadian citizens residing in Canada—plaintiffs plainly fail to plead facts sufficient to establish the "minimum contacts" with the United States required to establish personal jurisdiction in this Court.  *See International Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). "A person's status as a board member is not alone sufficient to establish jurisdiction." *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008).  Likewise, "allegations that

[foreign board member defendants] caused the distribution of false and misleading reports and statements to [ ] investors in the U.S. are merely conclusory statements applicable to all individual defendants as a result of their positions within the [c]ompany." *Id.*[10]  Because there is no allegation of any action at all by any one of the Individual Defendants in the United States, the claims against the Individual Defendants should be dismissed.

## <u>CONCLUSION</u>

For each of the foregoing separate and independent reasons, defendants respectfully request that the Complaint be dismissed in its entirety with prejudice.

Dated: New York, New York
      May 27, 2020

Respectfully submitted,

 /s/ *Adam S. Hakki*
Adam S. Hakki
(ahakki@shearman.com)
Jeffrey D. Hoschander
(jeff.hoschander@shearman.com)
Daniel Kahn
(daniel.kahn@shearman.com)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Phone:  (212) 848-4000

*Attorneys for Defendants Sundial Growers Inc., Torsten Kuenzlen, James Keough, Edward Hellard, Greg Mills, Gregory Turnbull, Lee Tamkee, and Elizabeth Cannon*

---

[10]     The Complaint even tacitly recognizes that some of the Individual Defendants did not actually sign the Registration Statement.  *See* SAC ¶ 77.

*/s/ Mark Holland*_____
Mark Holland
(mholland@goodwinlaw.com)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018-1405
Phone:  (212) 813-8800

Caroline H. Bullerjahn
(CBullerjahn@goodwinlaw.com)
Katherine Dacey
(kdacey@goodwinlaw.com)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 002210
Phone:  (617) 570-1359

*Attorneys for Defendants Cowen and Company,
LLC, BMO Nesbitt Burns Inc., RBC Dominion
Securities Inc., Barclays Capital Canada Inc.,
CIBC World Markets Inc. and Scotia Capital Inc.*

24