# Exhibit 1

## SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:  **HON. BARRY R. OSTRAGER**          PART          **IAS MOTION 61EFM**

*Justice*

| *In re Sundial Growers Inc. Securities Litigation* | **INDEX NO.** | 655178/2019 |
| --- | --- | --- |
| | **MOTION DATE** | |
| | **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

HON. BARRY R. OSTRAGER

Plaintiffs individually and on behalf of all others similarly situated filed complaints against defendants Sundial Growers Inc. ("Sundial"), Torsten Kuenzlen, James Keough, Edward Hellard, Greg Mills, Gregory Turnbull, Lee Tamkee, Elizabeth Cannon, Donald Puglisi (collectively, the individual defendants), Cowen and Company, LLC ("Cowen"), BMO Nesbitt Burns Inc. ("BMO"), RBC Dominion Securities Inc. ("RBC"), Barclays Capital Canada Inc. ("Barclays"), CIBC World Markets Inc. ("CIBC"), and Scotia Capital Inc. ("Scotia") (collectively, "the underwriter defendants") for violations of the Securities Act of 1933. By Order dated October 23, 2019, those actions were consolidated under the single caption *In re Sundial Growers Inc. Securities Litigation*. Plaintiff then filed an Amended Complaint on November 8, 2019 ("the Complaint"). Presently before the Court is a motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) (5) (7) and (8)[1] joined by all defendants.

Defendant Sundial is an Alberta, Canada-based producer of cannabis products. Sundial commenced cannabis production in December 2018, a few months after Canada legalized adult-

---

[1] All defendants except defendant "Cowan" joint the CPLR 3211 (a) (8) portion of the motion.

use cannabis at the federal level. Complaint ¶ 2 – 3. In August 2019, Sundial's stock went public via an Initial Public Offering ("IPO"). The individual defendants are all officers or directors of Sundial who signed the Registration Statement issued in connection with the IPO[2]. ¶25 – 33. The underwriter defendants were all enlisted to solicit Sundial investors in the IPO. ¶ 34 – 41. Plaintiffs either purchased Sundial stock directly in the IPO, or "traceable" to the Registration Statement. ¶ 20 – 23.

On August 1, 2019, Sundial filed with the SEC on Form 424B4 the final prospectus for the common stock IPO (the "Prospectus"), which forms part of the Registration Statement (the Prospectus and Registration Statement are collectively referred to herein as the "Offering Documents"). According to the Complaint, Defendants sold 11 million shares of Sundial common stock pursuant to the Offering Documents to the investing public at $13 per share, generating approximately $143 million in gross proceeds. ¶ 6.

The Complaint alleges violations of Section 11, Section 12 (a) (2) and Section 15 of the Securities Act of 1933. In particular, the Complaint alleges that the Offering Documents presented Sundial as a producer of "high-quality" and "premium" cannabis. The Complaint alleges that this representation was misleading in light of quality problems Sundial had encountered since 2018, and specifically an incident in which Sundial had a large order returned to them because of its deficient quality. ¶ 61, 65 – 67. The Complaint alleges that Sundial sought to distinguish itself in the market by claiming that its product was "high quality" and "premium." ¶ 58.

---

[2] With the exception of Donald Puglisi who was Sundial's duly authorized U.S. representative at the time of the IPO and is not named in plaintiffs' third cause of action for violation of Section 15 of the Securities Act.

2

Additionally, the Complaint alleges that defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. 929.303 ("Item 303") which required the Offering Documents to disclose: (i) unusual events, transactions or significant economic changes that materially affected the amount of Sundial's reported income from continuing operations and the extent of such changes; and (ii) known trends or uncertainties reasonably expected to have a material impact on the Company's net sales or revenues or income from continuing operations. The Complaint also alleges that defendants violated Item 105 of SEC Regulation S-K, 17 CFR. 5229.105 ("Item 105") which required in the "Risk Factors" section of the Registration Statement a discussion of the most significant factors that made the offering risky or speculative and that each risk factor adequately describe the risk.

