UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE SUNDIAL GROWERS INC.
SECURITIES LITIGATION

Master File No. No. 1:19-cv-08913-ALC

<u>CLASS ACTION</u>

--------------------------------------------------------X

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE <u>SECOND AMENDED CONSOLIDATED COMPLAINT</u>

Jacob Goldberg
Leah Heifetz-Li
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, N.Y. 10016
Tel: (215) 686-2817
Fax: (212) 202-3827

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, N.Y. 10006
Tel: (212) 363-7500
Fax: (212) 363-7171

Elizabeth K. Tripodi
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: 212-363-7171
Email: etripodi@zlk.com

*Attorneys for Lead Plaintiffs and Lead Counsel
for the Class*

Date: June 23, 2020

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................ 4

      Background ................................................................................................................................ 4

      The Offering Documents ........................................................................................................ 5

      The New York State Action .................................................................................................... 6

LEGAL STANDARD ........................................................................................................................ 7

ARGUMENT ...................................................................................................................................... 8

  I.   SUNDIAL'S OFFERING DOCUMENTS CONTAINED FALSE AND MATERIALLY MISLEADING STATEMENTS OF FACT. ................................................................. 8

      A.     Pleading Standard. ............................................................................................... 8

      B.     Sundial's Offering Documents Contained False Statements. ............................... 9

      C.     The Alleged False Statements Are Not Forward-Looking or Protected Under the "Bespeaks Caution" Doctrine. ............................................................................. 13

      D.     Sundial's False Statements Were Material. .......................................................... 17

  II.  THE COMPLAINT ADEQUATELY ALLEGES STANDING TO ASSERT 12(a)(2) CLAIMS ...................................................................................................................... 19

  III. PLAINTIFFS HAVE ADEQUATELY ALLEGED CONTROL PERSON LIABILITY UNDER SECTION 15 ................................................................................................. 20

  IV. PLAINTIFFS HAVE ADEQUATELY ALLEGED PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS ........................................................................... 21

CONCLUSION ................................................................................................................................ 23

i

## TABLE OF AUTHORITIES

**Cases**

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005)..................................................................................... 21

*In re Am. Int'l Grp., Inc.2008 Secs. Litig.*,
   741 F.Supp.2d 511 (S.D.N.Y.2010)........................................................................................ 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................... 7

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)............................................................................................................. 8, 18

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
   851 F. Supp. 2d 746 (S.D.N.Y. 2012)................................................................................. 20, 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................... 7

*In re BioScrip, Inc. Sec. Litig.*,
   95 F. Supp. 3d 711 (S.D.N.Y. 2015).......................................................................... 17, 18, 20

*Caiola v. Citibank, N.A.*,
   295 F.3d 312 (2d Cir. 2002)....................................................................................................... 8

*In re CINAR Corp. Sec. Litig.*,
   186 F. Supp. 2d 279 (E.D.N.Y. 2002) ..................................................................................... 22

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
   No. 18-CV-10320 (AJN), 2020 WL 1529371 (S.D.N.Y. Mar. 30, 2020) ......................... passim

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
   875 F.Supp.2d 359 (S.D.N.Y. 2012)........................................................................................ 18

*Dekalb Cty. Employees' Ret. Sys. v. Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*,
   No. 15CV1337, 2016 WL 3685089 (S.D.N.Y. July 6, 2016)............................................. 11, 18

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   847 F.Supp.2d 624 (S.D.N.Y. 2012)........................................................................................ 15

*Donoghue v. Dicut, Inc.*,
   2002 WL 1728539 (S.D.N.Y. July 24, 2002) .......................................................................... 22

*Donoghue v. Ghauri*,
   No. 14 CIV. 6383 PAC, 2015 WL 3919120 (S.D.N.Y. June 25, 2015)............................. 21, 22

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..................................................................................................... 18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................................................. 15, 16

*Federal Housing Fin. Agency for Federal Nat'l Mort. Ass'n v Nomura Holding Amer., Inc.*,
   873 F.3d 85 (2d Cir. 2017)................................................................................................. 7

*In re Flag Telecom Hldgs, Ltd. Sec. Litig.*,
   618 F. Supp. 2d 311 (S.D.N.Y. 2009).............................................................................. 17

*Fresno County Employees' Retirement Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................... passim

*Freudenberg v. E\*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010).............................................................................. 18

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*,
   122 F. Supp. 2d 407 (S.D.N.Y. 2000).............................................................................. 14

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000)................................................................................ 8, 9, 17, 19

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985).............................................................................................. 9

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
   791 F.3d 90 (D.C. Cir. 2015) ........................................................................................... 15

*Hawaii Structural Iron Workers Pension Trsut Fund v. AMC Entertainment*,
   422 F. Supp. 3d 821 (S.D.N.Y. 2019)......................................................................... 17, 20

*Herman & Maclean v. Huddleston*,
   459 U.S. 375 (1983) ............................................................................................................ 1

*In re IAC/InterActiveCorp Securities Litigation*,
   695 F. Supp. 2d 109 (S.D.N.Y. 2010)................................................................................. 9

*In the Matter of Netshoes Sec. Litig.*,
   64 Misc. 3d 926, 105 N.Y.S.3d 846 (N.Y. Sup. Ct. 2019) ............................................... 11

*Indiana Public Retirement Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016)......................................................................................... 10, 16

*In re IndyMac Mortgage-Backed Sec. Litig.*,
   718 F.Supp.2d 495 (S.D.N.Y. 2010)................................................................................. 19

*Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*,
   620 F.3d 137 (2d Cir. 2010).............................................................................................. 13

*In re Lehman Bros. Mortgage-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011)............................................................................................ 20

*Litwin v. Blackstone Grp.*,
   634 F.3d 706 (2d Cir. 2011).................................................................................... 8, 17, 18

*Meyer v. JinkoSolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014)................................................................................................ 8

iii

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ................................................................................. 7, 10

*Milman v. Box Hill Systems Corp.*,
  72 F. Supp. 2d 220 (S.D.N.Y. 1999) ........................................................................... 14

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) ......................................................................................... 8

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004) ......................................................................................... 14

*In re Perrigo Co. PLC Sec. Litig.*,
  19cv70 (DLC), 2020 WL 377881 (S.D.N.Y. Jan. 23, 2020) ....................................... 10, 11, 13

*Perry v. Duoyuan Printing, Inc.*,
  No. 10-cv-7235 (GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) ................................. 19

*In re Prudential Secs. Inc. Ltd. P'ship Litig.*,
  930 F.Supp. 68 (S.D.N.Y.1996) ................................................................................... 15

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ....................................................................................... 10

