**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUNDIAL GROWERS INC. SECURITIES LITIGATION | Master File No. 1:19-cv-08913-ALC |
| | This Document Relates To: All Actions |
| | This Consolidated Action Is Related To: 1:20-cv-03579-ALC |
| | Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>DEFENDANTS' JOINT MOTION TO DISMISS</u>**

Case 1:19-cv-08913-ALC-SN   Document 74   Filed 07/14/20   Page 2 of 15

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARGUMENT.....................................................................................................................3

    I.     THE OPPOSITION FURTHER ELUCIDATES THE FAILURE OF THE COMPLAINT TO ALLEGE MATERIAL MISREPRESENTATIONS AS NECESSARY TO STATE A CLAIM UNDER SECTION 11 OR SECTION 12(a)(2)......................................................................................3

        A.     Plaintiffs' Allegations Regarding The Estimated Preliminary Revenue Ranges Remain Inadequate.............................................................3

        B.     Plaintiffs' Allegations About Quality Control And Zenabis' Dissatisfaction Remain Inadequate..................................................................6

    II.    THE OPPOSITION CONFIRMS THE ADDITIONAL BASES FOR DISMISSAL OF THE SECTION 12(a)(2) CLAIMS .............................................7

    III.   PLAINTIFFS STILL FAIL TO STATE A SECTION 15 CLAIM ........................9

    IV.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE PERSONAL JURISDICTION OVER THE CANADIAN INDIVIDUAL DEFENDANTS ...................................................................................................9

CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................5

*In re AstraZeneca Sec. Litig.*,
   559 F. Supp. 2d 453 (S.D.N.Y. 2008)..................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................5

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
   2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) ...........................................................10

*In re CitiGroup Inc. Bond Litig.*,
   723 F. Supp. 2d 568 (S.D.N.Y. 2010)..................................................................8

*In re Coty Inc. Sec. Litig.*,
   2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ............................................................7

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018)..................................................................9

*Donoghue v. Ghauri*,
   2015 WL 3919120 (S.D.N.Y. June 25, 2015) ..........................................................10

*Freidus v. Barclays Bank PLC*,
   734 F.3d 132 (2d Cir. 2013).................................................................................8

*Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)..................................................................5

*Huang v. AirMedia Grp. Inc.*,
   2017 WL 1157134 (S.D.N.Y. Mar. 27, 2017) ............................................................4

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
   2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)...........................................................4

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
   265 F.R.D. 106 (S.D.N.Y. 2010) .............................................................................8

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
   2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ............................................................7

*Pinter v. Dahl*,
   486 U.S. 622 (1988)..................................................................................................8

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)......................................................................................3, 4

*S.E.C. v. Sharef*,
  924 F. Supp. 2d 539 (S.D.N.Y. 2013)...........................................................................10

*In re Stemline Therapeutics Inc. Sec. Litig.*,
  313 F. Supp. 3d 543 (S.D.N.Y. 2018)............................................................................7

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)...............................................................8

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003)............................................................................5

iv

**INTRODUCTION**

In the Opposition,[1] plaintiffs attempt to evade the well-reasoned decision in the NYS Action dismissing a parallel and substantially identical case.  But the Opposition only serves to elucidate the deficiencies of the Complaint.

While the Complaint focuses primarily on vague, repetitive allegations of "quality control" issues (SAC ¶¶ 2, 3, 5, 6, 7, 44, 45, 63, 64, 66), the Opposition all but abandons these allegations and tacitly acknowledges that they were soundly rejected by the NYS Dismissal, which found them "utterly refute[d]" by the Prospectus itself (NYS Dismissal at 10).  Instead, the Opposition relies almost entirely on the conclusory assertion that, in the Prospectus, Sundial "knowingly" and "intentionally" overstated its second quarter 2019 revenue by prematurely recognizing revenue that supposedly should have been recognized in the third quarter.  *See*, *e.g.*, Opp. at 1–3.  But the Prospectus "utterly refutes" this claim as well.

