L3UPSUND

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  SUNDIAL GROWERS INC.
SECURITIES LITIGATION

                                    19CV8913(ALC)
                                    Remote Conference
------------------------------x

                                    New York, N.Y.
                                    March 30, 2021
                                    10:33 a.m.

Before:

                HON. ANDREW L. CARTER, JR.,

                                    District Judge

             APPEARANCES VIA TELECONFERENCE

THE ROSEN LAW FIRM, PA
     Attorneys for Plaintiffs
BY:  JACOB A. GOLDBERG
     LEAH HEIFETZ-LI
          AND
LEVI & KORSINSKY, LLP
BY:  ADAM M. APTON

SHEARMAN & STERLING, LLP
     Attorneys for Sundial and Individuals
BY:  JEFFREY D. HOSCHANDER
     ADAM S. HAKKI

GOODWIN PROCTER, LLP
     Attorneys for Defendants Underwriters
BY:  CAROLINE H. BULLERJAHN
     KATHERINE DACEY

L3UPSUND

(The Court and all parties appearing telephonically)

(Case called)

MR. GOLDBERG:  Good morning.  This is Jacob Goldberg from The Rosen Law Firm.  With me is my colleague, Leah Heifetz-Li, and my other colleague from the Levi and Korsinsky, Adam Apton.

THE DEPUTY CLERK:  And for the defendants?

MR. HOSCHANDER:  Good morning.  This is Jeff Hoschander from Shearman and Sterling on behalf of the defendants Sundial Growers, Inc. and the individuals, and I have with me my colleague, Adam Hakki, as well.

MS. BULLERJAHN:  Good morning.  This is Caroline Bullerjahn from Goodwin Procter, and I represent the underwriter defendants.

THE DEPUTY CLERK:  Ms. Dacey?

MS. DACEY:  Good morning.  Katherine Dacey, also from Goodwin Procter, representing the underwriter defendants.

THE DEPUTY CLERK:  Thank you.

THE COURT:  Okay.  Good morning, everyone.  I hope everyone is doing well.  Currently pending before the Court is defendants' Motion to Dismiss plaintiffs' Second Amended Consolidated Complaint.  Both parties have fully briefed the motion, and I am prepared to rule orally on that today.

For the reasons that follow, defendants' Motion to Dismiss is denied, except as to plaintiffs' section 12(a)(2)

L3UPSUND

claim against Sundial, which is deemed abandoned and is, therefore, dismissed.

I assume the parties are familiar with the factual background of this case. As relevant here, plaintiffs brought two separate class actions asserting substantially similar securities claims against defendants at the end of 2019, which the Court consolidated into one consolidated action on December 20th, 2019. Lead plaintiffs filed the operative complaint in this action on April 30th, 2020.

Lead plaintiffs bring this action against defendant Sundial, underwriter defendants Cowen & Company, BMO Nesbitt Burns, RBC Dominion Securities, Barclays Capital Canada, CIBC World Markets and Scotia Capital, and individual defendants, Kuenzlen, Keough, Hellard, Mills, Turnbull, Tamkee, and Cannon, alleging that defendants violated sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and Item 303 of SEC regulation S-K. They assert that defendants made untrue statements of material facts and/or omitted to state material facts that defendants had a duty to disclose in Sundial's registration statement and prospectus (collectively, the "offering documents") in connection with Sundial's IPO in August of 2019.

They contend that multiple statements describing Sundial's product as "high quality" were materially false and misleading because they omitted that the risk of material quality control failures had already materialized, causing

L3UPSUND

customers to return material amounts of Sundial cannabis.

They also contend that the estimated gross and net revenues for the second quarter of 2019 in the offering documents between, 19 and 21 million gross and between 18 and 20 million net, were materially false and misleading because defendants accelerated revenue from the third quarter to the second quarter of 2019 by improperly recognizing revenue for product that they had not shipped, in contravention of their own accounting policy and IFRS 15.

Last, they contend that defendants had a duty to report a customer's return of a material amount of product in the second quarter, pursuant to Item 303 of SEC regulation S-K.

The defendants have moved to dismiss plaintiffs' complaint.  For the reasons that follow, the defendants' motion is denied, except as to the plaintiffs' section 12(a)(2) claim against Sundial, which, as previously stated, is deemed abandoned and is, therefore, dismissed.

