# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUNDIAL GROWERS INC. SECURITIES LITIGATION | File No. 1:19-cv-08913-ALC<br><br>This Document Relates To:<br>All Actions |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR (I) PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT, (II) OF THE SETTLEMENT CLASS CERTIFICATION, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................................... 1

II.     SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS ............... 2

        A.      Plaintiffs' Claims and Allegations................................................................ 2

        B.      Procedural History and Settlement Negotiations ...................................... 3

III.    THE PROPOSED TERMS OF THE SETTLEMENT ......................................... 4

        A.      Settlement Class Definition.......................................................................... 4

        B.      Monetary Consideration and Plan of Allocation...................................... 4

        C.      Release Provisions ....................................................................................... 5

        D.      Attorneys' Fees and Reimbursement of Expenses ................................... 5

        E.      The Court's Continuing Jurisdiction ...................................................... 6

IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
        APPROPRIATE ............................................................................................ 6

        A.      Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement
                Class ............................................................................................................ 8

        B.      The Proposed Settlement Is the Result of Good-Faith, Arm's-Length
                Negotiations............................................................................................... 9

        C.      The Relief Provided by the Settlement Is Adequate When WeighedAgainst the
                Risks of Litigation ................................................................................. 10

        D.      The Plan Treats Settlement Class Members Equitably ...................... 12

        E.      The Proposed Method for Distributing Relief Is Effective ................. 12

        F.      Attorneys' Fees and Reimbursements are Reasonable........................ 13

        G.      Any Agreement Under Rule 23(e)(3)...................................................... 13

        H.      The *Grinnell* Factors Are Also Met........................................................ 14

V.      PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS SOLELY
        FOR SETTLEMENT PURPOSES UNDER RULE 23 IS APPROPRIATE............ 17

        A.      Numerosity................................................................................................ 17

i

B.    Commonality..........................................................................................................18

C.    Typicality..............................................................................................................19

D.    Adequate Representation......................................................................................20

1.    Adequacy of the Proposed Class Representative........................................20

2.    Adequacy of the Proposed Class Counsel ..................................................20

E.    Common Questions Predominate .........................................................................21

F.    A Class Action Is Superior to Other Methods of Adjudication...........................22

VI.    THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE
CONSTITUTIONAL AND APPROPRIATE ............................................................23

VII.    PROPOSED SCHEDULE..............................................................................................24

VIII.    CONCLUSION..............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................. 21, 22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ................................................................................................... 22

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
No. 1:12-CV-05329-SAS, 2016 WL 10519025 (S.D.N.Y. Mar. 14, 2016) ............................ 13

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981)............................................................................................................ 6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)............................................................................................ 18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).............................................................................................. 7

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)........................... 10

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).............................................................................................. 18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)....................................................................................... 7, 9, 16

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) ...................................................................................... 21

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ...................................................................................... 20

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................................... 15

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)................................. 14

*In re "Agent Orange" Prod. L*iab. Litig.,
597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................................... 16

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................... 11, 14

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) .................................................................... 12

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00-CV-9475 NRB, 2005 WL 7984326 (S.D.N.Y. June 9, 2005) ..................................... 13

*In re Dynex Cap., Inc. Sec. Litig.*,
  No. 05 CIV. 1897 HB, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011)......................................... 18

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................. 6, 18

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................... 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................... 19, 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ 7, 15, 16, 18

*In re Indep. Energy Holdings PLC*,
  No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).......................... 9, 16

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ..................................................................... 8

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...................................................................... 10

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................ 6, 17

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................... 18

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................... 11

*In re Take Two Interactive Sec. Litig.*,
  No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ............................. 14

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
  No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015).......................................... 12

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............................ 16

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................... 18

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06CIV.11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................... 24

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015) ..................................................................... 19

*Leung v. Home Boy Rest. Inc.*,
No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) .................................... 9

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 13

*Marsh & McLennan*,
2009 WL 5178546 ........................................................................... passim

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ..................................................................... 21

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ...................................................................... 16

*Pantelyat v. Bank of Am., N.A.*,
No. 16-CV-8964 (AJN), 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ........................... 7, 11, 13

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................. 19, 22

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ...................................................................... 17

*Thomas v. MagnaChip Semiconductor Corp.*,
No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................. 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................. 6, 7, 9, 24

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ....................................................................... 17

**Rules**

Fed. R. Civ. P. 23 ............................................................................ 17, 24

v

Fed. R. Civ. P.  23(a) ................................................................................................... 17

