**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE SUNDIAL GROWERS INC. SECURITIES LITIGATION | File No. 1:19-cv-08913-ALC <br><br> **DECLARATION OF ADAM M. APTON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT** |

I, ADAM M. APTON, hereby declare as follows:

1.       I am a partner of the law firm of Levi & Korsinsky, LLP, attorneys for Lead Plaintiffs 998735 BC LTD and David Draiman (collectively, "Plaintiffs") and Co-Lead Counsel in this Action along with The Rosen Law Firm, P.A. I am admitted to practice before this Court and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action. I submit this Declaration in support Plaintiffs' Motion for Preliminary Approval of the Settlement.[1]

**BACKGROUND**

2.       Sundial Growers, Inc. ("Sundial") is a licensed producer of cannabis in Canada, which it began selling after Canada legalized adult recreational use. On August 1, 2019, Sundial held its initial public offering, selling 11 million shares of common stock at $13 per share (the "IPO").

3.       Sundial filed a Registration Statement and Prospectus with the U.S. Securities & Exchange Commission in connection with the IPO (the "Offering Documents").

4.       On September 25, 2019, Plaintiff Yimin Huang filed the initial complaint in this action. The complaint asserted that Defendants violated Sections 11, 12(a)(2) and 15 of the

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated December 2, 2021 (the "Stipulation").

Securities Act of 1933 by making misrepresentations in the offering documents issued in connection with Sundial's IPO. On November 1, 2019, Daniel Gulacsy filed a similar putative class action.

5.      On December 20, 2019, the Court consolidated the two actions into the above-captioned Action and appointed Plaintiffs 998735 BC LTD and David Draiman as Co-Lead Plaintiffs and their counsel at Levi & Korsinsky, LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel.

6.      Co-Lead Counsel commenced an investigation into the claims immediately after being appointed. The investigation included: (i) Sundial's public SEC filings; (ii) presentations, press releases, media and analyst reports made by or about the Company; (iii) transcripts of Sundial's conference calls with analysts and investors; (iv) publicly available data relating to Sundial common stock; (v) review of other materials and data concerning the Company; and (vi) research of the applicable law with respect to the claims asserted in the Action, and the potential defenses thereto.

7.      Co-Lead Counsel also consulted with a financial economist on loss causation and damages issues.

8.      On February 18, 2020, Plaintiffs filed an Amended Consolidated Complaint. As a result of Co-Lead Counsel's investigation, in addition to claims relating to alleged misstatements and omissions with respect to quality control issue and an alleged product return, the Amended Consolidated Complaint also alleged that Sundial accelerated its revenues for the second quarter of 2019 to boost the IPO.

9.      On April 9, 2020, Defendants filed a letter requesting a pre-motion conference in connection with their anticipated motion to dismiss. In response to the arguments in the Defendants' letter, on April 30, 2020, Plaintiffs filed the Second Amended Consolidated Complaint ("Complaint"). The Complaint alleged that Sundial improperly accelerated revenue of C$3 million to C$4 million into the second quarter of 2019.

10.     On May 27, 2020, Defendants moved to dismiss the Complaint. The briefing on the motion was extremely thorough.

11.     On March 30, 2021, the Court granted in part and denied in part Defendants' motion to dismiss.

12.     The Court largely denied Defendants' motion with respect to Plaintiffs' claims about Sundial's revenue recognition and relating to Plaintiffs' claim that Defendants violated Item 303 of Regulation S-K. The Court dismissed Plaintiffs' claims concerning Sundial's statements about the quality of its product.

13.     On May 26, 2021 the parties conducted an initial discovery conference pursuant to Federal Rule of Civil Procedure 26(f). Plaintiffs began drafting initial disclosures and discovery demands. To develop these disclosures and demands, we revisited our preliminary research for the amended complaint and the Court's Order on Defendants' Motion to Dismiss.

