**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUNDIAL GROWERS INC. SECURITIES LITIGATION | Master File No. 1:19-cv-08913-ALC |
| | This Document Relates To: All Actions |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  FACTS ............................................................................................................................... 2

    A.   Factual Allegations .................................................................................................. 2

    B.   Procedural History ................................................................................................... 3

    C.   The Settlement ......................................................................................................... 4

        1.   Cash Consideration and Release ................................................................. 5

        2.   Notice to the Class ...................................................................................... 5

        3.   Exclusion and Objection Deadline .............................................................. 6

        4.   The Plan of Allocation ................................................................................ 6

III.  ARGUMENT ..................................................................................................................... 6

    A.   The Court Should Finally Approve the Settlement Class .......................................... 6

    B.   The Court Should Approve the Notice to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process .................................................................. 7

    C.   The Court Should Finally Approve the Settlement as Fair, Reasonable, and Adequate ................................................................................................................. 8

        1.   As the Product of Arms' Length Negotiations, the Settlement is Presumptively Fair ..................................................................................... 8

        2.   The Settlement is Fair, Reasonable, and Adequate under the Second Circuit's *Grinnell* Factors ........................................................................ 10

            a.   The Case is Complex and Continued Litigation Will be Protracted and Costly ............................................................................... 11

            b.   The Settlement Class Reaction Supports Final Approval ........................... 13

            c.   Plaintiffs Were Sufficiently Informed to Settle the Action ........................ 13

            d.   Plaintiffs Faced Risks to Establishing Liability and Damages ................... 14

            e.   The Risks of Maintaining Class Action Status Through Trial .................... 16

            f.   The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks ................................. 16

3.    The Settlement Satisfied the Remaining Rule 23(e) Factors ............................... 18

    a.    Attorneys' Fees ....................................................................................... 18

    b.    With the Exception of a Supplemental Agreement About a
        Termination Threshold, the Settling Parties Have No Other Agreement .... 19

D.    The Court Should Approve the Plan of Allocation ....................................................... 20

IV.    CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ................................................................................... 7, 11

*Cagan v. Anchor Sav. Bank FSB*,
  No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .................................................. 17

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................. 14, 19, 20

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................................... passim

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................... 10, 11

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................................. 9, 10

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................................ 20

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ............................................................................................... 18

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................. 12

*In re Agent Orange Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................................................... 18

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .................................. 12

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................ 12, 15, 21

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................. 11, 12, 13, 14

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................ 11, 13, 16

iii

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................................ 9

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................................ 11

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018).......................................................................... 9, 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................. 16

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................................... 19

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 14, 16, 20

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)....................................... 9

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................... 8, 10, 13, 20

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ..................................................................................... 13

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................. 8, 20

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ...................................... 21

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................................... 15

*In re Sony Corp. SXRD*,
448 F. App'x 85 (2d Cir. 2011) ....................................................................................... 11

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)................................. 14

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................ 20

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................ 14

iv

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)...................................................................... 17

*Olden v. LaFarge Corp.*,
   472 F. Supp. 2d 922 (E.D. Mich. 2007)................................................................... 13

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ............................................................................ 19

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................... passim

*Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................... 9

**Statutes**

15 U.S.C. §77(k) ...................................................................................................................... 4

15 U.S.C. §77(l) ....................................................................................................................... 4

15 U.S.C. §77k(e) .................................................................................................................. 21

15 U.S.C. § 78u-4(a)(4) ......................................................................................................... 19

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................... 7

Fed. R. Civ. P. 23(a) ............................................................................................................... 6

Fed. R. Civ. P. 23(b)(3)........................................................................................................... 6

Fed. R. Civ. P. 23(c)(2)......................................................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(ii)................................................................................................. 7

Fed. R. Civ. P.  23(e) ......................................................................................................... 8, 18

Fed. R. Civ. P. 23(e)(1)........................................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................................ 18, 19

Fed. R. Civ. P. 23(e)(2)(C)(iv)............................................................................................... 19