**The Pleading Standard**

CPLR §3016(b) states:"[w]here a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." Here, plaintiff alleges that the Offering Documents are materially false and misleading, in other words, they contain misrepresentations. Accordingly, CPLR §3016(b) applies and plaintiff must state the circumstances constituting the misrepresentations in detail. Plaintiff has stated all three of their causes of action in the Complaint in detail as required by CPLR §3016(b).

This motion is brought pursuant to CPLR 3211 (a)(1), based on a defense founded on documentary evidence, (a)(7), for failure to state a cause of action, and (a)(8) for lack of jurisdiction over certain defendants.[3]

---

[3] Defendant's notice of motion includes CPLR 3211 (a) (5), however the grounds under (a) (5) are not specified or addressed in the moving Memorandum of Law.

3

On a motion to dismiss pursuant to CPLR 3211, the court must afford the pleadings a liberal construction, accept the well-pleaded allegations as true, and determine whether the allegations fit within any cognizable legal theory. *See Leon v. Martinez*, 84 NY2d 83, 87-88 (1994).

## Discussion

Defendants move to dismiss the Complaint on the basis that (1) plaintiff has failed to allege a materially false or misleading statement or omission in the Offering Documents, (2) the statements that plaintiff identifies as misleading cannot serve as the basis for a Securities Act claim, and (3) the statements that plaintiff identifies are offset by robust warnings and risk disclosures. Defendants separately argue that this Court does not have jurisdiction over Sundial, the individual defendants or the foreign underwriters (all except Cowen).

## Jurisdiction

Turning first to the threshold issue of personal jurisdiction, the Court finds that plaintiff has adequately alleged personal jurisdiction over the foreign defendants. While the ultimate burden of proof rests with the party asserting jurisdiction, in opposition to a motion to dismiss pursuant to CPLR 3211(a)(8), a plaintiff need only demonstrate that facts "may exist" to exercise personal jurisdiction over the defendants. *See Santiago v. Highway Freight Carriers, Inc.*, 153 A.D.3d 750 (2nd Dep't 2017). Here, plaintiff has put forth several possible grounds for asserting jurisdiction over the defendants, namely, that Sundial has a NY-based agent for service of process (¶ 11), that the underwriter defendants worked with their New York affiliates and drafted the Registration Statement in New York, NY, disseminated the statements alleged to be materially false and misleading in New York, NY, and affirmatively solicited Sundial investors through the Registration Statement in New York, NY (¶ 12), and that the individual defendants

4

reviewed the Offering Documents at the IPO closing in New York, NY (¶ 18). Thus, the Court finds that plaintiff has demonstrated that facts may exist to support a finding of personal jurisdiction in this Court.

**Section 11 and Section 12 (a)(2) of the Securities Act**

Section 11 of the Securities Act of 1933 provides recourse to any person acquiring a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. "The truth of a statement made in the registration statement is judged by the facts as they existed when the registration statement became effective." *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 205 (S.D.N.Y. 2004). Section 12(a)(2) imposes liability under similar circumstances against "a person who offers or sells a security . . . by means of a prospectus or oral communication" 15 U.S.C. § 77l(a)(2).

Plaintiff alleges that the following statements in the Offering Documents were misleading (full sentences reproduced below, alleged misrepresentations underlined):

- Our purpose-built indoor modular grow rooms enable us to produce large volumes of <u>high-quality cannabis in small batches.</u>

- We also believe that our <u>premium, high quality brands</u> and products will deliver superior consumer experiences, resulting in strong consumer loyalty and advocacy.

- In our purpose-built indoor modular grow rooms, <u>we produce high-quality, consistent cannabis</u> in individual, fully controlled room environments.

- In Canada, we <u>currently produce and market premium cannabis</u> for the adult-use (Play) market.