*Ruskin v. TIG Holdings, Inc.*,
  2000 U.S. Dist. LEXIS 11517, 98 Civ. 1068, 2000 WL 1154278 (S.D.N.Y. Aug. 14, 2000). 14

*S.E.C. v. Alexander,*
  2003 WL 21196852 (S.D.N.Y. May 20, 2003) ................................................................ 22

*S.E.C. v. Sharef*,
  924 F. Supp. 2d 539 (S.D.N.Y. 2013) ........................................................................... 22

*S.E.C. v. Unifund,*
  910 F.2d 1028 (2d Cir.1990) ....................................................................................... 22

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007) ........................................................................... 12

*In re Twinlab Corp. Secs. Litig.,*
  103 F. Supp. 2d 193 (E.D.N.Y. 2000) ........................................................................... 18

*United States SEC v. Meltzer*,
  440 F. Supp. 2d 179 (E.D.N.Y. 2006) ........................................................................... 14

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005) ........................................................................... 15

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ........................................................................ 9, 18

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) .................................................................................................. 22

iv

*In re Worldcom, Inc. Sec. Litig.*,
    294 F.Supp.2d 392 (S.D.N.Y. 2003)......................................................................................... 19

**Statutes**

15 U.S.C. §77l(a)(2)................................................................................................................ 7

15 U.S.C. §77o(a) ................................................................................................................... 7

15. U.S.C. §77k(a) .................................................................................................................. 7

**Other Authorities**

17 C.F.R. §229.301 ............................................................................................................... 18

17 C.F.R. §229.303 ............................................................................................................... 16

**Rules**

FED. R. CIV. P. 9(b) .............................................................................................................. 10

## PRELIMINARY STATEMENT

Sundial Growers Inc. ("Sundial") is an Alberta, Canada-based producer of cannabis products that began production in December 2018 shortly after Canada legalized adult-use cannabis at the federal level. On August 1, 2019, it held an initial public offering on the NASDAQ stock market, selling 11 million shares of its common stock for gross proceeds of more than $134 million (the "IPO"). The most relevant information for investors contained in the Offering Documents for the IPO was Sundial's financial results for the most recent quarter ended June 30, 2019. Knowing this, Sundial overstated its revenue for this critical period by up to 20%, an improper act that its executive later conceded to its Board was "a conscious decision to help the IPO". Under the Securities Act of 1933, this misrepresentation creates strict liability for Sundial to purchasers in the IPO, as well as liability for Sundial's executive officers, directors, and its underwriters.[1]

Congress designed the Securities Act as a form of consumer protection "to assure compliance with the disclosure provisions . . . by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 381-82 (1983). The Securities Act purposefully replaces the rule of *caveat emptor* with a strict duty on the part of the issuer, its board of directors, and its advisors to accurately disclose relevant financial and operational information as required under applicable U.S. Securities and Exchange Commission regulations. Where a Registration Statement contains a misrepresentation or omits required information, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Id*. Accordingly, claims under the Securities Act are not fraud claims and, as the Supreme Court has observed, pleading such claims "places a relatively minimal burden on a plaintiff." *Id*.

---

[1] "Defendants" refers to Sundial, Torsten Kuenzlen, James Keough, Edward Hellard, Greg Mills, Gregory Turnbull, Lee Tamkee, and Elizabeth Cannon (collectively, the "Individual Defendants"), and Cowen and Company, LLC, BMO Nesbitt Burns Inc., RBC Dominion Securities Inc., Barclays Capital Canada Inc., CIBC World Markets Inc., and Scotia Capital Inc. (collectively, the "Underwriter Defendants").

In this case, Sundial's Registration Statement and Prospectus (collectively, the "Offering Documents") materially overstated its revenue for the second quarter of 2019, *i.e.*, the quarter immediately preceding the IPO, leading investors like Plaintiffs to falsely believe that Sundial's finances and operations were stronger than they truly were. Specifically, Sundial overstated its second quarter revenue by between $3 million to $4 million, or by between 12% and 20%. This was not just an error of judgment or over-estimate. Under the applicable accounting standards[2] and Sundial's own revenue recognition policy, revenue could only be recognized for product that had been actually shipped to its customer. For the recently completed quarter ended June 30, 2019, however, Sundial included $3 million to $4 million in sales for product that Sundial had invoiced but not yet shipped.

Sundial also concealed the fact that one of its largest customers had rejected defective product during the second quarter that amounted to 10% of Sundial's overall quarter sales. The Complaint alleges, with particularity, that consistent lapses in quality control permitted sewage to seep into Sundial's grow rooms, in turn leading to mold and fungus on its marijuana. The Offering Documents omitted those persistent quality control issues and that during the quarter ended June 30, 2020, Zenabis Global Inc. ("Zenabis"), one of Sundial's largest customers, had rejected product amounting to 10% of Sundial's sales for that quarter citing "visible mold, parts of rubber glove, and other non-cannabis material." Zenabis later cancelled its contract with Sundial completely. The dispute with Zenabis was a material fact that Defendants withheld from investors in the IPO. By inflating its revenue and concealing the issues with Zenabis, Sundial materially misrepresented the then-current status and strength of its business.

Defendants move to dismiss, denying that the Offering Documents contained anything false or materially misleading. Defendants argue that the revenue figure given for the second quarter of 2019 in the Offering Documents was just an "estimate" and, therefore, should not be

---

[2] As a Canadian issuer, Sundial applies International Financial Reporting Standards ("IFRS") rather than Generally Accepted Accounting Principles ("GAAP").

relied on by investors and, in any event, the revenue figure had never been restated even after Sundial management told the Board it contained revenue that should have been properly recorded in the third quarter. Both arguments fail. An issuer cannot knowingly provide inaccurate historical financial information, such as Sundial's financial results for quarter preceding the IPO, and then attempt to disclaim liability by attempting to cross its fingers behind its back and describing them as an "estimate". Such a result would be entirely contrary to the purpose of the Securities Act of requiring accurate financial information in Offering Documents and imposing strict liability on issuers to encourage compliance. There is no "license to lie" under the federal securities laws by using cautionary language.

Similarly, the absence of a restatement does not *per se* demonstrate as a matter of law that Sundial's published revenue figures for the second quarter of 2019 were not false. Under this theory, plaintiffs could only adequately allege a false financial statement if a defendant admitted its falsity. This is not the law. While a restatement does establish a material misrepresentation as a matter of law, the inverse is not true: a plaintiff may allege that financial statements are misleading even when there has been no restatement. By relying on this red herring, Defendants ignore that, in violation of IFRS and Sundial's own accounting policy, Sundial's most recent financial results in the Offering Documents incorrectly included between $3 million and $4 million of revenue for the second quarter of 2019—product that did not ship during that quarter. In the face of the Complaint's adequately pleading that Sundial incorrectly recorded as revenue sales in advance of shipment, its failure to restate its financial results is irrelevant.