Although plaintiffs incessantly reference their revenue-acceleration allegation, they do not and cannot dispute that the Prospectus did not purport to report second quarter 2019 revenue in accordance with IFRS.  To the contrary, the Prospectus expressly and repeatedly stated that the ranges provided were mere "estimates" that were "preliminary" and not necessarily in accordance with IFRS.  Prospectus at 21.  The Prospectus also warned investors not to place undue reliance on these preliminary estimates.

---

[1]     Capitalized terms not defined herein have the same meaning as in defendants' memorandum of law in support of their joint motion to dismiss the Complaint, referred to as defendants' "Motion" or "MTD."  Plaintiffs' memorandum of law in opposition to defendants' Motion is referred to as the "Opposition" or "Opp."  Defendants cite to allegations in the Complaint solely for purposes of the motion to dismiss, but do not concede the accuracy of any such allegations and reserve their rights to contest the truth of any allegations.  Unless otherwise indicated, internal citations and quotation marks are omitted.

Because plaintiffs cannot deny that the Prospectus's warnings rendered the preliminary estimates incapable of misleading investors, they now resort to slogans, arguing that such cautionary language is not a "license to lie." Opp. at 3. Indeed, plaintiffs now appear to dispense with the Complaint's purported disclaimers of "any allegation of fraud" (SAC ¶¶ 74, 83, 88) and instead argue, albeit in conclusory fashion, that defendants "intentionally" made statements that they "knew" were false (Opp. at 1, 3, 12, 14). And yet plaintiffs still unabashedly contend that "[t]he Complaint asserts no fraud claim and avoids any actual allegations that any defendant committed fraud." Opp. at 8 n.5.

Regardless of plaintiffs' shifting theories of the case, the Complaint fails to state a claim. *First*, the revenue ranges for the second quarter—clearly identified in the Prospectus as "preliminary" and "estimated" and not as in accordance with IFRS—are not actionable. *See, e.g.*, MTD at 5–7, 17–20. *Second*, plaintiffs' contention that defendants "intentionally" overstated second quarter revenue—even if it were not incongruously and repeatedly disavowed by plaintiffs themselves—is fundamentally baseless. *See, e.g.*, MTD at 3, 18–19. Plaintiffs' conclusory assertion is premised entirely on a single comment supposedly made by Sundial's CEO at a board meeting, but plaintiffs cite no source and provide no context. In any event, the supposed comment itself does not even remotely constitute an admission that Sundial recognized revenue before it "transfer[red] control of the good(s) to the customer" (Opp. at 5, 10), much less that it did so "intentionally."

The other arguments in the Opposition fare no better. Plaintiffs do not even attempt to respond to the argument that they do not have standing to assert a Section 12(a)(2) claim against Sundial and they tacitly concede that the Complaint's allegations are insufficient to establish standing as to the Section 12(a)(2) claims against the Underwriter Defendants. And plaintiffs'

2

primary response to the absence of personal jurisdiction over the Canadian Individual Defendants is to argue that Sundial shares are listed on the Nasdaq even though stock sales in the United States do not give rise to personal jurisdiction over foreign directors.

## ARGUMENT

**I.     THE OPPOSITION FURTHER ELUCIDATES THE FAILURE OF THE COMPLAINT TO ALLEGE MATERIAL MISREPRESENTATIONS AS NECESSARY TO STATE A CLAIM UNDER SECTION 11 OR SECTION 12(a)(2)**

As explained in the Motion, the heightened pleading standard under FRCP 9(b) applies to the Complaint notwithstanding its purported disclaimers of fraud.  MTD at 8 (quoting *Rombach v. Chang*, 355 F.3d 164, 166 (2d Cir. 2004)).  Indeed, plaintiffs cannot reasonably argue that their claims do not sound in fraud while, at the same time, repeatedly characterizing the alleged misrepresentations as "knowing[]" and "intentional[]." *See, e.g.*, Opp. at 1, 3, 12, 14.  Plaintiffs, therefore, must plead facts with "particularity" demonstrating that defendants' statements were false when made.  *Rombach*, 355 F.3d at 172.  The Complaint does not do so.  Even without a heightened pleading standard, however, the Complaint would still be subject to dismissal because it does not plead facts that state a plausible claim.  MTD at 8.