As a threshold matter, I conclude that the Court has personal jurisdiction over the individual defendants, as plaintiffs have established that the individual defendants have minimum contact with the United States, as is required for securities actions.  "Second Circuit authority dictates that a district court may exercise its personal jurisdiction in a securities action if the defendants' activities could reasonably be expected to be visited upon United States

L3UPSUND

shareholders." *Donoghue v. Dicut, Inc.*, 2002 Westlaw 1728539 at 2.  (S.D.N.Y. July 24, 2002).

Here, the individual defendants must have known that the registration document, which they signed, was released in connection with a stock offering designed to attract American investment and that it would be used and relied upon by American investors. *See In re:  CINAR Corp. Securities Litigation,* 186 F. Supp. 2d 279, 305 to 306, (E.D.N.Y. 2002).

I will next address the merits of defendants' motion. In considering a motion to dismiss for failure to state a claim, I accept as true all factual allegations in the complaint and draw all inferences in plaintiffs' favor. However, I need not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusionary statements." *Iqbal*, 556 U.S. 662 at 678 (2009).

I agree with Judge Ostrager's May 15th, 2020, decision that the challenged statements regarding the quality of Sundial's product cannot serve as the basis for liability under the securities laws, given the defendants' extensive risk disclosures regarding quality control issues.  However, this action involves additional allegations regarding the inflation of Sundial's revenues for the second quarter of 2019.  These allegations are sufficient to plead a section 11, section 12(a)(2) and section 15 claim as to most defendants.

While defendants are correct that plaintiffs' claim

L3UPSUND

are subject to the heightened standard of rule 9(b) because their claims sound in fraud, that standard is satisfied here. Plaintiffs have identified the statements or omissions they contend are fraudulent, who made them, and where and when they were made.  They are also alleged with particularity why the statements are fraudulent.  *See Eternity Global Master Fund Limited v. Morgan Guaranty Trust Company*, 375 F.3d 168 at 187, (2d Cir. 2004).

Specifically, plaintiffs allege that Sundial's CEO, Defendant Kuenzlen, made the following comment at Sundial's board of directors meeting on August 25th, 2019:  "There was 3 to $4 million that we recognized in June that made us hit the growth sales of $20 million, which was a conscious decision to help the IPO, frankly.  That 3 to $4 million, we sure wish we had it in quarter three now, instead of quarter two, but that should have probably been counted here.  We were able to accelerate it and, obviously, that makes the numbers fewer a little bit."

Plaintiffs alleged that defendants accelerated the revenue from the third quarter to the second quarter of 2019 by recognizing revenue before shipping product, in contravention of IFRS 15 and defendants' own accounting policy.

Together, these allegations lead to the reasonable inference that defendants' statements regarding their estimated second quarter revenues for second quarter 2019 were materially

L3UPSUND

false and misleading.  *See Controladora*, 2016 Westlaw 3685089 at 4, (S.D.N.Y. July 6, 2016), which states that "Courts have found that premature recognition of revenue by a growing company can be material because it robs Peter to pay Paul; accelerating their cognition of revenues into an earlier financial quarter and, therefore, portraying the company's current performance as more robust than it actually was."

Defendants make several unavailing arguments as to why the Court should dismiss plaintiffs' section 11, section 12(a)(2) and section 15 claims based on defendants' statements regarding the estimated second quarter revenues for 2019.

First, they argue that these were estimated preliminary ranges, which defendants warned "should not be viewed as a substitute for our full interim or annual financial statements prepared in accordance with IFRS."

Defendants' argument fails because a reasonable inference can be made that when the offering documents were released, defendants knew that the second quarter revenues estimate was improperly inflated, since they had recognized revenue for product they had not shipped, in contravention of their own accounting policy and IFRS 15, and thus, warning investors that these were just estimated preliminary ranges that investors should not place undue reliance on does not, as a matter of law, shield them from liability for the alleged misstatements.  *See Millman v. Box Hill Systems Corp*., 72 F.

L3UPSUND

Supp. 2d 220 at 231, (S.D.N.Y. 1999), which states that "no degree of cautionary language will protect material misrepresentations or omissions where defendants knew their statements were false when made."

See also In re: Perrigo, 435 F. Supp. 3d 571, 587 (S.D.N.Y. 2020). "A party's current, good-faith estimate of the range of loss that there is a reasonable possibility it has already incurred is not a forward-looking statement."