Fed. R. Civ. P.  23(a)(1)............................................................................................... 17

Fed. R. Civ. P.  23(a)(2)........................................................................................... 18, 19

Fed. R. Civ. P.  23(a)(3)............................................................................................... 19

Fed. R. Civ. P.  23(a)(4)............................................................................................... 20

Fed. R. Civ. P.  23(b)(3).......................................................................................... 17, 21, 22

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................................... 15

Fed. R. Civ. P. 23(e) ..................................................................................................... 6

Fed. R. Civ. P.  23(e)(2); and (ii)............................................................................. 6, 7, 8

Fed. R. Civ. P.  23(e)(3).................................................................................................. 7

Fed. R. Civ. P.  23(g) ................................................................................................... 20

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs 998735 BC LTD and David Draiman (collectively, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for: (i) preliminary approval of the proposed Settlement between Lead Plaintiffs, on behalf of themselves and the proposed Settlement Class, and Defendants Sundial Growers Inc. ("Sundial" or the "Company"), Torsten Kuenzlen, James Keough, Edward Hellard, Greg Mills, Gregory Turnbull, Lee Tamkee, and Elizabeth Cannon (the "Individual Defendants"), and Defendants Cowen and Company, LLC, BMO Nesbitt Burns Inc., RBC Dominion Securities Inc., Barclays Capital Canada Inc., CIBC World Markets Inc., Scotia Capital Inc. (collectively the "Underwriter Defendants" and with the Company and Individual Defendants, collectively, "Defendants") and together with Lead Plaintiffs, the "Parties"); (ii) certification of the proposed Settlement Class for purposes of the Settlement; (iii) approval of the form and manner of the settlement notices to Settlement Class Members; and (iv) the scheduling of a hearing (the "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses. The Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") is filed herewith.[1]

The proposed Settlement was reached after the parties engaged in hard-fought litigation and arm's-length settlement negotiations. Based on a thorough understanding of the facts and the law, the parties agreed to the proposed Settlement for a payment of $7,000,000. If approved, it will fully resolve this action filed in September 2019 on behalf of a putative class of Persons who purchased or otherwise acquired common stock of Sundial Growers, Inc. ("Sundial" or

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated December 2, 2021 (the "Stipulation").

"Company") in or pursuant and/or traceable to the offering documents issued in connection with during the Company's Initial Public Offering ("IPO").

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate so that notice of the proposed Settlement can be given to members of the Settlement Class and a hearing scheduled to consider final settlement approval. The Settlement meets these criteria. As discussed below, while Plaintiffs believe their claims are meritorious, they recognize that risks exist with respect to liability and damages. The $7,000,000 recovery and the Settlement Fund that will be created under the parties' agreement thus represents a beneficial resolution of the Action, and the Settlement is in the best interests of the Settlement Class.

Because all the requirements for settlement approval are met, the Court should certify the Settlement Class for settlement purposes only. Also, because the Plan of Allocation is fair, reasonable, and adequate, it should be preliminarily approved. Finally, the Court should schedule a final approval hearing to determine whether the proposed Settlement, the Plan of Allocation, and Lead Counsel's request for attorneys' fees and reimbursement of expenses should be finally approved as fair, reasonable, and adequate.

## II.      SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.  Plaintiffs' Claims and Allegations

Sundial is a licensed producer of cannabis in Canada, which legalized recreational use by adults in late 2018. On July 5, 2019, the Company filed a Registration Statement on Form F-1, which was subsequently amended. Sundial launched its IPO on or about August 1, 2019 and filed a Prospectus on Form 424B4 for the sale of 11 million shares of common stock at $13.00 per share.

Plaintiffs alleged that Defendants made material false statements and omissions in the Registration Statement and Prospectus (the "Offering Documents"), including that the Defendants: (1) affirmatively misstated revenue estimates for the second quarter 2019, and (2) omitted that a customer sought to return a material amount of Sundial's total second quarter 2019 sales. On that basis, Plaintiffs asserted claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act

of 1933 ("Securities Act").

### B. Procedural History and Settlement Negotiations

On September 25, 2019, Yimin Huang filed a putative class action on behalf of persons who purchased or otherwise acquired Sundial securities pursuant and/or traceable to Sundial's Offering Documents issued in connection with Sundial's IPO, in a case captioned *Huang v. Sundial Growers Inc., et. al.*, 19-cv-08913 ("Huang Action").