14.     Plaintiffs drafted discovery demands seeking to obtain information regarding Sundial's customers, revenue recognition policies, and the IPO. With respect to Sundial's underwriters, Plaintiffs drafted discovery demands seeking to obtain information concerning the underwriters' due diligence efforts, Sundial's IPO, and Sundial's Offering Documents.

15.     Plaintiffs also drafted third-party discovery (*i.e.*, letters rogatory and subpoenas) directed towards Sundial's auditor and customers in the United Kingdom and Canada. These requests focused on Sundial's contracts with its customers and any returns of Sundial's products. These requests also focused on Sundial's auditor and its annual audits, financial statement reviews, and additional work performed in connection with Sundial's IPO.

16.     While discovery was underway, the parties agreed to attempt private mediation and scheduled a full-day session with David Murphy, Esq., of Phillips ADR Enterprises. Mr. Murphy is a retired partner of Wachtell, Lipton, Rosen & Katz and has expertise in litigating and resolving complex matters, including securities fraud cases.

17.     Prior to the mediation session, the Parties prepared and exchange detailed mediation statements. The briefs focused on the salient issues impacting liability, incorporating

information from the Defendants public filings, the New York Action, and interviews with confidential witnesses. The briefs also addressed damages in detail and asserted different arguments concerning negative loss causation and recoverability.

18.    On August 10, 2021, the parties participated in a virtual mediation session before Mr. Murphy. The mediation began at 9:00 am ET and ended at approximately 10:00 pm ET with a mediator's recommendation issued the following day to settle the case for $7,000,000.

19.    The Parties then reached a settlement in principle on August 11, 2021, exchanging a full release of all claims against all Defendants for all Settlement Class Members that do not exclude themselves in exchange for $7,000,000. On August 24, 2021, the Parties executed a term sheet, broadly setting forth the terms of the Settlement.  Pursuant to the Settling Parties' request on August 30, 2021, the Court ordered a stay of all proceedings, pending its consideration of Plaintiffs' motion for preliminary approval.

### The Settlement

20.    The Stipulation and Agreement of Settlement dated December 2, 2021 (the "Settlement Agreement"), contains the full terms of the proposed settlement. The settlement before the Court provides for a cash payment by or on behalf of Sundial of $7,000,000. In exchange for this payment, Plaintiffs have provided a full release of all claims related to this action. Plaintiffs agreed to the settlement only after careful consideration of its benefits.

21.    First, the amount of the recovery strongly supports accepting the settlement. The recovery is well within the range of historical settlement in similar cases. Cornerstone Research is a leading economics consulting firm that published an annual report on class action settlements in securities fraud lawsuits. Most recently, in its 2020 report, Cornerstone Research stated that in cases with only '33 Act claims between 2011 and 2019, the median settlement amount was $8 million, which represented a median 7.4% of Statutory Damages. In similar cases with damages between $50 million and $149 million between 2011 and 2019, the median settlement as a percentage of overall damages was 10.4%. This settlement returns approximately 12.1% of the

$58 million maximum potential statutory damages (as determined by Lead Counsel in conjunction with a damages expert) to investors, a strong result on its face.[2]

22.    Second, continued litigation was risky. Although we were confident in our arguments, Plaintiffs faced the risk, at the class certification, summary judgment, and trial stages, that the Court or a jury would not be convinced. More, appeals would likely follow even a decision favorable to Plaintiffs.

23.    Third, additional litigation would have been risky with respect to damages. Defendants' damages expert would likely have argued, among other things, that the defense of negative loss causation can be established as a matter of law. Defendants argued that the declines in the price of Sundial stock were not significantly different from the declines in the stock prices of similar companies. Defendants also argued that damages would be limited to declines in Sundial's stock price on the date of the filing of the New York Action, on September 9, 2019, rather than the September 25, 2019 filing in this action. This would limit recoverable damages by as much as 25%. Damages may also have been limited because the allegations regarding Defendants' revenue were first introduced in February 2020, several months after the case was initially filed in September 2019. Therefore, Defendants argue, that declines in Sundial's stock price were caused by factors other than the alleged misrepresentations. Finally, damages may also be limited due to difficulty demonstrating that shares purchased after the IPO were traceable to the registration statement. Allegedly, one million unrestricted shares were released outside of the IPO less than two weeks after August 1, 2019.