## I.    INTRODUCTION

On June 23, 2022, the Court preliminarily approved the Settlement of this class action as fair, reasonable, and adequate. (ECF No. 105). Through the Court approved Claims Administrator, Plaintiffs timely executed the notice program as the Court ordered. As of the filing of this Motion for Final Approval, no member of the Settlement Class has either objected to the Settlement or requested exclusion from the Settlement Class. The Settlement is fair, reasonable, and adequate and Lead Plaintiffs 998735 BC LTD and David Draiman (collectively "Plaintiffs") now move for final approval, releasing claims against all defendants in exchange for a cash payment of seven million dollars ($7,000,000).

The Settlement is the product of arms' length negotiations after mediation with neutral, David Murphy of Phillips ADR ("Mr. Murphy"), including the exchange of mediation statements in which both parties discussed the strengths and weaknesses of their claims and defenses. With the reaction of the Settlement Class, these arms' length negotiations among experienced counsel with a neutral mediator lend a presumption of fairness to the Settlement.

In advance of these negotiations, however, Plaintiffs, through Lead Counsel, thoroughly investigated the claims the Action asserts and zealously represented the Settlement Class. While Plaintiffs and Lead Counsel believe that their claims have merit, challenges to establishing liability and class certification, proving damages, achieving a greater recovery, and collecting it will possibly impede and certainly delay a greater recovery in future, if any. Defendants have and continue vigorously to deny liability. No guarantee exists that Plaintiffs would have been able to obtain the necessary evidence to prove their case. Even if they could, discovery, class certification, summary judgment, trial and appeal would be costly, take years, and delay any potential recovery to the Settlement Class.

1

For the following reasons, therefore, this Court should finally certify the Settlement Class, approve the notice as the best practicable means of informing the Settlement Class, approve the Settlement as fair, adequate, and reasonable, and approve the Plan of Allocation.

## II.    FACTS

### A.    Factual Allegations

Plaintiffs' Second Amended Consolidated Complaint ("Complaint") (ECF No. 66) alleges that Defendants made material false statements and omissions in Sundial's Registration Statement and Prospectus (the "Offering Documents"), including that Defendants: (1) affirmatively misstated revenue estimates for the second quarter 2019, and (2) omitted that a customer sought to return a material amount of Sundial's total second quarter 2019 sales. On that basis, Plaintiffs asserted claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). *See, e.g.,* ¶¶2, 7, 45-51.[1] On March 30, 2021, the Court, on the record, largely denied Defendants' motion to dismiss, except as to Plaintiffs' claim against Sundial under Section 12(a)(2) of the Securities Act (ECF No. 79).

Sundial produces and distributes cannabis in Canada. ¶15. It began cultivating its product in 2012 and selling it in 2018 after Canada legalized adult, recreational cannabis use. ¶4. On October 9, 2018, Sundial opened its flagship facility in Olds, Alberta ("Olds Facility"), containing 140 cultivation rooms capable of producing over 100 million grams of cannabis annually. ¶¶4, 43. Shortly thereafter, Sundial began preparing for its IPO and on July 5, 2019, filed the Registration Statement. ¶53. Sundial completed the IPO on August 1, 2019, raising approximately $134.4 million in gross proceeds. ¶¶55, 56.

---

[1] Plaintiffs cite to the Complaint as "¶__."

In the Offering Documents, Sundial included estimated revenue for the second quarter of 2019 of between $19 million and $21 million. In fact, its revenue was $3 million to $4 million less. ¶¶59-60. As alleged in the Complaint, this difference accounted for between 12% and 21% of Sundial's revenue for the quarter and the reason for the discrepancy is that Sundial recognized, in the estimate, revenue for product that had not yet shipped. ¶60. The Complaint alleges that Defendants did this to enhance Sundial's financial results materially to benefit the IPO. ¶¶57, 58. The Complaint alleges that by recording at least $3 million to $4 million of the Company's revenue in the second quarter, Defendants violated IFRS and Sundial's own accounting policy on recognizing revenues. ¶¶61-62.