- We also believe that our premium, high quality brands and products will deliver superior consumer experiences, <u>resulting in strong consumer loyalty</u> and advocacy.

5

- We believe that the combination of this craft-at-scale cultivation model, our diverse genetic library and our experienced cannabis cultivation team will result in the highest quality cannabis on the market.

- We are developing high-quality, premium cannabis brands for the adult-use market.

- We intend to capture a leading position in this market by offering differentiated brands underpinned by premium products that deliver consistent and superior user experiences.

- Our purpose-built indoor modular grow rooms enable us to produce large volumes of high-quality cannabis in small batches . . . We believe that the combination of this craft-at-scale cultivation model, our diverse genetic library and our experienced cannabis cultivation team will result in the highest quality cannabis on the market. . .

- We are producing premium cannabis products in purpose-built indoor growing rooms. . . .

- We believe that we have a differentiated operating model designed to generate superior margins and shareholder returns, underpinned by the following competitive strengths.

- Core to the establishment of superior brands are high quality and consistent product offerings that are targeted to meet evolving consumer needs. We strengthen our brands through innovative, iterative and targeted product development that leverages a flexible production infrastructure and continuous consumer feedback loops. ... We believe that this approach will result in brands that resonate with consumers, leading to brand recognition and loyalty.

- We believe our integrated CPG [consumer packaged goods] operating model will deliver superior benefits for all stakeholders in the value chain. Our focus on the premium segment of the global cannabis market is expected to support higher prices and, as a result, deliver higher margins to our distribution and retail partners, as well as the Company. We also believe that our premium, high quality brands and products will deliver superior consumer experiences, resulting in strong consumer loyalty and advocacy. Our tailored supply chains are intended to optimally balance high quality products and low-cost production, which we believe will further contribute to our superior margins and maximize stakeholder returns over time.

Plaintiff contends that the above statements (Complaint ¶ 58 – 60) were false and

misleading because Sundial allegedly "was producing hundreds of kilograms of adulterated

cannabis products that were of low quality, including significant batches that were not fit for

human consumption or that failed to meet the Company's contractual commitments to its most

6

important customers" and "maintained materially deficient manufacturing and quality control processes which had led to the production and distribution of these adulterated cannabis products." Plaintiff alleges that "Sundial's grow rooms were suffering from chronic contamination including crop diseases, bugs, systematic mold infections and other quality control problems" (¶61). Plaintiff further alleges that "an important customer of Sundial, Zenabis, had rejected 554 kilograms (more than a half-ton) of Sundial cannabis due to its materially deficient quality. The product had been adulterated with mold, bits of rubber gloves, and other non-cannabis materials, such as jewelry" (¶ 62).

In support of their motion to dismiss the Complaint defendants argue that plaintiff has failed to identify a materially false or misleading statement or omission in the Offering Documents, that Sundial had no obligation to report the Zenabis return, that Sundial provided adequate risk disclosures, and that many of the statements identified by plaintiff are not actionable as a matter of law. For the reasons that follow, the Court agrees with the two latter arguments, that the alleged misrepresentations are not actionable and offset by sufficient risk warnings, and the Complaint is dismissed.

On a motion to dismiss pursuant to CPLR 3211, the Court must accept the well-pleaded allegations as true. Thus, for the purpose of this motion, the Court accepts that the Zenabis return occurred prior to the IPO, a point that is contested by the parties. However, even if Sundial produced a defective order and the order was returned to Sundial, that incident does not render any of the statements plaintiff identified from the Offering Documents false or misleading simply because that specific instance is not reported in the Offering Documents. The Court finds that each of the statements quoted above was either (1) corporate puffery, too vague to be

7

actionable, (2) a sincere statement of corporate optimism, or (3) sufficiently offset by robust risk disclosures.