Defendants also misplace reliance on a decision from the Supreme Court of New York State (the "NYS Decision") holding that certain statements about Sundial's "quality control" were not materially misleading. Defendants overstate the impact of the case on this action. The allegations before the New York court did not, ***in any capacity***, involve Plaintiffs' allegations concerning Sundial intentionally overstating its revenue for the second quarter. Unlike the Complaint here, the New York State complaint did not allege with particularity how Sundial's financial statements in question were materially false. Further, while the NYS Decision addressed

3

omissions related to "quality control," the complaint in that case did not connect actual quality control issues to materially false financial statements. In this case, the Complaint alleges that Sundial convinced Zenabis to defer a massive product return until after the IPO. This rendered the "estimated" revenue figures for the second quarter in the Offering Documents materially misleading. As a result, this Court should confront the material differences between the New York State case and the complaint in this case even as Defendants ignore them. Notwithstanding the NYS Decision, therefore, Plaintiffs' allegations should survive Defendants' motion to dismiss.

Defendants' remaining arguments are procedural in nature. They claim that Plaintiffs do not have standing to pursue claims under Section 12(a)(2) of the Securities Act and that Sundial's officers and directors should be allowed to skirt liability on the basis of jurisdiction. By alleging that the underwriter defendants not only solicited the purchase of securities for their own interest, but also that they participated in the promotion and sale of Sundial stock to investors, Plaintiffs have sufficiently demonstrated standing at the motion to dismiss stage. In any event, Co-Lead Plaintiff 0998735 BC LTD's trade confirmation shows that they purchased directly from Scotia Capital Inc., one of the Underwriter Defendants. Additionally, Plaintiffs have also pleaded sufficient minimum contacts on the part of Sundial's officers and directors to warrant personal jurisdiction at this stage.

For all these reasons and as further discussed herein, respectfully, this Court should deny Defendants' Motion.

**STATEMENT OF FACTS**

**A.     Background**

Sundial produces and distributes marijuana in Canada. ¶15.[3] It began cultivating its product in 2012 and started selling it in 2018 after Canada legalized adult, recreational use. ¶4. On October 9, 2018, Sundial opened its flagship facility in Olds, Alberta ("Olds Facility"), containing 140

---

[3] The Second Amended Consolidated Complaint is referred to herein as the "Complaint." Citations to "¶ __" reference paragraphs in the Complaint.

4

cultivation rooms capable of producing over 100 million grams of cannabis annually. ¶¶4, 43. Shortly thereafter, Sundial began preparing for its IPO. On July 5, 2019, it filed the Registration Statement. ¶53. Sundial completed the IPO on August 1, 2019, filing and distributing the Prospectus by which it sold through the Underwriter Defendants 11 million shares of common stock at $13 per share. ¶¶55, 56. In total, Sundial raised approximately $134.4 million in gross proceeds. ¶55.

B.      The Offering Documents

Unbeknownst to Plaintiffs and other investors, Sundial's Offering Documents contained untrue statements of material fact and omitted to state material facts that was required to be disclosed. Most importantly, Sundial materially misstated its revenue for the second quarter of fiscal 2019, the quarter immediately prior to the IPO. Although Sundial claimed that its second quarter gross revenue was between $19 million and $21 million, *revenue was in fact $3 million to $4 million less*. ¶¶59-60. This difference was material, accounting for between 12% and 21% of Sundial's revenue for the quarter. ¶60.

Recording at least $3 million to $4 million of revenue in the second quarter violated IFRS and Sundial's own accounting policy. As the Offering Documents explained, Sundial recognized revenue in accordance with IFRS 15 which permitted revenue to be recorded only when "[Sundial] transfers control of the good(s) to the customer, which is at the point of delivery for recreational cannabis." ¶61 (stating further that Sundial recognizes revenue "at a point in time, typically on delivery of the goods to customers' premises, which is when the performance obligations of the transaction are fulfilled"). Sundial recorded at least $3 million in revenue notwithstanding that it had not yet shipped the product associated with that revenue. ¶60. By recognizing unshipped product as revenue in the second quarter, therefore, Sundial violated its publicly disclosed revenue recognition policies. ¶¶61-62.

This revenue was recognized prematurely to present a flattering, and misleading, impression of Sundial's business to potential investors in its IPO. This is not speculation by Plaintiffs. Rather, the Complaint alleges that during an August 25, 2019 Board of Directors

5

meeting, just following the IPO, Sundial's CEO, defendant Kuenzlen, admitted that:

> There was 3 to 4 million dollars that we recognized in June that made us hit the growth sales of $20 million, which was a conscious decision to help the IPO, frankly. That $3 to 4 million, we sure wish we had it in quarter three now instead of quarter two, but that should have probably been counted here. We were able to accelerate it, and obviously that makes the numbers fewer a little bit.

¶¶57-58 (emphasis added).

In addition to prematurely recognizing revenue, Sundial also inflated its second quarter results by causing one of its largest customers to defer returning adulterated product until after the second quarter. During the second quarter, Zenabis, sought to return or reject delivery of a total of 554 kilograms of marijuana, 10% of Sundial's total second-quarter sales, because the product failed to meet basic quality control standards. ¶¶45, 64. The marijuana that Sundial supplied contained visible mold, parts of rubber gloves, and other non-cannabis material. ¶45. Sundial asked Zenabis to wait until after the second quarter to make the return so that it would not impact the strength of the IPO. ¶46. Zenabis ultimately cancelled its contract with Sundial. ¶47.

### C.    The New York State Action.

On September 9, 2019, shortly before this action was filed, another Sundial shareholder Trisha Peters commenced an action in New York State court, alleging false and misleading statements only with respect to the quality of Sundial's products. Specifically, Ms. Peters contended that positive statements in the Offering Documents about the quality of Sundial's cannabis were false and misleading because Sundial's product was actually of low quality, including significant batches that were not fit for human consumption or that failed to meet customer specifications. NYS Complaint, ¶¶57-62.[4] The NYS Complaint's allegations did not involve Sundial's false statements in connection with its estimated revenue for the second quarter of 2019.

---

[4] A copy of the operative complaint in the New York action ("NYS Complaint") is attached to the Declaration of Adam M. Apton, referred to herein as the "Apton Decl.," as Exhibit A.

**LEGAL STANDARD**

On a motion to dismiss, the Court must accept all factual allegations as true and make all reasonable inferences in favor of the plaintiff. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). The Court must deny the motion if the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570.