**A.     Plaintiffs' Allegations Regarding The Estimated Preliminary Revenue Ranges Remain Inadequate**

Essentially the only part of the 251-page Prospectus that plaintiffs now challenge is the highly-caveated "***estimated preliminary***" revenue range information for the second quarter of 2019.  The Opposition does not dispute that this information was clearly and repeatedly described as "unaudited," "estimated" and "preliminary" (*see* MTD at 5–6 (quoting Prospectus at 21)).  Nor does the Opposition dispute that the Prospectus clearly identified these "estimated preliminary . . . ranges" as "forward-looking statements" that "may differ from actual results" (*see id.*).  The Opposition also does not dispute that the Prospectus made it clear that the

3

"estimates should not be viewed as a substitute for . . . financial statements prepared in accordance with IFRS" (*see id.*).  And the Opposition does not dispute that the Prospectus also clearly warned against "plac[ing] undue reliance on this preliminary data" (*see id.*).

Apparently conceding that an "error of judgment" (even if one had occurred) as to a preliminary, unaudited and estimated revenue range would not be actionable as a material misstatement under the Securities Act, the Opposition now contends that the use of cautionary language is not a "license to lie" (Opp. at 2–3).  Indeed, according to the Opposition, "Sundial intentionally overstat[ed] its revenue for the second quarter."  *Id*.  But the Complaint does not allege facts that support the Opposition's proposition of intentional misconduct.  And, it turns out, no judgment error occurred:  The preliminary estimates were correct (*see* MTD at 6–7, 17).

First, the Opposition does not deny that the Complaint fails to identify the source of the allegations or to provide any context.[2]  Plaintiffs' failure to provide that information plainly fails to comport with the heightened pleading requirement of FRCP 9(b).  *See, e.g.*, *Rombach*, 355 F.3d at 172.  Under any pleading standard, however, plaintiffs have "not articulated sufficient factual allegations to carry [their] assertions beyond the bar of speculation."  *See Huang v. AirMedia Grp. Inc.*, 2017 WL 1157134, at *8 (S.D.N.Y. Mar. 27, 2017) (Carter, J.); *Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280, at *16 (S.D.N.Y. Sept. 30, 2008) ("This allegation is entirely dependent on information purportedly obtained at an unspecified date from

---

[2]     The Opposition attempts to embellish the alleged comment by Sundial's CEO, but the alterations only serve to further highlight the deficiencies in the Complaint.  *Compare, e.g.*, Opp. at 10 n.6 (citing SAC ¶ 58) *with* SAC ¶ 58 (adding the word "revenue" before the alleged quotation and changing "should have probably been counted here" to "should have been counted [in quarter three]").

'confidential sources' . . . [and] simply too vague and conclusory to state a claim."); *see also* MTD at 18–20.[3]

Second, the Opposition does not contest that the allegation that C$3–4 million was prematurely recognized and reflected in the preliminary estimates is premised entirely on a single comment supposedly made by Sundial's then-CEO at a board meeting. *Compare* MTD at 18 *with* Opp. at 12. The Opposition repeatedly states that the CEO "***admitted*** to intentionally recognizing third quarter revenue during the second quarter." Opp. at 12 (emphasis in Opp.), 14. But the supposed comment shows no such thing. The supposed comment does not even use the word "revenue," much less contain any "admission" of "intentionally recognizing third quarter revenue during the second quarter." *See* MTD at 18 (citing SAC ¶ 58). In sum, plaintiffs' only support for their allegation of fraud is a vague, out-of-context alleged comment that they then unconvincingly mischaracterize.