Second. Defendants assert that plaintiffs' allegations do not support an inference that Sundial engaged in wrongdoing because "there is absolutely no indication in the CEO's alleged statement that Sundial did not transfer control of the relevant cannabis to the customer in the second quarter when that revenue was allegedly recognized."

This ignores plaintiffs' allegation that defendants did not ship the product to customers before recognizing it as revenue, in contravention of IFRS 15 and Sundial's own accounting policy.

Next, defendants argue that the estimates correctly corresponded to the actual revenue subsequently reported for the second quarter such that plaintiffs have not articulated sufficient factual allegations to carry their assertions beyond the bar of speculation. I disagree. A reasonable inference can be drawn that Sundial's reported actual results continued to reflect the accelerated revenue.

L3UPSUND

Defendants also make arguments specific as to why the Court should dismiss plaintiffs' 12(a)(2) claims as to Sundial and the underwriter defendants.  Citing to *Rosenzsweig v. Azuriz Corp.* -- R-o-s-e-n-z-s-w-e-i-g, v. A-s-u-r-i-z -- 332 F.3d 854, 871 (5th Cir. 2003).  Defendants assert that "in a firm commitment to underwriting, such as this one, the public cannot ordinarily hold the issuers liable under section 12 because the public does not purchase from issuers."

Plaintiff has not addressed this argument.  Thus, their section 12(a)(2) claim against Sundial is deemed abandoned.  *See Romeo & Juliette Laser Hair Removal Incorporated v. Assara I LLC*, 2014 Westlaw 4723299 at 7 (S.D.N.Y. Sept. 23, 2014).

Defendants also assert that plaintiffs do not have standing to pursue their section 12(a)(2) claims against the underwriter defendants because they fail to allege that either plaintiff purchased shares directly from a specific underwriter defendant, and do not allege that any defendant was directly involved in the actual solicitation of either plaintiff's purchase.

The Court concludes that plaintiffs do have standing to bring their section 12(a)(2) claim against the underwriter defendants because they allege that they "purchased or otherwise acquired Sundial common stock pursuant and/or traceable to the registration statement and prospectus...issued

L3UPSUND

in connection with Sundial's IPO on August 1st, 2019" and that the underwriter defendants solicited the purchase of securities for their interests and participated in the promotion and sale of Sundial stock to investors. *See Evoqua*, 450 F. Supp. 3d 379, 403 to 404 (S.D.N.Y. 2020).

Therefore, defendants' motion to dismiss plaintiffs' section 11 and 12(a)(2) claims is denied, except as to plaintiffs' section 12(a)(2) claim against Sundial.

Because the Court concludes that there are predicate section 11 and 12(a)(2) violations, and plaintiffs adequately plead control, defendants' motion to dismiss plaintiffs' section 15 claim is denied. The Court declines to impose a culpable participation requirement in accordance with *In re: Bear Stearns Pass-Through Certificates Litigation*, 851 F. Supp. 2d 746, 772 to 73 (S.D.N.Y., 2012).

The Court also concludes that plaintiffs have actually alleged an Item 303 claim for failure to disclose that a customer returned a significant amount of product. That allegation, in connection with the allegation that defendants asked the customer to hold off returning the product until Q3, i.e. after the IPO, is sufficient to survive a motion to dismiss an Item 303 claim. *See Vaccaro*, 2016 Westlaw 7373799 at 7 (S.D.N.Y. December 19, 2016), noting that "offering documents may not describe a trend or event as a mere future risk factor if the issuer has current knowledge of an adverse

L3UPSUND

impact us caused by that trend or event."

For these reasons, defendants' motion to dismiss plaintiffs' claim is denied, except as to plaintiffs' section 12(a)(2) claims, which is deemed abandoned and, therefore, dismissed.

Is there anything else from the parties?  If not, we are adjourned.  Anything else from the plaintiffs?

MR. GOLDBERG:  Your Honor, thank you very much.  Jacob Goldberg from The Rosen Law Firm.  We have nothing to add today.

THE COURT:  Okay.  Anything else from any of the defendants?

MR. HOSCHANDER:  No, your Honor.  I think nothing from the defendants.  This is Jeff Hoschander.  Apologies.

THE COURT:  Okay.  We are adjourned.  Thank you.

(Adjourned)