On November 1, 2019, Daniel Gulacsy filed a similar putative class action, in a case captioned *Gulacsy v. Sundial Growers Inc., et. al.*, 19-cv-10157 ("Gulacsy Action").

On December 20, 2019, the Court consolidated the Huang Action and the Gulacsy Action into the consolidated putative class action, captioned *In re Sundial Growers Inc. Securities Litigation*, Master File No. 19-cv-08913-ALC (S.D.N.Y.) (the "Action"); appointed 0998735 BC LTD and David Draiman as lead plaintiffs; and appointed The Rosen Law Firm, P.A. and Levi & Korsinsky, LLP as co-lead counsel ("Lead Counsel") (ECF No. 14).

On February 18, 2020, Plaintiffs filed an Amended Consolidated Complaint (ECF No. 50). On April 30, 2020, Plaintiffs filed the Second Amended Consolidated Complaint (ECF No. 66) ("Complaint"). On May 27, 2020, Defendants moved to dismiss the Complaint (ECF Nos. 69-71). On June 23, 2020, Plaintiffs filed their opposition to the motion to dismiss the Complaint (ECF No. 72-73). On July 14, 2020, Defendants filed their reply in further support of their motion to dismiss the Complaint (ECF No. 74).

On March 30, 2021, the Court held a status conference and, on the record, largely denied Defendants' motion to dismiss, except as to Plaintiffs' claim against Sundial under Section 12(a)(2) of the Securities Act (ECF No. 79).

After the Court largely denied Defendants' motion to dismiss, the Parties agreed to mediate this dispute in an attempt to settle the Action. Apton Decl. at ¶16. The Parties participated in a confidential mediation with David Murphy of Phillips ADR on August 10, 2021. *Id.*, at ¶18. Prior to the mediation, the Parties prepared and exchange detailed mediation statements, including their respective analyses of damages and negative loss causation. *Id.*, at ¶17. The Parties then reached a

settlement in principle on August 11, 2021, exchanging a full release of all claims against all Defendants from all Settlement Class Members that do not exclude themselves in exchange for $7,000,000. *Id.*, at ¶19. On August 24, 2021, the Parties executed a term sheet, broadly setting forth the terms of the Settlement. *Id.* Pursuant to the Parties' request on August 30, 2021, the Court ordered a stay of all proceedings, pending its consideration of Plaintiffs' motion for preliminary approval (ECF Nos. 93-94).

The Parties negotiated and entered into the Stipulation on December 2, 2021.

### III.    THE PROPOSED TERMS OF THE SETTLEMENT

#### A.    Settlement Class Definition

The Settlement Class includes all persons or entities, including, without limitation, their beneficiaries, that purchased or otherwise acquired Sundial common stock in or pursuant and/or traceable to the offering documents issued in connection with the IPO, and were allegedly damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of Sundial at the time of its IPO, members of the Defendants' immediate families, as well as Defendants' legal representatives, heirs, successors or assigns, and any entity in which any Defendant has a majority ownership interest or had a majority ownership interest at the time of the IPO. Also excluded from the Settlement Class are those Persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order.

#### B.    Monetary Consideration and Plan of Allocation

Under the terms of the proposed Settlement, the parties have agreed that Sundial or its insurer(s) will pay seven million U.S. dollars ($7,000,000) in consideration of the full and final release, settlement and discharge of all Released Claims against the Released Parties, within thirty (30) calendar days after receiving both (i) written notice that the Court has entered the Preliminary Approval Order and (ii) complete wire and transfer information and instructions and a completed Form W-9. Defendants other than Sundial bear no responsibility for the Settlement Amount. Any interest earned will be for the benefit of the Settlement Class. Lead Counsel has considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation. Lead

4

Counsel consulted with a damages expert experienced in class action securities fraud litigation when developing the proposed Plan of Allocation. A copy of the Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class Action, pages 6-7, at Exhibit A-1 to the Stipulation.

### C.    Release Provisions

Pursuant to the Final Judgment and order approving the Settlement, without further action by anyone, and whether or not a Proof of Claim has been executed and/or delivered by or on behalf of any such Settlement Class Member, upon the Effective Date, Plaintiffs and all other Settlement Class Members, on behalf of themselves and the other Releasing Parties, and anyone claiming through or on behalf of any of them, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Final Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Plaintiffs' Claims against each and every one of Defendants and Defendants' Related Parties. Stipulation §6.1.