24.    Finally, Plaintiffs were concerned about Sundial's precarious financial position impacting its ability to withstand a greater judgment, which could make a near term recovery preferable to a theoretically larger recovery after years of protracted litigation.

---

[2] A copy of the Cornerstone Research report is attached hereto as Exhibit A. The data from the report referenced in this paragraph is located on pages 7 and 8.

25.	When viewed in the context of these risks and the uncertainty of any later recovery from Defendants, the Settlement is extremely beneficial to the Class, which would need to prevail against Defendants at several stages and on appeal at each.

26.	Considering each of these points independently and collectively, the proposed settlement provides an excellent outcome for Plaintiffs and the class. It restores approximately 12.1% of their alleged statutory damages and will provide a recovery in the near term instead of years of additional litigation with uncertainty over the outcome. The proposed settlement is thus fair, reasonable, and adequate.

## PRELIMINARY APPROVAL

27.	If the Court grants preliminary approval of the settlement, Lead Counsel will proceed with a thorough notice program with an experienced claims administrator, Strategic Claims Services ("SCS"). SCS will email copies of the notice to all potential Class Members for whom SCS can obtain email addresses, which will include a description of the claims, the recovery, and information about each class member's rights to participate, opt out, or object to the settlement. For any potential Class Member for whom it cannot obtain an email address, SCS will mail a postcard notice. It will also publish a shorter, summary notice once in print and once electronically in business-oriented news services, i.e., Investor's Business Daily and PR Newswire. SCS will also create and maintain a website devoted to the administration of this action and field telephone calls from potential claimants during normal business hours.

28.	The notice will contain the Plan of Allocation for this Action. The Plan of Allocation compensates all Class Members in a uniform manner. Depending on the number of Sundial shares purchased or acquired in or pursuant and/or traceable to the offering documents issued in connection with Sundial's August 1, 2019 IPO, Class Members will receive a certain amount of compensation. The compensation received corresponds to the overall alleged losses sustained by Class Members who submit valid claims.

29.	Specifically, the Plan of Allocation accounts for Class Members class member's statutory damages. For cases involving Section 11 and Section 12(a)(2), shareholder losses are

estimated using a model in which the statutory loss is the difference between the statutory purchase price and the statutory sales price. The statutory purchase price is the lesser of the security offering price or the security purchase price. Prior to the first complaint filing date, the statutory sales price is the price at which the security was sold. After the first complaint filing date, the statutory sales price is the greater of the security sales price or the security price on the first complaint filing date in this Action. Plaintiff Yimin Huang filed this lawsuit on September 25, 2019. On that date, the price of Sundial common stock closed at $5.61. Each Class Member who submits a valid claim will ultimately be entitled to receive a distribution for their recognized loss proportionate to the overall recognized losses. In other words, each Class Member will receive his or her pro rata share of the Settlement Fund after fees and expenses (i.e., the Net Cash Settlement Amount). The full terms of the Plan of Allocation are contained in the notice (attached as Exhibit A-1 to the Proposed Order Granting Preliminary Approval of Settlement).

30.    Lead Counsel intends to seek an award of attorneys' fees equal to one-third of the Settlement Fund ($2,333,333.33) and reimbursement of expenses in an amount equal to or less than $125,000.

31.    Attached hereto as Exhibit B is a true and correct copy of Levi & Korsinsky's firm resume.

32.    Attached hereto as Exhibit C is a true and correct copy of The Rosen Law Firm's firm resume.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of December, 2021.

ADAM M. APTON