In addition to prematurely recognizing revenue, the Complaint alleges, Sundial also inflated its second quarter results by asking a customer making a large return of adulterated product to defer the return. The Complaint alleges that during the second quarter, a customer sought to return or reject delivery of a total of 554 kilograms of cannabis, 10% of Sundial's total second-quarter sales, because the product failed to meet quality control standards. ¶¶45, 64. The Complaint alleges Sundial asked the customer to wait until after the second quarter to make the return so that it would not impact the IPO. ¶46.

B.     **Procedural History**

On September 25, 2019, Yimin Huang filed a putative class action on behalf of persons who purchased or otherwise acquired Sundial securities pursuant and/or traceable to Sundial's Offering Documents issued in connection with Sundial's IPO, in a case captioned *Huang v. Sundial Growers Inc., et. al.*, 19-cv-08913 ("Huang Action"). On November 1, 2019, Daniel Gulacsy filed a similar putative class action, in a case captioned *Gulacsy v. Sundial Growers Inc., et. al.*, 19-cv-10157 ("Gulacsy Action"). On December 20, 2019, the Court consolidated the Huang Action and the Gulacsy Action into the consolidated putative class action, captioned *In re Sundial*

3

*Growers Inc. Securities Litigation*, Master File No. 19-cv-08913-ALC (S.D.N.Y.) ("Action"), appointed 0998735 BC LTD and David Draiman as lead plaintiffs; and appointed the Rosen Law Firm, P.A. and Levi & Korsinsky, LLP as co-lead counsel ("Lead Counsel") (ECF No. 44).

On February 18, 2020, Plaintiffs filed an Amended Consolidated Complaint (ECF No. 50). On April 30, 2020, Plaintiffs filed the Complaint (ECF No. 66). On May 27, 2020, Defendants moved to dismiss the Complaint (ECF Nos. 69-71). On June 23, 2020, Plaintiffs filed their opposition to the motion to dismiss the Complaint (ECF No. 72-73). On July 14, 2020, Defendants filed their reply in further support of their motion to dismiss the Complaint (ECF No. 74).

On March 30, 2021, the Court denied in part and granted in part Defendants' motion to dismiss on the record, sustaining the Complaint's claim under Section 11 of the Securities Act of 1933 ("Act"), 15 U.S.C. §77(k) but dismissing the claim under Section 12 of the Act, 15 U.S.C. §77(l). (ECF No. 79.)

## C.    The Settlement

After the Court denied, in part, Defendants' motion to dismiss, the parties agreed to mediate this dispute. Declaration of Jacob A. Goldberg In Support of (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs ("Goldberg Decl.") ¶29. The Parties participated in a confidential mediation with Mr. Murphy on August 10, 2021. *Id.*, at ¶31. The next day, August 11, 2021, the Parties accepted the mediator's proposal to exchange a full release of all claims against all Defendants from all Settlement Class Members that do not exclude themselves in exchange for $7,000,000. *Id.* On August 24, 2021, the Parties executed a term sheet, broadly setting forth the terms of the Settlement. *Id.* They then finalized Settlement terms in the December 2, 2021, Stipulation of Agreement of Settlement ("Stipulation"). (ECF No. 101.)

4

On December 3, 2021, Plaintiffs filed their motion for preliminary approval, which included the Stipulation and proposed notices to the Settlement Class Members (ECF No. 98-101). On June 23, 2022, the Court entered the Preliminary Approval Order, calling for notice, and setting a Settlement Hearing for October 12, 2022, at 12:00 p.m. (ECF No. 105.)

### 1.    Cash Consideration and Release

The Settlement provides for a payment of $7 million in cash to the Settlement Class. If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against the Defendants and their related parties that were alleged or could have been alleged in this Action. Defendants will release any claims that could have been brought against Plaintiffs related to the prosecution of this Action.