Expressions of puffery and corporate optimism are not actionable under the securities laws. *See Netshoes Sec. Litig. v. XXX*, 64 Misc. 3d 926, 932, (N.Y. Sup. Ct. 2019) (citing *Nadoff v. Duane Reade, Inc.*, 107 F. Appx. 250, 252 [2d Cir. 2004]). "This is especially true where…the allegedly fraudulent statements about future performance were accompanied with adequate cautionary language, and not stated as guarantees…[f]urther, a firm has no duty to update [such] vague statements of optimism or expressions of opinion in light of changed circumstances" *Nadoff* at 252 (internal quotation marks and citations omitted).

"Puffery encompasses statements that are too general to cause a reasonable investor to rely upon them, and thus cannot have misled a reasonable investor. They are statements that lack the sort of definite positive projections that might require later correction." *See In re Gen. Elec. Sec. Litig.*, No. 19CV1013 (DLC), 2020 WL 2306434, at 7 (S.D.N.Y. May 7, 2020) (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016]). Here, the terms "high quality" and "premium" are clear examples of puffery because they are general and not subject to verification. At most, "high quality" and "premium" are statements of opinion, which are also not actionable. *See e.g. Netshoes Sec. Litg.* at 932. "To be actionable, the opinion statements must be (i) false and (ii) not honestly believed when made" *See id* (citing *Waterford Twp. Police & Fire Retirement Sys. v. Regional Mgt Corp.*, 2016 WL 1261135, at 9 [S.D.N.Y. 2016]).

In opposition to the motion to dismiss, plaintiff argues that the above statements cannot be considered puffery or opinions because they "misrepresented current facts." However, plaintiff ignores the full sentence in many instances which begin with "we believe", "we intend","will result" and other opinion-based, or forward-looking language. Courts have

8

repeatedly held that statements concerning a company's business potential are inactionable as a matter of law. *See Netshoes Sec. Litg.* at 938 (citing *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at 5 [S.D.N.Y. 2003]).

Importantly, plaintiff also ignores the robust 35-page risk disclosure section of the Offering Documents. The crux of plaintiff's Complaint is that there were quality issues in Sundial's product since 2018, chiefly, the shipment that was sent to Zenabis was deficient and contained mold and foreign objects. However, this exact type of risk was disclosed in the Offering Documents. For example:

- "[O]ur business is subject to the risks inherent in the agricultural business, including risks of crop failure presented by weather, insects, fire, plant diseases and similar agricultural risks. Although we currently grow our products indoors under climate-controlled conditions, there can be no assurance that natural elements, such as extreme weather, insects and plant diseases, will not entirely interrupt our production activities or have an adverse effect on our business. In addition, cannabis plants, including cannabis, herbs and ornamental flowers, can be vulnerable to various pathogens including bacteria, fungi, viruses and other miscellaneous pathogens. We have had to dispose of crops in the past due to crop disease."  Prospectus p. 39.

- "As of the date of this prospectus, all our cultivation and production activities are conducted at our Olds Facility and Rocky View Facility, and our licenses from Health Canada are specific to those facilities. Disruptions at, or adverse changes or developments affecting, our Olds Facility or Rocky View Facility, including municipal rezoning, facility design errors, environmental pollution, equipment or process failures, production errors, disease or infestation of our crops, fires, breakdowns of our sewage system, explosions, power failures, natural disasters or security failures, could materially adversely impact our production of cannabis." Prospectus p. 27.

- "If, as a result of a failure in our (or our service providers') quality control systems, contamination of, or damage to, our inventory or packaged products occurs, we may incur significant costs in replacing the inventory and recalling products. We may be unable to meet customer demand and may lose customers who have to purchase alternative brands or products. In addition, consumers may lose confidence in the affected products. A loss of sales volume from a contamination event may occur, and such a loss may affect our ability to supply our current customers and to recapture their business in the event they are forced to switch products or brands, even if on a temporary basis. We may also be

9

subject to legal action as a result of a contamination, which could result in negative publicity and affect our sales. During this time, our competitors may benefit from an increased market share that could be difficult and costly to regain." Prospectus p. 41.