Plaintiffs allege claims under Section 11 of the Securities Act against Sundial and the Individual Defendants, relating to the Registration Statement. They allege claims under Section 12(a)(2) of the Securities Act against Sundial and the Underwriter Defendants, relating to the Prospectus. Last, they allege claims under Section 15 of the Securities Act against the Individual Defendants for control person liability. These sections provide shareholders with a private right of action against certain statutorily-enumerated parties when a registration statement or prospectus contains "an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15. U.S.C. §77k(a); *see also* 15 U.S.C. §77l(a)(2); 15 U.S.C. §77o(a). Section 11 of the Securities Act, 15 U.S.C. §77k, imposes strict liability on Sundial and the Individual Defendants and liability for negligence against the underwriters. *Federal Housing Fin. Agency for Federal Nat'l Mort. Ass'n v Nomura Holding Amer., Inc*., 873 F.3d 85, 99 (2d Cir. 2017) (citation omitted); *see also Fresno County Employees' Retirement Ass'n v. comScore, Inc*., 268 F. Supp. 3d 526, 557 (S.D.N.Y. 2017) (Securities Act imposes liability against issuer "'even for innocent misstatements.'") (citation omitted).

## ARGUMENT

**I.**   **SUNDIAL'S OFFERING DOCUMENTS CONTAINED FALSE AND MATERIALLY MISLEADING STATEMENTS OF FACT.**

**A.**   **Pleading Standard**.

Section 11 of the Securities Act imposes strict liability on a security's issuer, underwriter, and anyone who signed a registration statement when the registration statement for that security contains "a material omission in contravention of an affirmative legal disclosure obligation." *Litwin v. Blackstone Grp.*, 634 F.3d 706, 715 (2d Cir. 2011); *see also Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (Section 11 "imposes liability for a material misstatement of fact or an omission to state a fact that renders a statement made materially misleading"). "Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Id*. at 250 (citing *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002)). Section 12(a)(2) "provides similar redress where the securities at issue were sold using prospectuses or oral communications that contain material misstatements or omissions." *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, No. 18-CV-10320 (AJN), 2020 WL 1529371, at *10 (S.D.N.Y. Mar. 30, 2020) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)).[5]

Materiality is shown at the pleading stage by alleging a misrepresentation or omission that "a reasonable investor would have considered significant in making investment decisions." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161-62 (2d Cir. 2000) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)). "'[A] complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously

---

[5] Defendants contend that Plaintiffs fail to meet the heightened pleading standard of Rule 9(b). MTD at 8. Rule 9(b), however, does not apply in this case. The Complaint asserts no fraud claim and avoids any actual allegations that any defendant committed fraud. *See Litwin*, 634 F.3d at 718 (Section 11 plaintiff "need only satisfy the basic notice pleading requirements of Rule 8"). Indeed, Plaintiffs expressly disclaim that these allegations sound in fraud. ¶¶74, 83, 88.

unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Ganino*, 228 F.3d at 162 (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

### B.    Sundial's Offering Documents Contained False Statements.

The Offering Documents represented that Sundial's "estimated" gross revenue for second quarter of 2019 was between $19.0 million and $21.0 million gross and its net revenue was between $18.0 million and $20.0 million. ¶59. This was false because, in violation of IFRS and its own accounting policies, Sundial improperly included in its second quarter results $3 million to $4 million of revenue that should have been recognized in the third quarter. ¶60. Therefore, Sundial should have disclosed instead that its gross revenue for the second quarter of 2019 was between $14 million and $17 million.

These allegations are not "'[s]ketchy at best'" as asserted by Defendants. MTD at 18. The Complaint identifies a specific representation, the disclosure of the estimated range of revenue recognized by Sundial in the just-completed second quarter of 2019, and explains that this representation is misleading because it includes $3 million to $4 million in revenue prematurely recognized in violation of Sundial's accounting policies and IFRS. This is more than sufficient to set a material misrepresentation. *See In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 173 (S.D.N.Y. 2003) (finding allegations regarding Vivendi's reported inflated revenues due to its prematurely recognizing revenue in violation of GAAP and its own publicly disclosed revenue recognition policy to satisfy pleading requirements for Section 11 claim); *see also Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 560 (S.D.N.Y. 2017) (finding allegations regarding improper revenue recognition for nonmonetary transactions resulting in inflated revenues in the Registration Statement to be actionable misrepresentations under Section 11). The allegations in the Complaint here are far more particularized than the allegations made in "the most general terms" in *In re IAC/InterActiveCorp Securities Litigation*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010), where plaintiff failed, for instance, to allege a specific admission by the issuers CEO to his Board of Directors of improper revenue recognition to "help the IPO." ¶58.

9

Plaintiffs have thus alleged specific facts, corroborating the material amount by which Sundial overstated its revenue for the second quarter of 2019 in the Offering Documents.[6]

Plaintiffs also sufficiently allege that the Offering Documents statements concerning its adherence to IFRS 15 were materially misleading. ¶61. Financial statements that are not prepared in accordance with applicable accounting standards are "presumptively misleading or inaccurate." *In re Perrigo Co. PLC Sec. Litig.*, 19cv70 (DLC), 2020 WL 377881, at *5 (S.D.N.Y. Jan. 23, 2020) (quoting *Indiana Public Retirement Sys. v. SAIC, Inc.*, 818 F.3d 85, 93 (2d Cir. 2016)). The Offering Documents stated that on July 1, 2018, over one year before the IPO, Sundial had adopted IFRS 15, and specifically stated that "[r]evenue from the direct sale of cannabis for a fixed price is recognized when [Sundial] ***transfers control of the good(s) to the customer, which is at the point of delivery for recreational cannabis***. (Emphasis added)." ¶61. IFRS and Sundial's own revenue recognition policy prohibited it from recognizing revenue for which it had not yet shipped product. Read together with Sundial's statements about its revenue for the second quarter of 2019, this statement would lead a reasonable investor to believe that second quarter of 2019 revenue included only product to which Sundial had transferred control during that quarter. The interplay between the statement regarding Sundial's revenue recognition policy and the overstated revenue figures for 2019 creates a materially false and misleading statement, not a "mere alleged deviation" from IFRS as defendants contend. MTD at 20. *See comScore*, 268 F. Supp. 3d at 560; *Vivendi*, 381 F. Supp. 2d at 173.