Third, the Opposition sets up nothing more than a non sequitur when it contends that "[e]ither Sundial shipped its product or it did not" (Opp. at 11). As defendants previously

---

[3]    The cases cited by plaintiffs are inapposite. For example, in *Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc*., 268 F. Supp. 3d 526, 542, 551 (S.D.N.Y. 2017), the company restated revenue after the company disclosed an internal investigation that found "misconduct and errors." And in *In re Vivendi Universal, S.A*., 381 F. Supp. 2d 158, 171 (S.D.N.Y. 2003), the court noted that the defendants did not dispute the plaintiffs' allegation that the company recognized and reported the entire dollar amount of long-term contracts upon signing. There is no such allegation here where plaintiffs merely allege that Sundial prematurely included certain revenue in "preliminary estimates" shortly before shipping the product and defendants have demonstrated that the supposed comment upon which the allegation depends does not support plaintiffs' allegation of intentional premature revenue recognition. *Vivendi* was also decided under the pre-*Twombly* "liberal pleading standard of Rule 8," whereas the Complaint here plainly does not—as it must—"contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Even more so, the Complaint also fails to satisfy the heightened pleading standard of FRCP 9(b).

highlighted—and as the Opposition does not meaningfully contest—there is absolutely no indication in the alleged statement by Sundial's CEO that Sundial did not transfer control to customers in the second quarter when the revenue was allegedly recognized (let alone that Sundial knew that it had not done so).  *See* MTD at 18.[4]  The Opposition also ignores the fact that the completion by Sundial of sales in the second quarter that perhaps could have been completed instead in the third quarter does not constitute a securities law violation.  *See id*.

> **B.     Plaintiffs' Allegations About Quality Control And Zenabis' Dissatisfaction Remain Inadequate**

The Opposition asserts that "[i]n the face of . . . risk disclosures about the possibility of quality control problems, the Offering Documents omitted material information regarding a known event that had already occurred" and that "risk disclosures are misleading where the issuer warns only that a risk may impact its business when that risk has already materialized."  Opp. at 15.  But the Opposition conveniently ignores that "[c]ontrary to [the] allegations, the Offering Documents . . . contain a discussion of quality problems that had ***already*** occurred at the time of the IPO."  NYS Dismissal at 10 (emphasis added); *see also* MTD at 3–5, 10–11; Prospectus at 26–27, 39.  As the New York Court thus concluded, "even if Sundial produced a

---

[4]     Moreover, nothing in the Opposition or the Complaint demonstrates that IFRS—even if it were applicable to the preliminary estimates, which it is not—discusses a "ship[ing]" requirement for the recognition of revenue, as opposed to the "transfer[ of] control of the good(s) to the customer."  *See, e.g.*, Opp. at 5, 10; *see also* SAC ¶ 49.  As defendants previously noted, the Complaint included a quotation on revenue recognition that erroneously came from the historical financial statements appended to the Prospectus for an entity that was acquired after the period of the quoted financial statements.  *See* MTD at 6 n.4.  Plaintiffs offer no explanation in the Opposition.  That quotation refers to the irrelevant historical (pre-acquisition) recognition of revenue by that entity "at a point in time, typically on delivery of the goods to customers' premises."  *Compare* SAC ¶ 61, *with* Prospectus at ii (noting that Project Seed Topco Limited was the parent company of Bridge Farm, which was acquired by Sundial on July 2, 2019), F-79 (the quotation is in the appended financial statements of Project Seed Topco for the period ended March 31, 2019).

defective order and the order was returned to Sundial, that incident does not render any of the statements plaintiff[s] identified from the Offering Documents false or misleading." NYS Dismissal at 7.

Apparently recognizing the deficiency of the Complaint itself, the Opposition now asserts that "[d]efendants *knew* that the Zenabis rejection and/or return would materially impact Sundial's revenues" and "asked Zenabis to wait until after the second quarter to make the return *so that* it would not impact the strength of the IPO." Opp. at 6, 15–16 (emphasis added). But the Complaint does not include allegations of any such knowledge or intent. Nor does the Opposition provide any source for this conclusory and manufactured assertion. Regardless, the securities laws do not require disclosure of adverse issues before they are investigated and determined. *See* MTD at 11–12 (citing, e.g., *In re Stemline Therapeutics Inc. Sec. Litig.*, 313 F. Supp. 3d 543 (S.D.N.Y. 2018)).

Further, plaintiffs effectively ignore that Item 303 does not require disclosure of isolated occurrences. *See* MTD at 16–17 (citing, e.g., *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *6 (S.D.N.Y. Mar. 31, 2010)); *see also In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *5–6 (S.D.N.Y. Mar. 29, 2016) ("Knowledge of a trend is an essential element triggering disclosure under Item 303."). In any event, the alleged Zenabis return was the "exact type of risk [that] was disclosed in the Offering Documents." NYS Dismissal at 9.