Defendants will also release Plaintiffs, Settlement Class Members, and Plaintiffs' and Settlement Class Members' Related Parties upon the Effective Date from all Released Defendants' Claims against Plaintiffs, the Settlement Class Members, and Plaintiffs' and Settlement Class Members' Related Parties, whether known or unknown, asserted or unasserted, whether arising under federal, state, common or foreign law arising from the institution, prosecution, or settlement of the claims against the Released Defendants. *Id*. at §6.2.

Nothing in the Final Judgment and order approving the Settlement shall bar any action or Claim by the Parties or their counsel to enforce the terms of the Settlement or the Final Judgment. *Id.* at §6.3.

### D.    Attorneys' Fees and Reimbursement of Expenses

Lead Counsel will apply to the Court for an award of attorneys' fees equal to one-third of the Settlement Fund ($2,333,333.33). Lead Counsel will also apply to the Court for a reimbursement of its out-of-pocket expenses incurred through the Action (not to exceed $125,000).

E.    **The Court's Continuing Jurisdiction**

If the Court grants preliminary approval of the proposed Settlement, Lead Counsel will request that the Court grant final approval and enter a final judgment of dismissal. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation. *Id.* at §12.12.

IV.    **PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007). When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e). The approval process takes place in two stages: the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

> (A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

In addition, the Second Circuit considers the following factors, known as the *Grinnell* factors, which largely overlap with Rule 23(e)(2)): "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Pantelyat v. Bank of Am., N.A.*, No. 16-CV-8964 (AJN), 2019 WL 402854, at *3–*4 (S.D.N.Y. Jan. 31, 2019). A proposed settlement is substantively fair if the totality of the nine *Grinnell* factors weighs in favor of that conclusion. *See Wal-Mart*, 396 F.3d at 117 (citing *Grinnell*, 495 F.2d at 463); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Here, Lead Plaintiffs request only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. The proposed Settlement provides a Settlement Amount of $7 million in cash, a substantial recovery that is unquestionably beneficial to the Settlement Class, and plainly "within the range of possible

7

approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

As discussed below, the proposed $7 million Settlement Amount satisfies each of the applicable Rule 23(e)(2) factors such that Notice of the proposed Settlement should be sent to the Settlement Class in advance of the Settlement Hearing on final approval.

**A.** **Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class**

Lead Plaintiffs' interests in this case are directly aligned with those of the other Settlement Class Members. Lead Plaintiffs have demonstrated their ability and willingness to pursue the Action on behalf of the Settlement Class through their active involvement in the litigation and in approving the Settlement. Lead Plaintiffs and their counsel zealously advocated for the interests of Sundial shareholders and have obtained excellent results. Lead Counsel zealously advocated for all Settlement Class Members. This included, among other things, an investigation that included thorough review of: (i) Sundial's public filings; (ii) presentations, press releases, media and analyst reports made by or about the Company; (iii) transcripts of Sundial's conference calls with analysts and investors; (iv) publicly available data relating to Sundial common stock; (v) review of other materials and data concerning the Company; and (vi) research of the applicable law with respect to the claims asserted in the Action, and the potential defenses thereto. Apton Decl. at ¶6. Lead Counsel's further investigation allowed them to amend the complaint, adding allegations relating to Sundial's revenue recognition, which allowed the Complaint to survive the motion to dismiss. *Id.* at ¶¶8-12.

Lead Plaintiffs' decision to settle this case was informed by a thorough investigation of the relevant claims; discussions with confidential witnesses; the filing of two detailed amended complaints; and participation in extensive, hard-fought mediation. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of Sundial shareholders. *Id.* at ¶¶8-19. Accordingly, this factor weighs in favor of approval.

B. **The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Here, the Settlement was reached only after extensive, arm's-length negotiations before David Murphy of Phillips ADR, a nationally recognized mediator experienced in securities class actions. *See, e.g.*, *D'Amato*, 236 F.3d at 85 (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); Apton Decl. at ¶¶16-19.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Lead Plaintiffs conducted an extensive investigation prior to drafting and filing both the Amended Consolidated Complaint and the Second Amended Complaint, which included, among other things, a thorough review of: (i) Sundial's public SEC filings; (ii) presentations, press releases, media and analyst reports made by or about the Company; (iii) transcripts of Sundial's conference calls with analysts and investors; (iv) publicly available data relating to Sundial common stock; (v) interviews with confidential witnesses; (vi) consultations with relevant experts; (vii) review of other materials and data

9

concerning the Company; and (viii) research of the applicable law with respect to the claims asserted in the Action, and the potential defenses thereto. *Id.* at ¶¶6-8.