### 2.    Notice to the Class

Pursuant to the Preliminary Approval Order, the Court appointed Claims Administrator, Strategic Claims Services ("SCS"), provided potential class members, brokers, and nominee holders with notice of the settlement. *See* Goldberg Decl. Ex. 1, Declaration of Margery Craig ¶¶3-9. ("Craig Decl."). The notice advised potential class members of the terms of the Settlement and Plan of Allocation; that Plaintiffs' Counsel would seek a fee award not to exceed one-third of the Settlement Amount, or $2,333,333.33, plus interest; recovery of actual litigation expenses not to exceed $125,000; an award to Plaintiffs of $10,000 each (or $20,000 in total); and that any objections to any aspect of the Settlement or to the fee and expense request were due to be received by the Court and counsel no later than September 21, 2022. Craig Decl. Ex. A; Ex. B; Ex. C.

As of the date of this writing, 4,665 potential Settlement Class Members were notified either by mailed Postcard Notice or emailed a direct link to the Notice and Claim. Craig Decl. ¶8. The Claims Administrator also established and continues to maintain a website dedicated to the Settlement, https://www.strategicclaims.net/sundial. *Id*. ¶12. The website provides a link for online

claim filing and lists important deadlines. *Id*. Additionally, the Claims Administrator disseminated the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily*. *Id*. ¶10.

### 3. Exclusion and Objection Deadline

The Preliminary Approval Order mandates that no later than September 21, 2022, members of the Settlement Class must either to request exclusion from the Settlement Class or object to the Settlement, if they so choose. (ECF No. 105, ¶¶21-25). As of the date of this Motion for Final Approval, no member of the Settlement Class has either objected to the Settlement or requested exclusion. Craig Decl. ¶¶13-14. Plaintiffs will update the Court about requests for exclusion and respond to objections, if any, in a supplemental filing seven (7) days prior to the October 12, 2022, Final Approval Hearing. (ECF No. 105, ¶29).

### 4. The Plan of Allocation

The Long Notice describes the Plan of Allocation. Craig Decl., Ex. A. The Plan of Allocation fairly and reasonably distributes the Net Settlement Fund to Settlement Class Members consistent with the federal securities laws and principles of loss causation. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiffs). Craig Decl., Ex. A.

## III. ARGUMENT

### A. The Court Should Finally Approve the Settlement Class

In the Preliminary Approval Order, the Court found, "preliminarily and for purposes of this Settlement only, the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied[.]" (ECF No. 105, ¶¶2-4) (preliminarily certifying the Settlement Class). Nothing has changed since the Court entered the Preliminary Approval Order. The Court should grant final certification to the Settlement Class.

**B.      The Court Should Approve the Notice to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process**

The notice program, alerting the Settlement Class to the Action's existence, their rights to file a claim or request exclusion, the right to object, and the consequences of any particular choice, complies with this Court's Preliminary Approval Order and satisfies Rule 23(e)(1)'s mandate and due process.

Courts evaluate compliance with Rule 23 and due process, measuring the notice program's reasonableness. Fed. R. Civ. P. 23(e)(1); *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Notice is reasonable where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Pierson*, 607 F. App'x at 73-74. Notice need not be perfect but only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(2)(C)(ii). In its Preliminary Approval Order, the Court approved the notice program and its substance. (ECF No. 105, ¶¶9, 13-17). In addition, the Court appointed Strategic Claims Services ("SCS") as Claims Administrator. (ECF No. 105, ¶11).