- "**Manufacturers and distributors of consumer goods products are sometimes subject to the recall or return of their products for a variety of reasons**, including public health and public safety risks, product defects, such as contamination, adulteration, unintended harmful side effects or interactions with other substances, packaging safety and inadequate or inaccurate labeling disclosure. Although we have detailed procedures in place for testing our finished products, there can be no assurance that any quality, potency or contamination problems will be detected in time to avoid unforeseen product recalls, regulatory action or lawsuits, whether frivolous or otherwise." Prospectus p. 41 (emphasis added).

- "We intend to target users of cannabis in the Canadian adult-use cannabis market who are looking for premium products; however, such a market may not materialize or be sustainable." Prospectus p. 25

Contrary to plaintiff's allegations, the Offering Documents do contain a discussion of quality problems that had *already* occurred at the time of the IPO ("[w]e have had to dispose of crops in the past due to crop disease", Prospectus p. 39; "a fire at our Olds Facility in December 2018 damaged a portion of our crops and caused some delays in our production cycle", Prospectus p. 27). Additionally, the Offering Documents are replete with warnings that investing in Sundial common stock "involves a high degree of risk." *See e.g.* Prospectus p. 14., p. 23.

Based on the context of the alleged misrepresentations, their general nature, and their placement amongst robust risk disclosures, the Court finds that the documentary evidence here, the Prospectus itself, utterly refutes plaintiff's first and second causes of action for violations of Section 11 and Section 12(a)(2) of the Securities Act.

**Item 303 and Item 105**

Plaintiff has likewise failed to demonstrate that defendants breached their independent duties under Item 303 and Item 105. Item 303 requires an issuer to "[d]escribe any known trends

10

or uncertainties that have had or that the registrant reasonably expects will have a material . . .

impact on net sales or revenues or income from continuing operations." 17 C.F.R. §

229.303(a)(3)(ii).  Item 105 requires "a discussion of the most significant factors that make an

investment in the . . . offering speculative or risky" to be provided under the caption "Risk

Factors." 17 C.F.R. § 229.105. As shown above, the Offering Documents, including the "Risk

Factors" section, contained a lengthy discussion of many risks inherent in investing in Sundial

common stock, including the risks that plaintiff contends materialized.

**Section 15**

Section 15 of the Securities Act of 1933 "creates liability for individuals or entities that

'control[ ] any person liable' under section 11 or 12".  15 U.S.C. § 77(o). *See In re Morgan

Stanley Info. Fund Sec. Litig*., 592 F.3d 347, 358 (2d Cir. 2010).  Because the Court has not

found defendants liable under Section 11 or Section (12) (a)(2), the third cause of action for

violation of Section 15 is dismissed as moot.

**Conclusion**

As discussed above, the heightened pleading standard under CPLR §3016(b) applies to

all three of plaintiff's claims in this action. However, the Court notes that even if the notice

pleading standard under CPLR §3013 applied, the action must still be dismissed. Though

plaintiff's claims were stated in detail, defendants put forth documentary evidence, specifically

the Offering Documents, which utterly refute plaintiff's claims. The Offering Documents show

that Sundial made no guarantees with respect to the quality of its product, and instead claimed

that it intended to produce "high quality and premium" cannabis, while warning that (1) efforts

to do so may be frustrated due to agricultural risks and (2) a market for high-quality, premium

cannabis products may not materialize. Because plaintiff failed to identify any materially false or

11

misleading statements or omissions in the Offering Documents, the Complaint must be dismissed.

Accordingly, it is hereby,

ORDERED that the Consolidated Complaint for Violations of the Securities Act of 1933 (NYSCEF Doc. No. 18) is dismissed.

Dated:  May 15, 2020

_____
BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

12