---

[6] Even if Plaintiffs' allegations are reviewed under Rule 9(b), Kuenzlen's statement at the August 25, 2019 board meeting—a detailed admission of the falsity of Sundial's "estimated" second quarter financial statements—provides sufficient support from Sundial's most senior executive that the second quarter financials the Operating Documents include were false. In *Rombach v. Chang*, which Defendants themselves cite, the Second Circuit support supports that Rule 9(b) requires only that the "pleading explain why the statements were fraudulent," a burden that Plaintiffs easily meet. 355 F.3d 164, 172 (2d Cir. 2004) (quoting *Mills*, 12 F.3d at 1175). The Complaint alleges that Sundial's management recognized $3 million to $4 million in revenue that "should have been counted [in quarter three]" in "June that made us hit the growth sales of $20 million, which was a conscious decision to help the IPO, frankly." ¶58. This allegation more than suffices for the purposes of pleading "intent," which Rule 9(b) expressly states "may be alleged generally." FED. R. CIV. P. 9(b).

Defendants cite *Dekalb Cty. Employees' Ret. Sys. v. Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*, No. 15CV1337, 2016 WL 3685089, at *4 (S.D.N.Y. July 6, 2016), for the proposition that an "alleged deviation from IFRS does not create a material misstatement or omission that is actionable under the Securities Act." MTD at 20. This case is inapposite. *Controladora* is clear that "[c]ourts have found that premature recognition of revenue by a growing company can be material." *Id*. In that case, the court found that quantitatively and qualitatively, plaintiff had not established that a deviation from accounting standards was material where the disputed revenue deferral represented only 1.46% of the company's quarterly revenue and "the alleged accounting violation [was] simply 'duplicative of the other alleged misstatements.'" *Id*. at *4-5. Here, the Complaint alleges that Sundials violations of GAAP and its own accounting policy caused it to overstate revenue by 12.2% to 21% of its estimated gross revenue for the second quarter 2019, an overstatement that is plainly material and misleading. *Id*. at *4.

More, Defendants' argument is based on the premise that they "subjectively believe[d] its accounting judgment at the time that these judgements were made." MTD at 20. Whether Sundial shipped product during the quarter in which they recognized revenue required no judgment, no "complex accounting judgments," and no subjective analysis. Either Sundial shipped its product or it did not. Because the Complaint alleges that it did not ship the product, Sundial violated IFRS 15 and its own accounting policy when it recognized revenue for purported sales of unshipped product in the second quarter of 2019.[7] *See comScore, Inc*., 268 F. Supp. 3d at 546 (denying motion to dismiss finding case not about "complex accounting judgments over which reasonable minds can differ" but about bypassing asserted accounting methodology); *see also In re Perrigo*, 2020

_____

[7] *In the Matter of Netshoes Sec. Litig.*, 64 Misc. 3d 926, 934, 105 N.Y.S.3d 846, 854 (N.Y. Sup. Ct. 2019), is inapposite, involving as it did complex accounting judgments relating to "which accounts receivable are collectable based on the facts and circumstances of those particular sales at the time in which such sales and accounts receivable are reported." More, unlike the revenue recognition allegations in *Netshoes*, 64 Misc. 3d at 935, the Complaint alleges that Sundial had a return policy but convinced Zenabis not to return 10% of it second quarter sales during that quarter, ¶46, and had not shipped product associated with material sales, disabling it from recording those sales as revenue. ¶51. *Netshoes*, therefore, supports denial of Defendants' Motion to Dismiss.

11

WL 377881 at *10 (denying motion to dismiss rejecting interpretation that would seriously undermine an accounting principle's disclosure obligation where no judgment was required to estimate the upper range of a potential tax bill). The second quarter financials in the Offering Documents, therefore, were false. More, Defendants ignore that the Complaint specifically pleads that they believed no such thing. Kuenzlen ***admitted*** to intentionally recognizing third quarter revenue during the second quarter to "help the IPO, frankly." ¶58.[8]

Finally, Defendants' argument that their revenue estimates "correctly" corresponded to actual revenue subsequently reported for the second quarter is a red herring. MTD at 20. Their correlation makes neither materially accurate. It is implausible that after the quarter, Defendants issued "estimated" financial results, sold $134 million of stock in the IPO and then materially changed their second quarter results. Sundial's reported actual results merely continued to reflect the improper acceleration of revenue that included product that it had not shipped during that quarter. Their failure to restate them certainly does not mean that they are not false, either in the Offering Documents or in later disclosures.

Further, a restatement is not a prerequisite to a Section 11 violation. *See*, *e.g., In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 390 (S.D.N.Y. 2007) (finding failure to disclose uncertain tax liability in financial statements made these statements false and misleading even though defendants never restated their financial statements). Such a requirement would essentially make false statements actionable only when defendants admit them. In any event, the Complaint here pleads such an admission with particularity, quoting Kuenzlen verbatim from a board meeting. *Id*. Instead, alleging that the "estimated" financial results in the Offering Documents violated applicable accounting principles and contained material errors is sufficient to plead material falsity. *See Evoqua Water Techs. Corp.*, 2020 U.S. Dist. LEXIS 55410, at *75-*76 (plaintiffs adequately pleaded Section 11 violation where financial statements based on accounting fraud,

---

[8] Kuenzlen's statements are entirely absent from the complaint filed by Ms. Peters and addressed in the NYS Decision.

notwithstanding minimal quantitative impact of misstatement). Given that the Complaint pleads with particularity that Sundial caused a large client not to return adulterated product and recognized revenue on material sales that it did not ship, the Complaint adequately pleads that the financial statements for the second quarter of 2019 that Sundial included in the Offering Documents were actionably false.

### C. The Alleged False Statements Are Not Forward-Looking or Protected Under the "Bespeaks Caution" Doctrine.

Defendants attempt to characterize Sundial's revenue statements for the second quarter of 2019 as "estimates" that were "forward-looking statements" protected under the "bespeaks caution" doctrine and that no reasonable investor would have relied on. MTD at 19. Defendants' argument fails, primarily because the "bespeaks caution" doctrine applies only to forward-looking statements and the statements at issue are not forward-looking. *See Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 142 (2d Cir. 2010) ("It is settled that the bespeaks-caution doctrine applies only to statements that are forward-looking").

Nothing about the Offering Documents' representations of Sundial's second-quarter revenue addressed Sundial's prospects. *See id*. (bespeaks caution doctrine did not apply to statements about risk-management system where statements communicated "present or historical fact"). Notwithstanding that the Offering Documents described Sundial's second quarter 2019 revenue as an "estimate" for a quarter that had already concluded, the financial results were not projections for a future quarter or even projections for the just completed second quarter. As Judge Cote wrote in *In re Perrigo*, even "[a] party's current, good faith estimate of the range of loss that there is a reasonable possibility it has already incurred is not a forward-looking statement." 2020 WL 377881 at *11.