## II.    THE OPPOSITION CONFIRMS THE ADDITIONAL BASES FOR DISMISSAL OF THE SECTION 12(a)(2) CLAIMS

The Opposition does not dispute that Section 12(a)(2) claims can only be asserted against a seller by "the person purchasing such security from him" in the IPO itself. *See* MTD at 21. Nor does the Opposition dispute that "in a firm commitment underwriting, such as this one,"

7

Section 12(a)(2) claims cannot be maintained against the issuer.  *See id*. at 22.  Accordingly, the Section 12(a)(2) claim against Sundial should be dismissed.

The Opposition also does not dispute that the Complaint, which claims that "Plaintiffs purchased or otherwise acquired Sundial stock pursuant and/or traceable to the Registration Statement and Prospectus," fails to allege that either plaintiff purchased shares in the IPO from an Underwriter Defendant.  *See id*. at 21–22; *see also Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013) ("In order to have standing under § 12(a)(2) . . . plaintiffs must have purchased securities directly from the defendants.").[5]  The Complaint also fails to allege that any Underwriter Defendant "successfully solicit[ed]" either plaintiff's alleged purchase of Sundial stock.  *Pinter v. Dahl*, 486 U.S. 622, 647 (1988); *see also In re UBS AG Sec. Litig*., 2012 WL 4471265, at *26–27 (S.D.N.Y. Sept. 28, 2012) (dismissing Section 12(a)(2) claim where complaint failed to plead "the manner in which the underwriters solicited the sale of securities or whether any of its solicitations were actually successful").  Tacitly acknowledging the Complaint's deficiencies on this front, plaintiffs improperly attempt to add to the Complaint's allegations with an exhibit purportedly indicating that one plaintiff purchased Sundial shares from one Underwriter Defendant.  But "a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss."  *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010).  And, in any event, the exhibit shows merely that one plaintiff purportedly used an affiliate of one

---

[5]    The Opposition also does not dispute that the Complaint does not allege that either plaintiff purchased shares from any specific Underwriter Defendant, as is required to plausibly plead statutory standing.  *See* MTD at 21–22; s*ee also In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 585 (S.D.N.Y. 2010) ("For a complaint to plausibly plead standing to raise a claim pursuant to Section 12, it must identify a particular purchase from a particular defendant.").

Underwriter Defendant as a broker (not as a counterparty) in purchasing Sundial shares—not that it purchased shares "directly from the defendants."

## III.    PLAINTIFFS STILL FAIL TO STATE A SECTION 15 CLAIM

The Opposition does not dispute that the Section 15 claims are unsustainable to the extent the Section 11 and Section 12(a)(2) claims are dismissed.  *See* MTD at 22.  The Opposition also does not dispute that the Complaint does not allege "meaningful culpable conduct" by each of the Individual Defendants.  *See id.*  Instead, the Opposition argues that courts generally do not require a complaint to plead culpable misconduct, but note that the Second Circuit has not yet addressed the issue.  *See* Opp. at 20.  Respectfully, this Court should dismiss the Section 15 claims on this basis as well.  *See* MTD at 22.

## IV.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE PERSONAL JURISDICTION OVER THE CANADIAN INDIVIDUAL DEFENDANTS[6]

In the Opposition, plaintiffs again attempt to conflate mere signatures on the Registration Statement with sufficient bases for exercising personal jurisdiction over Canadian nationals.  But plaintiffs do not even respond to defendants' observation that the Complaint tacitly recognizes that some Individual Defendants did not actually sign the Registration Statement and the Complaint does not identify who supposedly did.  *See* MTD at 23.[7]  In any event, the Complaint

---

[6]    In the Motion, defendants mistakenly referred to all the Individual Defendants as Canadian citizens.  But Mr. Kuenzlen is a German citizen, who holds U.S. permanent residency, and is not challenging personal jurisdiction.  The remaining Individual Defendants are Canadian citizens.