Lead Plaintiffs and Lead Counsel therefore had an adequate basis to assess the strength of the Settlement Class's claims and Defendants' defenses when they agreed to the Settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.").

On August 10, 2021, the Parties attended a mediation with David Murphy via Zoom. Apton Decl., ¶18. In advance of that session the Parties exchanged mediation statements addressing key aspects of liability and damages. *Id.* at ¶17. During the mediation session, the Parties argued the merits of Plaintiffs' claims and the defenses thereto. At the end of the mediation session, Mr. Murphy provided a mediator's proposal, reflecting his opinion of the value of the case considering Parties' positions. *Id.* at ¶18. The Parties agreed to the proposal, reaching a settlement in principle on August 11, 2021 to exchange a full release of all claims against all Defendants and Defendants' Related Parties for all Settlement Class Members that do not exclude themselves in exchange for $7,000,000. *Id.* at ¶19.

The negotiations were always intense and conducted at arm's length and have produced a result that the Parties believe to be in their respective their best interests. The arm's-length nature of the negotiations and Mr. Murphy's involvement support the conclusion that the Settlement was achieved free of collusion and is fair and reasonable.

C. **The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation**

In assessing a settlement, courts consider the range of reasonableness, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014). The Court thus need only determine

10

whether the Settlement falls within a range of reasonableness that"recognizes the uncertainties of law and fact in any particular case and the concomitant risks andcosts necessarily inherent in taking any litigation to completion." *Pantelyat*, 2019 WL 402854, at*7. If approved, the Settlement will provide Settlement Class Members with $7 million in cash, less reasonable attorneys' fees, litigation expenses, the Lead Plaintiffs' service awards, Notice andAdministration Costs, Taxes, and Tax Expenses. The amount obtained for the Settlement Class represents a very good result, including considering Sundial's financial condition. Apton Decl. at ¶24.

Additionally, although Lead Plaintiffs and Lead Counsel believe their case against Defendants is strong, they acknowledge that Defendants have put forth serious defenses concerning liability, loss causation, and damages. *Id.* at ¶¶22-23. If any of these arguments were to be accepted in whole or in part, either at the summary judgment stage or at trial, it could eliminate or dramatically reduce any potential recovery. Further, Lead Plaintiffs would have to prevail against Defendants at several stages—on class certification, at summary judgment, and at trial—and even if Lead Plaintiffs prevailed at each of those stages, they would also have to prevail on the appeals that would likely follow. *Id.* at ¶¶22.

The proposed Settlement thus balances the risks, costs, and delays inherent in complex securitiesclass action cases such as this one. *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that securities class actions are generally complex and expensive to prosecute."); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases are complex and challenging as regards to liability and damage."). The Settlement provides a guaranteed, near-team recovery to Sundial investors without having to incur substantial costs and engage in prolonged litigation through class certification, discovery, summary judgment, trial and if applicable, subsequent appeals. The Parties will also not need to incur additional fees for class certification, expert reports, and expert testimony which would be significant. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses.

There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery. Even if they could do so, that process would be costly, take year, and delay any potential recovery to Settlement Class Members. Throughout the mediation, Defendants insisted that Plaintiffs would ultimately be unable to support their liability theory and that the defense of negative causation would be established as a matter of law because Sundial's stock price was not significantly different from declines in the stock prices of similar companies.

Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

### D.  The Plan Treats Settlement Class Members Equitably

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017). The Plan of Allocation, set out in the Notice, attached as Exhibit A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan provides that each Settlement Class Member will receive their *pro rata* distribution from the Net Settlement Fund based on their Recognized Loss.Stipulation, Ex. A-1.

### E.  The Proposed Method for Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process are effective. They include well-established, proven procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. The notice plan includes electronic mail and postcard notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice over a national newswire service. A settlement-specific website will be created where key documents will also be posted, including the Stipulation, Notice, Proof of Claim and Preliminary Approval Order.

The claims process is also effective and includes a standard claim form that requests the

information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of Lead Plaintiffs' damages consultant and is based primarily on the consultant's event-study analysis estimating the amount of alleged artificial inflation in the price of Sundial common stock during the class period.

Finally, Strategic Claims Services, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.