Under Lead Counsel's direction, SCS executed the notice program precisely and timely as the Court ordered. SCS sent the Depository Trust Company ("DTC") a Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Proof of Claim") (collectively, the "Notice and Claim") for the DTC to publish on its Legal Notice System ("LENS") on July 5, 2022. Craig Decl. ¶3. On July 5, 2022, SCS caused a letter to be mailed or e-mailed to the 1,924 nominees contained in the SCS master mailing list, notifying them of the Settlement and requesting that they, within 10 calendar days from the date of the letter, either send the Postcard Notice or email the link to the location of the Notice and Claim on the settlement

webpage to their customers who may be beneficial purchasers/owners or provide SCS with a list of the names, mailing addresses, and email addresses of such beneficial purchasers/owners so that SCS could promptly either mail the Postcard Notice or email the link to the location of the Notice and Claim on the settlement webpage. *Id.* ¶4. SCS printed and mailed the Postcard Notice to potential members of the Settlement Class. ¶¶5-6. Additionally, SCS was notified by a nominee that they emailed 848 of their clients to notify them of this settlement and provide a direct link to the Notice and Claim on the settlement webpage. ¶7. SCS caused the Summary Notice to be published in *Globe Newswire* and *Investor's Business Daily*. *Id.* ¶10. SCS also maintains a webpage on its website at www.strategicclaims.net/sundial/, with the current status; the case deadlines; the online claim filing link; and important documents such as the Notice and Claim, the Preliminary Approval Order, and the Settlement Stipulation. *Id.* ¶12.

### C.    The Court Should Finally Approve the Settlement as Fair, Reasonable, and Adequate

Under Rule 23(e), courts approve class action settlements that are "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Public policy favors settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context'"). Further, "[i]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (alterations in original); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (same).

#### 1.    As the Product of Arms' Length Negotiations, the Settlement is Presumptively Fair

As an initial matter, this Court may presume that the Settlement is fair, adequate, and

reasonable as the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's recommendations regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (Settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion."). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotation omitted).

Here, after Lead Counsel thoroughly investigated the Plaintiffs' claims, filed the operative Complaint, and defeated Defendants' motion to dismiss, in part, settlement negotiations commenced. Goldberg Decl. ¶29. With Mr. Murphy as the mediator, the Settling Parties exchanged detailed briefs concerning each element of Plaintiffs' claims and defenses thereto. *Id*. ¶¶29-30. On August 10, 2021, the Settling Parties participated in a full day mediation session with Mr. Murphy. The next day, the Settling Parties reached a settlement in principle. *Id.*, ¶31.

The arm's-length nature of the settlement negotiations between experienced counsel, with the involvement of Mr. Murphy should cause this Court to presume that the Settlement is fair, adequate, and reasonable. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at \*4 (S.D.N.Y. May 9, 2014) ("A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations."). With no changed circumstance or objection, therefore, the Court should sustain its preliminary approval of this Settlement, which is the outcome of arm's length negotiations after a hard-fought motion to dismiss.

### 2. The Settlement is Fair, Reasonable, and Adequate under the Second Circuit's *Grinnell* Factors

With the presumption, here, of fairness, this Court will evaluate the Settlement, "examin[ing] the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors," including:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Deutsche Bank*, 236 F.3d at 86.

While courts consider each of the *Grinnell* factors, "not every factor must weigh in favor of settlement[. R]ather court[s] should consider the totality of these factors in light of the particular circumstances." *IMAX*, 283 F.R.D. at 189. "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy

of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). The Settlement satisfies the criteria for approval under *Grinnell.*

> ### a.   The Case is Complex and Continued Litigation Will be Protracted and Costly

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Aeropostale*, 2014 WL 1883494, at *5 (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Action, which involves complex rules and facts concerning revenue recognition and the treatment of sales and returns, is no exception.

Further litigation would have required substantial additional expenditures of time and resources, involving complex issues of law and fact, with a significant risk of a lower recovery, if any. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages").

For example, in the absence of the Settlement, the Action would have required Plaintiffs to engage in fact and expert discovery, successfully move for class certification, withstand summary judgment and pre-trial motions, prepare for and prevail at trial and then at post-trial motions and appeals. Throughout each litigation phase, Plaintiffs would continue to face a robust

defense from experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties"). As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner, Inc.*, 2006 WL 903236, at *8.