In context, too, Defendants' assertion about "estimated" financial results is implausible, bordering on silly. As noted above, the revenue recognition principles relevant to this case are simple. Either Sundial shipped its product during the second quarter, entitling it to recognize those sales as revenue, or it did not. At the time of the IPO, indeed as of June 30, 2019, if Sundial had

13

not shipped its product—a fact the Complaint alleges with requisite particularity—then IFRS and its own accounting policy prohibited it from recording those sales as revenue. Because Sundial could, under no circumstances, record those sales as revenue for its failure to ship the pot, then under no circumstances was it entitled to ***estimate*** that that unshipped product represented revenue, actual or potential. At the time of the Offering Documents, therefore, with respect to engaging in the act of shipping product, the results were actual and could not change. *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96-97 n.3 (2d Cir. 2004) (adopting explicitly a forward-looking limitation to the bespeaks-caution doctrine, but acknowledging that "elaborating such a distinction may be unnecessary" "[b]ecause the 'bespeaks caution' doctrine is often defined with respect to forward-looking statements"). The Offering Documents calling the second quarter results "estimated," therefore, has no bearing whatsoever on this Courts evaluation of the Complaint's sufficiency.

More, the bespeaks caution doctrine is inapplicable where, as here, defendants knew the statement was false. *See United States SEC v. Meltzer*, 440 F. Supp. 2d 179, 191-92 (E.D.N.Y. 2006) ("In sum, the 'bespeaks caution' doctrine does not apply 'where a defendant knew that its statement was false when made'") (quoting *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 419 (S.D.N.Y. 2000)); *Milman v. Box Hill Systems Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999) ("No degree of cautionary language will protect material misrepresentations or omissions where defendants knew their statements were false when made"); *see also Ruskin v. TIG Holdings, Inc.*, 2000 U.S. Dist. LEXIS 11517, 98 Civ. 1068, 2000 WL 1154278, at *7 (S.D.N.Y. Aug. 14, 2000) ("Cautionary language does not protect material misrepresentations or omissions when defendants knew they were false when made.") (quotation marks and citation omitted). Since Kuenzlen openly admitted to intentionally recognizing third quarter revenue during the second quarter to "help the IPO," Defendants cannot avail themselves of the bespeaks caution doctrine (even if the statement at issue was forward-looking, which this is not). ¶58.

Defendants' risk warnings about quality control also fail to support a defense premised on the bespeaks caution doctrine and instead gave rise to a duty to disclose that Zenabis had already

14

informed Sundial that it was rejecting and returning pot for quality control issues. In the face of these risk disclosures about the possibility of quality control problems, the Offering Documents omitted material information regarding a ***known event that had already occurred*** and should have materially impacted Sundial's second quarter financial results that the Offering Documents provided. An issuer's purported risk disclosures are misleading where the issuer warns only that a risk may impact its business when that risk has already materialized, like the Zenabis rejection of product. *comScore, Inc*., 268 F. Supp. 3d at 548 (in the face of plausible allegations that revenue projection was fictitious, defendants cannot rely on cautionary language for exculpation) (citing *In re Harman Int'l Indus., Inc. Sec. Litig*., 791 F.3d 90, 102 (D.C. Cir. 2015)); *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013). "[E]ven apparently specific risk disclosures like those in [a defendant company's] prospectus are misleading if the risks are professionally stamped in internal undisclosed analyses ... as significantly greater or more certain than those portrayed in the prospectus." *In re Prudential Secs. Inc. Ltd. P'ship Litig.,* 930 F.Supp. 68, 72 (S.D.N.Y.1996); *see also In re Van Der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400, 415 (S.D.N.Y. 2005) (statements purporting to warn that a company's business "could" be negatively impacted "if" it failed to comply with industry regulations were materially misleading where the company was violating industry regulations at the time it issued those purported warnings); *Dodona I, LLC v. Goldman, Sachs & Co.,* 847 F.Supp.2d 624, 646 (S.D.N.Y.2012) ("Since the Offering Circulars contained affirmative representations regarding the risks of investing, ... Defendants had a duty to ensure that those statements were accurate and complete."). "[G]eneric risk disclosures are inadequate to shield defendants from liability for failing to disclose known specific risks." *In re Am. Int'l Grp., Inc.2008 Secs. Litig.,* 741 F.Supp.2d 511, 531 (S.D.N.Y.2010).

Prior to the IPO, during the second quarter of 2019, Zenabis returned or rejected a total of 554 kilograms of marijuana from Sundial because it contained visible mold, parts of rubber gloves, and other non-cannabis material. The return was the equivalent of more than 10% of Sundial's total second-quarter cannabis sales of five metric tons. ¶45. Sundial executives asked Zenabis to

15

wait to make the return until the third quarter after the IPO. ¶46. Defendants knew that the Zenabis rejection and/or return would materially impact Sundial's revenues at least one month before the IPO. ¶45. Indeed, Sundial asked Zenabis to wait to make the return until the third quarter. ¶46. The Offering Documents, however, omitted this information that under Item 303, Defendants were required to disclose. *See Facebook*, 986 F. Supp. 2d at 513 (finding that defendants were required to disclose the negative impact the Company had suffered as a result of increasing mobile usage ten days before the IPO).[9]

Defendants attempt to skirt their responsibility to disclose the Zenabis rejection under Item 303 by arguing that Plaintiffs failed to allege that it would have a material impact. MTD at 17. But the Complaint specifically states that the Zenabis return was the equivalent of more than 10% of Sundial's total second-quarter cannabis sales of five metric tons. ¶45. Defendants knew this at the time of the IPO. ¶45. A rejection of 10% of Sundial's sales for quality control issues, including mold and inorganic particles in the pot, is not so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance. As such, Defendants should have disclosed it.

Defendants argue that because the NYS Decision dismissed the Zenabis-related claims under Item 303, dismissal is also appropriate here. MTD at 15. Notably, however, the NYS Decision included only one paragraph, stating that "[a]s shown above, the Offering Documents, including the "Risk Factors" section, contained a lengthy discussion of many risks inherent in investing in Sundial common stock, including the risks that plaintiff contends materialized." NYS

---

[9] SEC Regulation S-K, Item 303, 17 C.F.R. §229.303(3) required Sundial to disclose the Zenabis rejection and return of product representing 10% of its sales for the second quarter of 2019. Under sub-sections (3)(i) or or (3)(ii), the Zenabis returns were either or both an "unusual or infrequent event[] or transaction[]. . . that materially affected the amount of reported income from continuing operations" or a "known trend[] or uncertaint[y] that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." At 10% of second quarter revenue, Sundial was required to disclose the Zenabis returns *See SAIC, Inc.*, 818 F.3d at 94-96 (reversing dismissal finding that Item 303 required disclosure of fraud that potentially impacted company's revenues).