[7]    Regardless, a single Registration Statement signature with nothing more, is not sufficient to assert personal jurisdiction over a foreign defendant.  *See In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) (holding that service as a director is insufficient to establish jurisdiction); *cf. Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 801 (S.D.N.Y. 2018) (Carter, J.) (exercising jurisdiction over the CEO where the CEO had signed four years of SEC Form 20-Fs).  Presumably recognizing the baselessness of an allegation that the Individual Defendants

9

includes essentially no substantive allegations at all about nearly all of the Individual

Defendants. Accordingly, plaintiffs' arguments (and their purported authority) fail.[8]

Further, plaintiffs have not alleged that the Individual Defendants were "somehow

responsible for the [allegedly] erroneous wording" of the Prospectus and, moreover, "failures in

their corporate capacity do not give rise to personal jurisdiction over directors where none

otherwise lies." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, at *6

(S.D.N.Y. Mar. 31, 2014) (Carter, J.) (declining to find sufficient minimum contacts for personal

jurisdiction over foreign defendants in connection with CPLR 302).

## CONCLUSION

For each of the foregoing reasons and those set forth in defendants' Motion, defendants

respectfully request that the Complaint be dismissed in its entirety with prejudice.[9]

---

reviewed the offering documents in New York (*see* Opp. at 22, referencing the NYS Dismissal), plaintiffs did not include any such allegation in the Complaint.

[8]     Plaintiffs rely on *Donoghue v. Ghauri*, 2015 WL 3919120 (S.D.N.Y. June 25, 2015). But they should not: the complaint in that action alleged that the foreign defendant "traded . . . in securities *of a U.S.-based company* for which he previously served as an officer or director for over a decade." *Id.* at *3 (emphasis added). No parallel allegations have been—or could be— asserted here. Plaintiffs' invocation of *S.E.C. v. Sharef*, 924 F. Supp. 2d 539 (S.D.N.Y. 2013) is even more befuddling. The *Sharef* court found that "*[a]bsent any alleged role in the cover ups themselves, let alone any role in preparing false financial statements[,] the exercise of jurisdiction . . . exceeds the limits of due process, as articulated by the Supreme Court and the Second Circuit*." *Id.* at 548 (emphasis added). The same is certainly true here.

[9]     Without any justification, plaintiffs request that a dismissal "should be without prejudice." Opp. at 23. But the Complaint is the *eighth* attempt to plead Securities Act claims against defendants in connection with Sundial's IPO, and further amendment would be futile. As described in defendants' Motion (MTD at 7): Three complaints were filed in the New York Court and a fourth consolidated complaint was thereafter filed before the case was dismissed with prejudice. In this court, two complaints were filed before lead plaintiffs were appointed. Then plaintiffs filed a consolidated amended complaint—the third in this court and the seventh overall. Finally, in response to defendants' pre-motion conference letter explaining the deficiencies in that prior amended complaint, plaintiffs indicated they would be filing this further amended complaint—the Complaint, the eighth attempt.

Dated:  New York, New York
        July 14, 2020

Respectfully submitted,

/s/ Adam S. Hakki

Adam S. Hakki
(ahakki@shearman.com)
Jeffrey D. Hoschander
(jeff.hoschander@shearman.com)
Daniel Kahn
(daniel.kahn@shearman.com)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Phone:  (212) 848-4000

*Attorneys for Defendants Sundial Growers Inc.,
Torsten Kuenzlen, James Keough, Edward
Hellard, Greg Mills, Gregory Turnbull, Lee
Tamkee, and Elizabeth Cannon*


/s/ Mark Holland

Mark Holland
(mholland@goodwinlaw.com)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018-1405
Phone:  (212) 813-8800

Caroline H. Bullerjahn
(CBullerjahn@goodwinlaw.com)
Katherine Dacey
(kdacey@goodwinlaw.com)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 002210
Phone:  (617) 570-1359

*Attorneys for Defendants Cowen and Company,
LLC, BMO Nesbitt Burns Inc., RBC Dominion
Securities Inc., Barclays Capital Canada Inc.,
CIBC World Markets Inc. and Scotia Capital Inc.*

11