### F.  Attorneys' Fees and Reimbursements are Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees of one third of the Settlement Amount ($2,333,333.33), plus litigation expenses in an amount not to exceed $150,000 incurred in connection with the prosecution and resolution of this litigation. This request is reasonable and in line with, if not below, other fee awards in this District. *See, e.g.*, *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) awarding attorneys' fee of 33% of $11.5 million settlement); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, No. 1:12-CV-05329-SAS, 2016 WL 10519025, at *1 (S.D.N.Y. Mar. 14, 2016) (awarding attorneys' fee of 30% of $4.2 million settlement); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 NRB, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (awarding 28% of $120 million settlement); *Pantelyat*, 2019 WL 402854, at *8 (awarding 25% of $5.5 million settlement).

### G.  Any Agreement Under Rule 23(e)(3)

The Stipulation indicates that a confidential Supplemental Agreement has been entered into between the Settling Parties regarding Defendants' right to terminate the Stipulation and Settlement if Settlement Class Members who or which in the aggregate purchased or acquired a certain amount of Sundial common stock in or pursuant and/or traceable to the IPO offering

13

documents file valid and timely requests for exclusion. See Stipulation §10.5. Such confidential supplemental agreements are customary in settlements and "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same); *In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *11–12 (S.D.N.Y. June 29, 2010) (noting side letter agreement, preliminarily approving settlement).

### H. The *Grinnell* Factors Are Also Met

**The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**. The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. The Parties advanced numerous complex legal and factual issues under the federal securities laws.

**The Reaction of the Settlement Class to the Settlement**. Lead Plaintiffs have participated throughout the prosecution of the case and were actively involved in the decision to enter the Settlement. This factor is otherwise inapplicable at the preliminary approval stage as notice regarding the Settlement has not yet been mailed or otherwise distributed.

**The Stage of the Proceedings**. Lead Plaintiffs conducted a thorough investigation supporting a detailed Complaint. Apton Decl. at ¶¶6-8. Although the parties had just begun formal discovery, by thoroughly investigating the case and exchanging mediation statements with Defendants, Plaintiffs had the information they needed to evaluate the Settlement. *American Bank Note Holographics*, 127 F. Supp. 2d at 425–426 ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement."). This information permitted Lead Plaintiffs and Lead Counsel to intelligently weigh the strengths and weaknesses of theircase and to engage in effective

14

settlement discussions with Defendants. *See Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). This factor strongly supports preliminary approval of the Settlement.

**The Risk of Establishing Liability and Damages**. There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. Although Plaintiffs were successful in largely defeating the motion to dismiss, this was no guarantee as to continued success in the case. As discussed above, in their mediation statement and during the mediation, Defendants vigorously argued that discovery would show that Plaintiffs would ultimately be unable to support their liability theory. Defendants also indicated that their damages expert would offer evidence that Plaintiffs could not establish damages because declines in Sundial's stock were not significantly different from declines in the stock prices of similar companies. The Settlement avoids these genuine risks, and therefore satisfies the fourth and fifth *Grinnell* factors.

**The Risks of Maintaining the Class Action Through Trial**. Class certification motion practice had not commenced by the time of Settlement. Thus, the proposed Class had not been certified, which presented risk to Plaintiffs and the proposed Class. In fact, even assuming class certification was achieved, the Court could have revisited certification at any time – presenting a continuous risk that this case, or claims, might not be maintained on a class-wide basis through trial. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory"). Even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. That the Settlement avoids the uncertainty of obtaining and maintaining class certification weighs in favor of preliminary approval of the Settlement.

**The Ability of Defendants to Withstand a Greater Judgment**.  Courts also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato*, 236 F.3d at 86.  Courts generally do not findthe ability of a defendant to withstand a greater judgment to be an impediment to settlement whenthe other factors favor the settlement, and the ability of defendants to pay more money doesnot render a settlement unreasonable.  *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012). Nevertheless, Plaintiffs were concerned about Defendants' ability to withstand a greater judgment, which also weighs in factor of preliminary approval of the Settlement.

Regardless, the Stipulation provides a Settlement Amount that returns approximately 12.1% of the $58 million maximum potential statutory damages to investors. Apton Decl. at ¶21. In cases involving only Securities Act claims between 2011 and 2019, the median settlement amount was $8 million, which represented 7.4% of statutory damages. *Id.* In similar cases with damages between $50 million and $149 million between 2011 and 2019, the median settlement as a percentage of overall damages was 10.4%. *Id.* Here, the Stipulation provides a Settlement Amount above the median percentage of statutory damages, which is an excellent result.