Even if Plaintiffs could recover a larger judgment after a trial – no certainty – the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, reducing its value in comparison to the present proposed recovery. Goldberg Decl. ¶¶38-43; *see Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). Accordingly, material risk exists that further litigation might yield a smaller recovery – or no recovery at all – years in the future. *See*, *e.g.*, *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class). The expense, duration, and complexity of the Action were it to proceed through discovery and trial supports final approval of the Settlement.

**b.     The Settlement Class Reaction Supports Final Approval**

A "[l]ack of objection is strong evidence of the settlement's fairness." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006); *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people). To date, no Settlement Class Member has requested exclusion, and no one has objected to the Settlement. Craig Decl. ¶¶13-14; Goldberg Decl. ¶34. Plaintiffs will address any further requests for exclusion or objections in their Reply.

The lack of both objections to the Settlement and request for exclusion from Settlement Class supports final approval of the Settlement.

**c.     Plaintiffs Were Sufficiently Informed to Settle the Action**

Courts also evaluate whether Plaintiffs and Lead Counsel are sufficiently informed about the merits of the claims and defenses and the value thereof. *Bear Stearns*, 909 F. Supp. 2d at 267. Considering the stage of the proceedings," *Wal-Mart*, 396 F.3d at 117, discovery need not be extensive so long as the Court is satisfied that Plaintiffs "'have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement'." *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D. at 190 (The "sufficiently informed" factor is "not an overly burdensome one to achieve.").

Through Lead Counsel, Plaintiffs thoroughly investigated the claims in this Action, including analyzing public filings, news articles, analyst reports, and other publicly available information relevant to the claims at issue, and hiring private investigators to locate and interview relevant witnesses. Plaintiffs used the information obtained in this investigation to largely defeat Defendants' motion to dismiss. Additionally, Lead Counsel analyzed potential class-wide damages. Goldberg Decl. ¶¶18, 30, 33.

13

Through these efforts, Plaintiffs and Lead Counsel sufficiently understood the claims and defenses in this Action, including the risks to establishing liability and damages. Goldberg Decl. ¶¶37-43; *see AOL Time Warner*, 2006 WL 903236, at *10; *see also In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) (formal discovery unnecessary so long as settlement proponents have sufficient understanding of claims and defenses). Plaintiffs' investigation of the Class claims and their understanding of the defenses suffice to inform them about the Action's merits, thereby supporting final approval of the Settlement.

### d.    Plaintiffs Faced Risks to Establishing Liability and Damages

In evaluating fairness, courts consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Courts should not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11. *See also Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019). In this case, Defendants deny the factual allegations in the Complaint concerning the inflation of revenue estimates in the second quarter of 2019 – the precise allegations that were the reason for the Court's

denial of Defendants' motion to dismiss. *See* Transcript of Proceedings re: Conference held on 3/30/2021 at 5-6 (ECF No. 85). There is a risk that, with the benefit of evidence, the Court could agree that Defendants did not materially mislead investors concerning Sundial's revenue. Defendants also maintained that they would be able to establish negative causation as a matter of law because they would be able to show that the decline of Sundial's stock was consistent with that of similar companies in an "annus horribilis" for the cannabis industry. If the Court granted summary judgment, then Plaintiffs would have spent years, even more attorney hours, tens of thousands of dollars in additional costs, and many judicial resources, and recovered nothing.

Likewise, a jury might find against Plaintiffs at trial and Plaintiffs and the Settlement Class would recover nothing after expending significantly more time, expense, judicial resources, and the jury's time. Proof of damages in cases such as this one is also always difficult, and invariably requires highly technical expert testimony. The experts retained by Plaintiffs and Defendants would have widely divergent views as to the range of recoverable damages at trial. *See* Goldberg Decl. ¶41. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally Am. Bank Note Holographics*, 127 F. Supp. 2d at 426-27 (stating that "[i]n such a battle, Lead Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); see also *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Finally, a favorable jury verdict might be reversed on appeal. In that case, in addition to all the costs of taking a case through trial, Plaintiffs would have also expended the Second Circuit's time and again recovered nothing.