16

Decision at 11. It did not address the ample precedent in this District supporting Plaintiffs' allegations, which this Court will rely on to analyze their claims in this action.

      **D.**        **Sundial's False Statements Were Material.**

In addition to being false, Sundial's representations about its second quarter revenue were material. "Where the principal issue is materiality, an inherently fact-specific finding, the burden on plaintiffs to state a claim is even lower" than the "relatively minimal burden" applicable to other elements of their claims under Rule 8 of the Federal Rules of Civil Procedure." *Litwin*, 634 F.3d at 718. A "complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino*, 228 F.3d at 162; *see also City of Omaha Police and Fire Retirement Sys. v. Evoqua Water Tech. Corp.*, 18-cv-10320 (AJN), 2020 WL 1529371 *21-22 (S.D.N.Y. Mar. 20, 2020) (denying motion to dismiss, finding that even a relatively small revenue overstatement of 0.37% may in the appropriate circumstances be material); *see also Hawaii Structural Iron Workers Pension Trsut Fund v. AMC Entertainment*, 422 F. Supp. 3d 821, 842 (S.D.N.Y. 2019) (denying motion to dismiss find a trend impacting European operations that constituted less than 23% of business was no so obviously unimportant to warrant dismissal at the pleading stage); *In re Flag Telecom Hldgs, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 321 (S.D.N.Y. 2009) (denying motion to dismiss on materiality grounds). And as this Court has explained, "[t]he Second Circuit has previously emphasized that courts cannot rely solely on the quantitative impact of a misstatement, but must consider quantitative factors in conjunction with qualitative factors." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 738 (S.D.N.Y. 2015); *see also Litwin*, 634 F.3d at 719 (overturning District Court's conclusion that misstatement was immaterial solely because it fell below 5%). "If district courts were to simply apply the five percent rule of thumb in a rote manner, it would 'effectively sanction misstatements ... so long as the net effect on revenues ... was immaterial.' " *BioScrip*, 95 F. Supp. 3d at 738 (quoting *Litwin*, 634 F.3d at 719); *see also City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F.Supp.2d 359, 368 (S.D.N.Y.

17

2012) (observing that five percent threshold is "merely a rule of thumb" and that "materiality cannot be reduced to a numerical formula"). Instead of relying on a one-size-fits-all rule, the Court must engage in "a fact-specific inquiry." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (citing *Basic*, 485 U.S. at 240, 108 S.Ct. 978). Just as in *BioScrip*, Plaintiffs here allege misrepresentations related to "a particularly noteworthy segment of" Sundial's overall business—its sales and revenue. *BioScrip*, 95 F.Supp.3d at 737-38; *see also Litwin*, 634 F.3d at 720 ("Even where a misstatement or omission may be quantitatively small compared to a registrant's firm-wide financial results, its significance to a particularly important segment of a registrant's business tends to show its materiality."). Accordingly, at this stage, the Court cannot conclude that the alleged overstatements of revenue were immaterial as a matter of law. *See City of Pontiac*, 875 F.Supp.2d at 368; *see also Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 181 (S.D.N.Y. 2010) ("[T]he trier of fact usually decides the issue of materiality.").

Revenue is an important financial metrics to an investor.[10] The $3 million to $4 million of improperly recognized revenue included in Sundial's "estimates" for the second quarter of 2019 represented 12.2% to 21% of its estimated gross revenue for the quarter. ¶60. It is obviously material to a reasonable investor that Sundial's revenues for the second quarter of 2019 were just $15 million to $17 million rather than $19 million to $21 million. "Courts have found that premature recognition of revenue by a growing company can be material because it 'rob[s] Peter to pay Paul; accelerating there cognition of revenues into an earlier financial quarter; and therefore portraying the company's current performance as more robust than it actually was.'" *Controladora*, 2016 WL 3685089, at *4 (quoting *In re Twinlab Corp. Secs. Litig.,* 103 F. Supp. 2d 193, 202 (E.D.N.Y. 2000)); *see also Vivendi*, 381 F. Supp. 2d at 179–80 (focusing on

---

[10] Indeed, the SEC only requires three items from an issuer's income statement to be disclosed in a registration statement: net sales or operating revenues, net income, and earnings per share. SEC Regulation S-K Item 301, Instruction 2, 17 C.F.R. §229.301 Inst. 2.

allegations of defendants improperly recognizing revenue leading to inflated earnings as opposed to the magnitude of the inflation); *see also Ganino*, 228 F.3d at 162 (noting that the Court has "consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation" in discussing percentage of revenue implicated by misrepresentation). Sundial's overstating its second quarter 2019 revenues by 12-20% is not so obviously unimportant that this Court may dismiss the Complaint on materiality grounds at the pleading stage.

## II.   THE COMPLAINT ADEQUATELY ALLEGES STANDING TO ASSERT 12(a)(2) CLAIMS

The Complaint sufficiently pleads standing under section 12(a)(2) by alleging that the underwriter defendants not only solicited the purchase of securities for their interests, but also that they participated in the promotion and sale of Sundial stock to investors. ¶¶8, 27-32, 37, 55, 78. Similar allegations regarding soliciting and selling shares in and IPO and drafting and disseminating offering materials have been found to be sufficient for statutory standing at the motion-to-dismiss stage, under § 12(a)(2). *See, e.g., Perry v. Duoyuan Printing, Inc.*, No. 10-cv-7235 (GBD), 2013 WL 4505199, at *12 (S.D.N.Y. Aug. 22, 2013) (finding statutory standing because plaintiffs "alleged that the Underwriters negotiated the IPO price, controlled the contents and dissemination of the Registration Statement and Prospectus, and offered to engage in transactions to stabilize, maintain or otherwise affect the price of the common shares during and after the offering" and because the underwriters received financial benefit from the offering); *In re Worldcom, Inc. Sec. Litig.*, 294 F.Supp.2d 392, 423 (S.D.N.Y. 2003); *see also In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F.Supp.2d 495, 502 (S.D.N.Y. 2010) (finding that Plaintiffs had sufficiently pleaded standing under 12(a)(2) due to allegations that Underwriters solicited, sold, and distributed certificates, and that they had done so for their own personal gain).