**The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**.  The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness," a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *Independent Energy*, 2003 WL 22244676, at *3–*4 (noting few cases tried before

16

a jury result in full amount of damages claimed). Accordingly, this factor weighs in favor of the Court granting preliminary approval.

**V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS SOLELY FOR SETTLEMENT PURPOSES UNDER RULE 23 IS APPROPRIATE**

Lead Plaintiffs request that the Court certify the proposed Class solely for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Certification of a class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. The SecondCircuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the class is so numerous that joinder of all members is impracticable, (2) "commonality" – there are questions of law or fact common to the class, (3) "typicality" – the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) "adequacy" – the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, certification of a class action for damages requires a showing, under Rule 23(b)(3), that questions of law or fact common to the members of the class predominate over individual issues of law or fact ("predominance") and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3).

Here, the proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

**A.  Numerosity**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d

17

Cir. 1993), and Plaintiffs must only show"that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). The Second Circuit and courts within it have repeatedly held that numerosity is presumed when the proposed class would have at least 40 members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483(2d Cir. 1995); *In re Dynex Cap., Inc. Sec. Litig.*, No. 05 CIV. 1897 HB, 2011 WL 781215, at *1 (S.D.N.Y. Mar. 7, 2011); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity").

Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action where "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities.).

Here, there are likely hundreds, if not thousands of potential Settlement Class Members as Sundial's shares were publicly traded on NASDAQ with 11 million shares sold during the IPO. Apton Decl. at ¶2. Thus, the numerosity requirement is met.

### B. Commonality

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Central States*, 504 F.3d at 245. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *see also Vivendi*, 242 F.R.D. 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of theprospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of class wide

18

resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

In this case, the record reflects the existence of common questions, including the following: (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts concerning Sundial's business and financial status in their Offering Documents; and (3) the extent of the Settlement Class Members' damages and the appropriate measure of those damages. These and other common questions are sufficient to establish Rule 23(a)(2) "commonality." *See, e.g.*, *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011) (finding "commonality" established, explaining that "[t]he common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – areclearly susceptible to common answers").

### C. Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "'Typical' does not mean 'identical.'" *Marsh & McLennan*, 2009 WL 5178546, at *10.

As with commonality, typicality is satisfied here. Like the other Settlement Class Members, Lead Plaintiffs allege that they purchased Sundial shares in or pursuant and/or traceable to the offering documents issued in connection with Sundial's IPO and were damaged upon revelation of Defendants' alleged misrepresentations and omissions.

#### D. **Adequate Representation**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Flag Telecom*, 574 F.3d at 35. Plaintiffs are adequate if their interests do not conflict with those of the class. *Marsh & McLennan*, 2009 WL 5178546, at *10. Pursuant to Rule 23(g), adequacy of proposed class counsel is considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

##### 1. **Adequacy of the Proposed Class Representative**

Lead Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class. Lead Plaintiffs are seeking on their own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. No evidence of any conflict of interests with the Settlement Class exists. Lead Plaintiffs have been engaged during the settlement negotiation process, and support this motion and the Settlement it requests.

##### 2. **Adequacy of the Proposed Class Counsel**

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

The Court-appointed firms serving as Lead Counsel, Levi & Korsinsky LLP and The Rosen Law Firm, P.A., are experienced in prosecuting class actions, and have successfully prosecuted securities class actions in this Court and throughout the country. Courts have consistently found these firms to be well suited as class counsel in securities class actions. Lead Counsel's respective

firm resumes are annexed to the Declaration of Adam M. Apton as Exhibits B and C.

Both firms leveraged their skills and resources to secure this proposed Settlement. The Settlement was reached only after Lead Counsel investigated and drafted the Complaint and successfully opposed Defendants' motion to dismiss. Counsel spent considerable time on this action for the benefit of Sundial shareholders, including conducting a thorough investigation and retaining a private investigator; opposing Defendants' motion to dismiss; issuing discovery requests and drafting letters rogatory; and preparing for and participating in the mediation and settlement discussions including drafting a mediation statement. Apton Decl. at ¶¶6-19. Their experience in securities class actions makes them capable of evaluating cases to determine when a settlement is beneficial to investors. Thus, Lead Counsel should be appointed as Co-Class Counsel for the Settlement Class.