15

Accordingly, the material risk of Plaintiffs and the Settlement Class receiving nothing or a lower recovery favors final approval.

### e.    The Risks of Maintaining Class Action Status Through Trial

During the course of the Action, Plaintiffs had not yet moved for class certification. Generally, however, material risks of non-certification or decertification exist in securities class actions. Defendants would likely challenge class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. Defendants typically challenge market efficiency, price impact, and the adequacy of Plaintiffs to serve the class. Even if this Court certified a class over Defendants objections, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage").

Accordingly, the uncertainty of achieving class certification supports approval of the Settlement.

### f.    The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range

16

of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario – assuming Plaintiffs overcome all the obstacles noted above and win at trial, and Defendants do not prevail on any of their arguments – Plaintiffs' maximum, potentially recoverable class wide statutory damages are $58 million. Goldberg Decl. ¶33. Should any of Defendants' arguments on liability or damages succeed, however, recoverable damages could be materially less. *See Facebook,* 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.") The $7 million Settlement represents 12.1% of the Settlement Class's best-case, maximum recoverable damages. *Id.* In light of the material risk that Plaintiffs might recover nothing without the Settlement, this Settlement is within the range of reasonableness. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at \*12–13 (E.D.N.Y. May 22, 1990) (granting final approval which amounted to approximately 1.9% of best possible recovery). This percentage recovery also exceeds the 1.8% median settlement value in 2021 for all securities class actions. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at pp. 23-24 (January 25, 2022).; Exhibit 9 to the Goldberg Decl.[2]

---

[2] *Available at*: https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf

In factually and legally complex securities class actions, responsible counsel cannot be certain that they will be able to obtain a judgment at or near the full amount of the class-wide damages that they will seek to prove at trial. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Courts recognize that "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Money in Settlement Class Members' pockets now is more valuable than a speculative recovery that Settlement Class Members might obtain after years of litigation, especially when that theoretical recovery comes with the substantial risk that the Settlement Class may end up with nothing given the challenges that Plaintiffs face in establishing liability and damages. Indeed, Plaintiffs agreed to the Settlement with a full and candid understanding of the strengths and weaknesses of the case. Goldberg Decl. ¶¶37-43.

For the foregoing reasons, Plaintiffs submit that the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate, and in the Settlement Class's best interests. Analysis of the *Grinnell* factors should cause this Court, therefore, to order final approval.

### 3.      The Settlement Satisfied the Remaining Rule 23(e) Factors

#### a.      Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the Memorandum of Law in support of the motion for an award of attorneys' fees, expenses, and award to Plaintiffs, filed concurrently herewith, Lead Counsel seek an award of attorneys' fees of one-third of the Settlement and payment for litigation charges and expenses. The notice program this Court approved and that Lead Counsel, through SCS, executed fully discloses these fees and costs. Ex 1, Ex A, at 1.

18

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order."). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

Plaintiffs also request $20,000 in total (comprised of $10,000 to each Lead Plaintiff) pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their efforts in stewarding the Action. The fees and costs Plaintiffs seek are in line with other fee and costs awards in this Circuit. Because the notice informed the Settlement Class and no Settlement Class Member has objected to final approval or to the fees and costs Plaintiffs notified the Settlement Class they would seek, the Settlement satisfies Rule 23(e)(2)(C)(iii). Ex. 1 ¶¶13-14.