In this District, the fact that a plaintiff did not identify which underwriter defendant they purchased shares from does not defeat their claim at this stage. *See Evoqua Water Techs. Corp.*, 2020 WL 1529371, at *13; *see also Perry*, 2013 WL 4505199, at *12 ("[C]ourts within the Second Circuit do not require that the putative class representative identify the specific underwriter

from which it purchased shares as long as the allegations are sufficient."). With respect to standing

for a 12(a)(2) claim, plaintiffs in *Evoqua* merely stated that "Louisiana Sheriffs purchases Evoqua

common stock in the Offerings traceable or pursuant to the false and misleading Registration

Statement and was damaged thereby." The Court found this sufficient for plaintiffs to satisfy their

burden on standing at the motion to dismiss stage. *Id*. at 13. Accordingly, Plaintiffs here, too, have

satisfied their burden to demonstrating their standing to assert claims under section 12(a)(2).[11]

## III.   PLAINTIFFS HAVE ADEQUATELY ALLEGED CONTROL PERSON LIABILITY UNDER SECTION 15

Section 15 imposes joint and several liability on "[e]very person who, by or through stock

ownership, agency, or otherwise . . . controls any person liable under" Section 11. *In re Lehman*

*Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011). "To establish § 15 liability,

a plaintiff must show a 'primary violation' of § 11 and control of the primary violator by

defendants." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 746 (S.D.N.Y. 2015). Contrary to

Defendants' argument, MTD at 22, Courts within this District generally hold that for purposes of

pleading control person liability under the Securities Act, "culpable participation is not required

under § 15." *Id*. at 746; *see also In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851

F. Supp. 2d 746, 773 (S.D.N.Y. 2012) ("While the Second Circuit has yet to address the question

of whether a plaintiff bringing a Section 15 claim must allege 'culpable participation,' a majority

of judges in this District-including the undersigned-have held such an allegation is not required").

Any contrary result would directly contravene the plain language of Section 15, affording a control

---

[11] In any event, Co-Lead Plaintiff 0998735 BC LTD purchased directly from one of the underwriters on the date of the IPO at the IPO price of $13 per share. 0998735 BC LTD's broker was ScotiaMcLeod, a division of Scotia Capital Inc. who was one of the underwriters for Sundial in the IPO. A copy of 0998735 BC LTD's transaction history evidencing the direct sale and purchase from the bank is attached as Exhibit B to the accompanying Declaration of Adam M. Apton. These facts suffice for the purposes of pleading standing under the applicable requirements in this District. *See, e.g., AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d at 856 (holding plaintiff pleaded standing for Section 12(a)(2) claim with general allegations of purchases from underwriters).

person an affirmative defense only if she proves that she "had no knowledge of or reasonable ground to believe the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

Defendants Kuenzlen, Keough, Hellard, Mills, Turnbull, Tamkee, and Cannon each signed the Registration Statement used to conduct the IPO, ¶23, and therefore qualify as "control person[s]" for the purposes of Section 15. *See Evoqua Water Techs. Corp.*, 2020 U.S. Dist. LEXIS 55410, at *66-*67 (control person allegation sufficient where complaint alleged defendant "'signed or authorized the signing of' the IPO registration Statement and Prospectus"); *see also In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d at 773 (holding that allegations that individual defendants were officers and signed the registration statements at issue sufficient to "satisfy Plaintiffs' obligation to plead control"); *In re Alstom SA*, 406 F. Supp. 2d 433, 494-95 (S.D.N.Y. 2005) ("It comports with common sense to presume that a person who signs his name to a report has some measure of control over those who write the report") (internal quotation marks and alterations omitted). As such, the Complaint adequately pleads control person liability under Section 15 of the Securities Act.

## IV. PLAINTIFFS HAVE ADEQUATELY ALLEGED PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

Defendants argue that the Complaint fails to plead facts sufficient to establish "minimum contacts with the United States to establish personal jurisdiction in this Court. MTD at 22. When opposing a pre-discovery motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction based on legally sufficient allegations of jurisdiction to defeat the motion. *Donoghue v. Ghauri*, No. 14 CIV. 6383 PAC, 2015 WL 3919120, at *2 (S.D.N.Y. June 25, 2015); *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84–85 (2d Cir.2013). Plaintiffs have made such a *prima facie* showing here. As alleged in the Complaint, Sundial's common shares are listed for trading on the Nasdaq exchange under the ticker symbol "SNDL" (¶15) and the Individual Defendants controlled and signed Sundial's SEC filings in connection with the IPO (¶24).

At this stage, these allegations suffice to demonstrate that Sundial's officers and directors should reasonably anticipate being "haled into court [] here." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). "Second Circuit authority dictates that a district court may exercise its personal jurisdiction in a securities action if the defendant's activities 'could reasonably be expected to be visited upon United States shareholders.'" *Donoghue v. Dicut, Inc.,* 2002 WL 1728539, at \*2 (S.D.N.Y. July 24, 2002) (quoting *S.E.C. v. Unifund,* 910 F.2d 1028, 1033 (2d Cir.1990)). In *Donoghue v. Ghauri*, the court found that the exercise of personal jurisdiction over a foreign defendant at a pre-discovery stage was proper where shares of the company related to the individual defendant were owned by citizens of the United States and the individual's alleged violation "'created a near certainty that shareholders in the United States would be adversely affected.'" 2015 WL 3919120, at \*3 (quoting *S.E.C. v. Alexander,* 2003 WL 21196852, at *\*2* (S.D.N.Y. May 20, 2003)).

Here, by alleging that Sundial's officers and directors prepared and approved the Registration Statement, containing material misstatements and omissions for an IPO occurring in the United States, their actions impacted shareholders in the United States. Thus, at this stage, the Complaint adequately alleges personal jurisdiction. *Id*.; *see also S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 547 (S.D.N.Y. 2013) ("It is by now well-established that signing or directly manipulating financial statements to cover up illegal foreign action, with knowledge that those statements will be relied upon by United States investors satisfies [the jurisdictional] test."); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 305 (E.D.N.Y. 2002) ("The Court finds that it is perfectly reasonable to exercise jurisdiction over Corbeil based solely on her signing the 1999 Registration Statement").[12]

---

[12] The New York State court found that plaintiff had adequately alleged personal jurisdiction over foreign defendants in alleging, *inter alia*, that "the individual defendants reviewed the Offering Documents at the IPO closing in New York, NY." NYS Decision at 5.

22

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in its entirety. If the Complaint is dismissed, Plaintiff respectfully submits that the dismissal should be without prejudice.

Dated: June 23, 2020

Respectfully submitted,

LEVI & KORSINSKY, LLP

/s/ *Adam M. Apton*
Nicholas I. Porritt
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel.: 212-363-7500
Fax: 212-363-7171
Email: nporritt@zlk.com
         aapton@zlk.com

Elizabeth K. Tripodi
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: 212-363-7171
Email: etripodi@zlk.com

THE ROSEN LAW FIRM, P.A.

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
         lheifetz@rosenlegal.com

*Attorneys for Co-Lead Plaintiffs and Lead Counsel for the Class*

23