### E. Common Questions Predominate

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Common issues predominate where each member of a class is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct. *See Marsh & McLennan*, 2009 WL 5178546, at *11. "The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). Predominance is a test "readily met" in cases alleging securities fraud. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Common issues also predominate "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Here, because Settlement Class Members are subject to the same alleged misrepresentations and

21

omissions, and common questions predominate. No question exists that issues surrounding Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class. Lead Plaintiffs' claims and the claims of the Settlement Class are also susceptible to common evidence and proof, as if Lead Plaintiffs and each Class Member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants to establish liability. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184,1195-96 (2013); *see also Merrill Lynch*, 277 F.R.D. at 114. Rule 23(b)(3)'s predominance requirement is therefore satisfied.

### F.   A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating Plaintiffs' and the Settlement Class Members' claims. The factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controllingthe prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. *See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantlyin mind vindication of 'the rights of groups of people who individually would be without effectivestrength to bring their opponents into court at all.'"). More, a class action avoids the possibilityof repetitious litigation and efficiently resolves the claims of the entire Settlement Class at once, conserving judicial resources.

Plaintiffs expect that many of the Settlement Class Members are individuals for whom

prosecution of a costly damages action on their own behalf is neither realistic nor efficient. All outstanding related cases have been consolidated into this Action, in an appropriate forum convenient for all parties. Additionally, Plaintiffs believe no difficulties will be encountered in the management of this class action and Settlement. A class action has also allowed Defendants to obtain a class-wide release, without which they would not have agreed to the Stipulation. Certification of the Settlement Class for settlement purposes only will allow the Settlement to be administered in an organized and efficient manner.

For all the forgoing reasons, the Court should preliminarily certify the Settlement Class for settlement purposes only.

## VI.   THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONAL AND APPROPRIATE

As outlined in the agreed-upon form of proposed Preliminary Approval Order, and described above, Lead Plaintiffs will notify Settlement Class Members by mailing the Notice and Proof of Claim Form to all Settlement Class Members who can be identified with reasonable effort, using multiple sources of data, including without limitation a proprietary list maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Notice will advise the Settlement Class Members of:  (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for submitting valid and timely claim forms pursuant to the proposed Plan of Allocation, objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.

In addition to e-mailing the Notice and claim form and providing postcard notice, the Claims Administrator will cause publication of a Summary Notice once over a national newswire

23

service.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA. The Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which includes individual notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06CIV.11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VII.    <u>PROPOSED SCHEDULE</u>

In connection with the preliminary approval of the Settlement Agreement, Plaintiffs request that the Court schedule a Settlement Hearing on final approval during the week of _____, or soon as is convenient to the Court on a date thereafter.

Plaintiffs respectfully request the Court schedule the required dates set forth in the [Proposed] Preliminary Approval Order, including the following dates:

| | |
|---|---|
| Last day for Lead Counsel to email the Summary Notice or send the Postcard Notice to Settlement Class Members, and to cause the Settlement Stipulation, Preliminary Approval Order, Notice and Proof of Claim to be posted on the Claims Administrator's Website. | Within 16 days of entry of the Preliminary Approval Order |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, the Plan of Allocation, and/or the Fee and Expense Application. | At least 28 days prior to Settlement Hearing |
| Last day for Settlement Class Members to submit comments in support of or in opposition to the proposed Settlement, the Plan of Allocation, and/or the Fee and Expense Application. | At least 21 days prior to Settlement Hearing |
| Last day for potential Settlement Class Members to request exclusion from the Settlement Class. | At least 21 days prior to Settlement Hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the Plan of Allocation, and/or the Fee and Expense Application. | At least 7 days prior to Settlement Hearing |

24

| Settlement Hearing | At least 110 days from after entry of Preliminary Approval Order |
|---|---|

## VIII.   CONCLUSION

Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

Dated: December 3, 2021

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton
Nicholas I. Porritt
55 Broadway, 10th Floor
New York, NY 10006
Tel : 212-363-7500
Fax : 212-363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

Elizabeth K. Tripodi
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax : 212-363-7171
Email: etripodi@zlk.com

**THE ROSEN LAW FIRM, P.A.**

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg
Leah Heifetz-Li
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (215) 686-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: lheifetz@rosenlegal.com
***Co-Lead Counsel for Plaintiffs and the Class***

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2021, I served a true and accurate copy of the foregoing by electronic mail upon all counsel of record.


*Leah Heifetz-Li*

Leah Heifetz-Li