>   **b.      With the Exception of a Supplemental Agreement About a Termination Threshold, the Settling Parties Have No Other Agreement**

Pursuant to Rule 23(e)(2)(C)(iv), as disclosed in the Settlement Stipulation (ECF No. 101 ¶10.5), and in Plaintiffs' Preliminary Approval brief (ECF No. 99, at 13-14), the Settling Parties have entered into a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Sundial stock represented by such opt outs equals or exceeds a certain amount, Defendants have the option to terminate the Settlement. As is standard practice in securities class actions, while the supplemental agreement is identified in the Settlement Stipulation, the terms were confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement. This agreement has no bearing on the fairness of the Settlement, and as such, this factor does not impact final approval. *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-

out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### D.    The Court Should Approve the Plan of Allocation

In addition to seeking approval of the Settlement, Plaintiffs request that the Court approve the proposed Plan of Allocation of Settlement proceeds. (ECF No. 101-2, at 6-8). The Plan of Allocation "must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (internal quotation omitted). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15-16. In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel").

The proposed Plan of Allocation ("Plan") is set forth in the Long Notice. (ECF No. 101-2, at 6-8). Lead Counsel developed the Plan with the assistance of a damages expert to distribute the Net Settlement Fund equitably among the members of the Settlement Class who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms that are approved for payment. Goldberg Decl. at ¶34. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* losses from sales made prior to revelation of the truth. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

The Claims Administrator will calculate claimants' "Recognized Losses" using the transactional information claimants provide with their Proofs of Claim. Each eligible Settlement

20

Class Member who submits a valid Proof of Claim form, including Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan. Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution.

In general, the Plan of Allocation bases Recognized Loss Amounts on the statutory formula for damages under Section 11(e) of the Securities Act, 15 U.S.C. §77k(e). Using the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss Amount for each Sundial common share purchased in or traceable to the Offering Documents issued in connection with the IPO.[3]

Lead Counsel believe that the proposed Plan provides a fair and reasonable method to allocate the Net Settlement Fund equitably among Settlement Class Members who suffered losses as a result of Defendants' alleged misconduct. Their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at 430. As of the date of this filing, no objections to the Plan have been received, suggesting that the Settlement Class also finds the Plan to be fair and reasonable. Goldberg Decl. at ¶34; *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan).

For each of the forgoing reasons, the Court should grant final approval to the Plan of Allocation as fair and adequate.

## IV.    CONCLUSION

For all the forgoing reasons, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes, approve the notice program as Plaintiffs executed it,

---

[3] Pursuant to the description in the Long Notice (ECF No. 101-2, at 7) referenced in the Stipulation (ECF No. 101, ¶5.1), persons who purchased after October 31, 2019 have no Recognized Loss.

grant final approval of the Settlement as fair, reasonable, and adequate, approve the Plan of

Allocation, and enter the [Proposed] Final Judgment.[4]


Dated: September 14, 2022                    Respectfully submitted,

                                             **LEVI & KORSINSKY, LLP**

                                             */s/ Adam M. Apton*
                                             Adam M. Apton
                                             Nicholas I. Porritt
                                             55 Broadway, 10th Floor
                                             New York, NY 10006
                                             Tel : 212-363-7500
                                             Fax : 212-363-7171
                                             Email: nporritt@zlk.com
                                             Email: aapton@zlk.com

                                             Elizabeth K. Tripodi
                                             1101 30th Street NW, Suite 115
                                             Washington, D.C. 20007
                                             Tel: (202) 524-4290
                                             Fax : 212-363-7171
                                             Email: etripodi@zlk.com


                                             **THE ROSEN LAW FIRM, P.A.**

                                             */s/ Jacob A. Goldberg*
                                             Jacob A. Goldberg
                                             Leah Heifetz-Li
                                             275 Madison Avenue, 40th Floor
                                             New York, NY 10016
                                             Tel: (215) 686-2817
                                             Fax: (212) 202-3827
                                             Email: jgoldberg@rosenlegal.com
                                             Email: lheifetz@rosenlegal.com
                                             ***Co-Lead Counsel for Plaintiffs and the
                                             Class***

---

[4] Plaintiffs' [Proposed] Final Judgment approving this settlement was previously filed as Ex. B to the Settlement Stipulation. (*See* ECF No. 101-6.)

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg

23