**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUNDIAL GROWERS INC. SECURITIES LITIGATION | File No. 1:19-cv-08913-ALC<br><br>This Document Relates To:<br>All Actions |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION**
**FOR AN AWARD OF ATTORNEYS' FEES AND**
<u>**REIMBURSEMENT OF LITIGATION EXPENSES**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL HISTORY ......................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.      A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ............................................................................ 4

II.     A Fee of One-Third is Consistent with Fees Awarded in Comparable Cases ...................... 5

III.    The Requested Fee is Reasonable Considering the Factors Applied Within this Circuit ..... 6

        A.      Plaintiffs' Counsel has Devoted Substantial Time and Labor to the Action ........... 7

        B.      The Complexity of the Action Supports the Requested Fee ................................... 8

        C.      The Risks of the Litigation Support the Requested Fee ........................................... 8

        D.      The Quality of Representation Supports the Requested Fee .................................. 11

        E.      In the face of formidable opposition, Lead Counsel zealously prosecuted the Action, enabling them to achieve the favorable Settlement and supporting the attorneys' fees that Plaintiffs request. The Requested Fee is Reasonable in Relation to the Settlement ....................................................................................................... 13

        F.      Public Policy Considerations Support the Requested Fee ...................................... 13

        G.      The Requested Attorneys' Fees Easily Satisfy a Lodestar Cross-Check ............... 14

IV.     Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained ........................................................................................................................... 16

V.      For those reasons, the Court should award Lead Counsel $30,150.65 to reimburse their out of pocket expenses. The Court Should Approve Compensatory Awards to Plaintiffs ....... 18

VI.     The Reaction of the Settlement Class to Date Supports the Requested Fee ...................... 19

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .................................................................................................................. 10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) .................................................................................................................. 10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................................... 3

*City of Providence v. Aeropostale, Inc.*,
  No. 11- cv-7132 (CM)(GWG), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014),
  *aff'd sub nom*. *Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015)............................. 4, 6, 7, 11

*Gauquie v. Albany Molecular Rsch., Inc.*,
  No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017) ............................................................ 5

*Gierlinger v. Gleason*,
  160 F.3d 858 (2d Cir. 1998)...................................................................................................... 12

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) .......................................................................................................... 6

*Hayes v. Harmony Gold Mining Co.*, No. 08 CIV. 03653 (BSJ)(MHD), 2011 WL 6019219
  (S.D.N.Y. Dec. 2, 2011),
  *aff'd*, 509 F. App'x 21 (2d Cir. 2013) ......................................................................................... 5

*Hicks v. Stanley*,
  No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .................................... 11

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
  *aff'd*, 272 F. App'x 9 (2d Cir. 2008)........................................................................................... 9

*In re Am. Bank Note Holographics, Inc., Sec. Litig*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ......................................................................................... 8

*In re Blech Sec. Litig.*,
  No. 94 Civ. 7696(RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000)........................................ 4

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 7895(DAB), 2011 WL 1899715  (S.D.N.Y. May 13, 2011)..................................... 14

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825(NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)........................... 13

*In re Deutsche Telekom AG Sec. Litig.,*
  No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 9, 2005).................................. 5, 13

*In re FLAG Telecom Holdings, Ltd.*,
  No. 02-cv 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................................................. passim

*In re IMAX Sec. Litig.,*
  No. 06 Civ. 6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012)........................................ 4

*In re Marsh & McLennan*, *Co., Inc. Sec. Litig.*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546  (S.D.N.Y. Dec. 23, 2009)........................................ 10

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010)........................................................................................ 13

*In re Telik*, *Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................................................... 7

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 1695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)........................................ 10

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................................................ 11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................................ 13

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)..................................................................................................................... 12

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................... 5

*Pearlman v. Cablevision Sys. Corp.*,
  No. CV 10-4992 (JS)(AKT), 2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019) ................................. 5

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................ 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................................... 4, 12

**Statutes**

15 U.S.C. §78u ................................................................................................................................. 7

Pursuant to Rules 23 and 54(d) of the Federal Rules of Civil Procedure, Lead Plaintiffs 998735 BC LTD and David Draiman (collectively, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for (i) an award of attorneys' fees in the amount of one-third (33⅓%) of the Settlement Amount ($2,333,333.33); (ii) reimbursement of necessary and reasonable litigation expenses of $33,773.28; and (iii) compensatory awards of $20,000 in aggregate (comprised of $10,000 to each Lead Plaintiff) pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

The proposed Settlement, providing for a cash payment of $7,000,000 in exchange for resolution of Plaintiffs' claims, represents a timely, fair, adequate, and reasonable outcome for the Settlement Class given the risks and expenses of continued litigation, including the risk of a smaller recovery years from now, or no recovery at all. Shortly after final approval, Settlement Class members will receive a cash payment, avoiding further delay, uncertainty, and risk.

Since the inception of the Action in 2019, Lead Counsel have not received any compensation, even as they zealously represented Plaintiffs and the Settlement Class. Plaintiffs, therefore, request that the Court award from the common fund attorneys' fees equal to one-third (33⅓%) of the Settlement Amount, or 2,333,333.33, for obtaining this favorable result for the Settlement Class. In zealously representing Plaintiffs and the Settlement Class, Lead Counsel confronted the material risk of non-payment of attorneys' fees and expenses they advanced.

An award of one-third of the Settlement Amount in attorneys' fees properly reflects the risks Lead Counsel assumed and the favorable result it achieved on behalf of Plaintiffs and the Settlement Class. An evaluation of the Second Circuit's *Goldberger* factors supports the attorneys' fee award Plaintiffs request. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir.

1

2000). Courts in this Circuit have repeatedly recognized the reasonableness of the fee request where, as here, the percentage of the common fund a plaintiff requests as attorneys' fees is less than counsel's total. Moreover, to date, no Settlement Class Member has objected to the fee request.

On Lead Counsel's behalf, Plaintiffs also seek reimbursement of $33,773.28 of out-of-pocket litigation expenses incurred in prosecuting this Action. These expenses were reasonable and necessary to prosecute and resolve Plaintiffs' claims successfully.

Finally, during the course of the Action, Plaintiffs have expended effort and time leading the Action on behalf of the Settlement Class. Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), therefore, Plaintiffs request service awards of $10,000 to each Lead Plaintiff. This request is reasonable and in line with awards granted in similar cases.

Lead Counsel zealously advocated for all Settlement Class Members. This included, among other things, an investigation that included thorough review of: (i) Sundial's public filings; (ii) presentations, press releases, media and analyst reports made by or about the Company; (iii) transcripts of Sundial's conference calls with analysts and investors; (iv) publicly available data relating to Sundial common stock; (v) review of other materials and data concerning the Company; and (vi) research of the applicable law with respect to the claims asserted in the Action, and the potential defenses thereto. Goldberg Decl.[1] at ¶¶ 18, 35. Lead Counsel's further investigation allowed them to amend the complaint, adding allegations relating to Sundial's revenue recognition. *Id.* at ¶19. Lead Counsel then vigorously opposed Defendants' motion to dismiss, which they were able to partially defeat because of these revenue

---

[1] Declaration of Jacob Goldberg in Support of (i) Plaintiffs' Final Approval Motion and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

recognition allegations. *Id.* at ¶22.

While the Parties litigated the Action, and without slowing the pace of their efforts in that regard, they began to explore whether it was possible to reach a negotiated resolution. *Id.* at ¶29. These efforts included a full-day mediation session with David Murphy, Esq., of Phillips ADR Enterprises. The Parties submitted confidential mediation briefs in connection therewith. *Id.* at ¶30. Following the mediation session, the Parties all accepted a mediator's proposal to settle this Action for $7,000,000.00. *Id.* at ¶31.

Against this backdrop, Lead Counsel requests a fee of one-third of the Settlement Amount ($2,333,333.33). As demonstrated below, the request for one-third of the Settlement Amount is well within the range of attorneys' fees typically awarded in securities class actions and is thoroughly supported by both case law and the facts of this case. Lead Counsel also seek reimbursement of their out-of-pocket litigation expenses in the amount of $33,773.28 which are billed at the cost actually incurred and paid by Lead Counsel, and which include expert and mediator fees, as well as fees for electronic research and foreign service of process. Therefore, and as elaborated below, Lead Counsel respectfully submits that the requested fees and expenses should be approved.

## FACTUAL AND PROCEDURAL HISTORY

In support of this Motion, Plaintiffs submit the Declaration of Jacob A. Goldberg ("Goldberg Declaration" or "Goldberg Decl.") incorporating it herein, in its entirety. Plaintiffs refer to the Goldberg Declaration for a description of the history of the Action, the nature of the claims asserted, the litigation and negotiations leading to Settlement, the risks and uncertainties of continued litigation, and a description of the services Lead Counsel provided for the benefit

3

of the Settlement Class.[2]

## ARGUMENT

**I.       A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases.**

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.,* 925, F.3d 63, 68 (2d Cir. 2019). This achieves equity, preventing "unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47. More, awarding attorneys' fees from a common fund counsel's efforts create "encourage[s] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*

Courts have recognized that, in addition to compensating counsel for services rendered, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, No. 11- cv-7132 (CM)(GWG), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015). The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund

---

[2] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to the Goldberg Decl.

cases. *See Gwozdzinnsky v. Sandler Assocs.*, 159 F.3d 1346 (2d Cir. 1998). Indeed, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005);[3] *see also In re Blech Sec. Litig.*, No. 94 Civ. 7696(RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) ("This court . . . continues to find that the percentage of the fund method is more appropriate than the lodestar method for determining attorney's fees in common fund cases."); *In re IMAX Sec. Litig.,* No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012) ("the percentage method continues to be the trend of district courts in the Second Circuit").The touchstone of the common fund doctrine's application is whether counsel's efforts confer a substantial benefit on the class. *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)) (Counsel's "efforts must confer a 'substantial benefit on the members of an ascertainable class."). Lead Counsel's efforts have conferred a substantial benefit - $7,000,000 in cash – on the Settlement Class, warranting payment of attorneys' fees from the common fund. Accordingly, the Court should award attorneys' fees from the common fund.

## II.      A Fee of One-Third is Consistent with Fees Awarded in Comparable Cases.

Many courts within the Southern District of New York have awarded fees of one-third or more in comparably complex securities class actions. *See, e.g.*, *Lea v. Tal Educ. Grp.,* No. 18-CV-5480 (KHP), 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (awarding attorney's fees in the amount of one-third (33.3.%) of a $7.5 million settlement); *Pearlman v. Cablevision Sys.*

---

[3] All internal quotations and citations are omitted unless otherwise stated

*Corp.*, No. CV 10-4992 (JS)(AKT), 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("it is very common to see 33% contingency fees in cases with funds of less than $10 million"); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, No. 1:12-CV-05329-SAS, 2016 WL 10519025, at *1 (S.D.N.Y. Mar. 14, 2016) (awarding attorneys' fee of 30% of $4.2 million settlement); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, No. 1:12-CV-05329-SAS, 2016 WL 10519025, at *1 (S.D.N.Y. Mar. 14, 2016) (awarding attorneys' fee of 30% of $4.2 million settlement); *Hayes v. Harmony Gold Mining Co*., No. 08 CIV. 03653 (BSJ)(MHD), 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (approving attorneys' fee of one-third of the $9 million settlement amount); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 NRB, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (awarding 28% of $120 million settlement).

Accordingly, the one-third percentage fee requested here is consistent with fees awarded this District and the other courts within the Second Circuit.

### III.   The Requested Fee is Reasonable Considering the Factors Applied Within this Circuit.

In *Goldberger*, 209 F.3d at 50, the Second Circuit set the following criteria for district courts to consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage common fund approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Each of these factors support

Lead Counsel's requested fee.

### A. Plaintiffs' Counsel has Devoted Substantial Time and Labor to the Action.

Lead Counsel devoted significant time and effort prosecuting this litigation and achieving the Settlement, supporting the requested fee. ¶35. For example, Lead Counsel thoroughly investigated Plaintiffs' claims, reviewing press releases, news articles, transcripts, and other public statements issued by or concerning Defendants, researching reports issued by financial analysts concerning Sundial's business and financial performance, and reviewing and analyzing Defendants' filings with the U.S. Securities and Exchange Commission ("SEC"). *Id.* Lead Counsel also interviewed witnesses with personal knowledge of the allegations in the Complaint. *Id.* These efforts enabled Lead Counsel to draft two amended complaints and partially defeat Defendants' motion to dismiss. Through the course of the litigation, Lead Counsel also consulted with damages experts and expended significant time engaging in settlement discussions, including drafting a mediation statement, analyzing Defendants' mediation statement, preparing for and participating in an all-day mediation overseen by Mr. Murphy, and negotiating and drafting the Settlement Stipulation and related settlement documents. (¶¶29-31, 35.) In short, Lead Counsel zealously prosecuted this Action on behalf of Plaintiffs and the Settlement Class, resulting in a recovery of 12.1% of the Settlement Class's best-case, maximum recoverable damages. ¶33.

The legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will be necessary to respond to Settlement Class Members' inquiries and conclude the claims process with a motion to distribute the Net Settlement Fund to Settlement Class Members. Lead Counsel will seek no additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% as attorneys' fees, considering time and effort expended thus far and remaining work to oversee claims process and distribution), *aff'd,* 674

F. App'x 37 (2d Cir. 2016).

The time and effort Lead Counsel devoted to the Action secured the $1.3 million Settlement, supporting the reasonableness of the fee request.

**B.  The Complexity of the Action Supports the Requested Fee.**

Securities class action litigation is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re FLAG Telecom Holdings, Ltd.*, No. 02-cv 3400, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). This factor supports the award that Lead Counsel request.

This Action involved complex and hotly disputed issues of liability, loss causation, and damages. Prosecuting the Action required not only skill and dedication but focus to understand the complex substance of this case. *City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."). Indeed, Defendants implicitly recognized this complexity by collectively retaining Sherman & Sterling LLP and Goodwin Procter, LLP, two of the country's preeminent law firms, which have extensive specialized expertise in the relevant areas of law. Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

**C.  The Risks of the Litigation Support the Requested Fee.**

"Courts have repeatedly recognized that 'the risk of litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008). Indeed, "[T]he risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable fee. *Goldberger*,

209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

Courts in this Circuit have recognized that plaintiffs in class actions, particularly in securities class actions, face significant risks and uncertainties of success. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("[C]lass actions confront even more substantial risks than other forms of litigation."); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (securities class actions in particular are "notably difficult and notoriously uncertain."); *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Plaintiffs in this Action faced material risks that are common to securities class actions. Establishing liability, maintaining class certification, and recovering damages for the Class was far from certain. ¶¶37-42.

Further, courts have described as "misplaced" attorneys' confidence that they can predict

9

with any degree of certainty the outcome of litigation. *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971). A risk to counsel and plaintiff alike exists that a court may reject a settlement only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.* Indeed, in many cases, including some of Lead Counsel's cases, attorneys pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. Lead Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield little or no recovery and leave Plaintiffs' Counsel uncompensated for their significant investment of time and expenses.  Courts within the Second Circuit recognize that such risk favors an award of attorneys' fees. *See, e.g.*, *In re Am. Bank Note Holographics, Inc., Sec. Litig*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

In undertaking that responsibility, Lead Counsel dedicated appropriate resources to prosecuting the Action and funded the expenses necessary to prosecute and to resolve the Action. ¶¶45-49. With an average lag time of several years for a case like this to conclude, the

10

financial burden on Lead Counsel was greater than those for firms paid on an ongoing basis. *See Flag Telecom*, 2010 WL 4537550, at *27. Indeed, Lead Counsel received no compensation from this case during the litigation and have incurred $33,773.28 in out-of-pocket expenses in prosecuting this action for the benefit of the Settlement Class. ¶46.

More, while Plaintiffs remain confident of their claims, their ability to prove their claims was far from certain. As detailed in the Goldberg Declaration, Defendants continue to challenge the Complaint's allegations concerning the inflation of the second quarter of 2019 – the precise allegation that the Court found stated a claim. ¶39. Defendants also maintain that they would be able to establish negative causation as a matter of law because they would be able to show that the decline of Sundial's stock was consistent with that of similar companies in an "annus horribilis" for the cannabis industry. *Id.* Plaintiffs recognize the strength of Defendants' arguments and understood the material risk that the Court could dismiss the Complaint at the summary judgment. More, with respect to damages, as the litigation progressed to class certification and summary judgment, Defendants would advance arguments that could materially reduce, if not eliminate, Plaintiffs' damages. ¶41.

The Settlement provides a guaranteed, near-team recovery to Sundial investors without having to incur substantial costs and engage in prolonged litigation through class certification, discovery, summary judgment, trial and if applicable, subsequent appeals.

The risks Lead Counsel assumed of failing to establish liability or damages supports the attorneys' fee award Plaintiffs request.

### D. The Quality of Representation Supports the Requested Fee.

The best evidence of the quality of representation Lead Counsel provided is the recovery it achieved in light of obstacles presented. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *Global Crossing*, 225

F.R.D. at 467. Here, the Settlement provides a substantial recovery of $7 million – representing 12.1% of the Settlement Class's best-case, maximum recoverable damages. ¶33. This percentage recovery exceeds the 1.8% median settlement value in 2021 for all securities class actions. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at pp. 23-24 (January 25, 2022). ¶33 n.2.

Lead Counsel respectfully submits that the quality of their efforts in the Action, together with their substantial experience in securities class actions and commitment to providing the Settlement Class with the best possible representation, provided leverage necessary to negotiate the Settlement. *See* Ex. 6, Rosen Law Firm Resume, and Ex. 7, Levi & Korsinsky Law Firm Resume.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See*, *e.g.*, *Veeco*, 2007 WL 4115808, at *7 (Among factors supporting award of requested attorneys' fees was that defendants were represented by "one of the country's largest law firms."); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV.5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd,* 272 F. App'x 9 (2d Cir. 2008) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by accomplished attorneys from Sherman & Sterling LLP and Goodwin Procter, LLP with highly-skilled securities practitioners who vigorously represented the interests of their clients.

Lead Counsel's zealous prosecution of the Action in the face of formidable opposition supports the attorneys' fee that Plaintiffs request.

### E.  The Requested Fee is Reasonable in Relation to the Settlement.

"In determining whether the Fee Application is reasonable in relation to the settlement amount, the Court compares the Fee Application to fees awarded in similar securities class-action settlements of comparable value." *In re Marsh & McLennan*, *Co., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695(CM), 2007 WL 4115808, at *4 (S.D.N.Y. Nov. 7, 2007) (noting that the fee awarded is "consistent with fees awarded in a similar class actions settlements of comparable value"). As discussed above, the fees requested here are well within the range of percentage fee awards in comparable securities class action cases.

### F.  Public Policy Considerations Support the Requested Fee.

The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, it is respectfully submitted that courts should encourage meritorious private lawsuits such as this one. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).

Courts within the Second Circuit have reasoned that if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *FLAG Telecom*, 2010 WL 4537550, at *29. Specifically, "[i]n order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who

13

defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005)); *see also Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur only if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (Private securities actions promote securities laws' objectives, but "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."). The integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here. *See In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC'").

**G. The Requested Attorneys' Fees Easily Satisfy a Lodestar Cross-Check.**

To ensure the reasonableness of a fee awarded under the percentage method, the Second Circuit encourages a "crosscheck" against counsel's lodestar. *See City of Providence*, 2014 WL 1883494, at *13. That analysis confirms the reasonableness of the percentage of the fund Plaintiffs request as attorneys' fees. *See Goldberger*, 209 F.3d at 50.

14

To perform a lodestar cross-check, a court engages in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each timekeeper spent on the case by each person's reasonable hourly rate, and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work. *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagements, the skill of the attorneys, and other factors"). Performing the lodestar cross-check here results in a 3.67 multiplier, and therefore confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Plaintiffs' Counsel has expended a total of 843.33 hours in the prosecution of this Action for a lodestar of $670,257.75 at current hourly rates. *See* Goldberg Decl. Ex. 2 at ¶5; Ex. 3 at ¶5.[4] The hourly rates of Lead Counsel here range from $900 to $1000 for partners, $475 to $725 for other attorneys, and $325 to $375 for professional staff. Goldberg Decl. Ex. 2 at ¶5; Ex. 3 at ¶5. "In determining the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of services performed by counsel." *Telik,* 576 F. Supp. 2d at 589. In fact, "[p]erhaps the best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Id*. It is respectfully submitted that the hourly rates

---

[4] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *Hi-Crush*, 2014 WL 7323417, at *15 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (similar); *Telik,* 576 F. Supp. 2d at 589 n.10 (similar)

for attorneys and professional staff above are reasonable and customary within the securities class action bar.

Courts in the Second Circuit routinely award fees several times more than plaintiffs' counsel's lodestar. *See FLAG Telecom*, 2010 WL 4537550, at *26. Here, the requested fee award results in a multiplier of 3.48. Such a multiplier is well within the parameters used throughout district courts in the Second Circuit and constitutes additional evidence that the requested fee is reasonable. Awards of several times more than counsel's lodestar are commonly awarded within the Second Circuit. *See, e.g., Wal-Mart Stores*, 396 F. 3d at 123 (affirming a multiplier of 3.5); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *In re Deutsche Telekom AG Sec. Litig.,* No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (approving a fee of 28% of $120 million settlement, resulting in a 3.96 multiplier); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee of one-third of cash-and-securities settlement, valued at approximately $11.5 million, resulting in an estimated 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

Given that the amount of attorneys' fees requested by Lead Counsel on behalf of Plaintiffs' Counsel ($2,333,333.33) represents a multiplier of 3.48 times their lodestar, Plaintiffs respectfully submit that the requested fee would be reasonable, whether calculated as a percentage-of-the-fund or in relation to Plaintiffs' Counsel's lodestar.

## IV.    Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained.

Lead Counsel also requests reimbursement of $33,773.28 of expenses incurred while prosecuting the Action. "Courts routinely grant the expense requests of class counsel." *In re Gilat*

*Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *18 (E.D.N.Y. Sept. 18, 2007) (quoting *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at *18 (E.D.N.Y. Sept. 30, 2005)); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *see also In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding payment of $100,000 in litigation expenses).

Lead Counsel's fee application includes a request for reimbursement of litigation expenses to Plaintiffs' Counsel, which were reasonably incurred and necessary to prosecute the Action and are billed at the actual out-of-pocket cost expended by Plaintiffs' Counsel. Plaintiffs' Counsel incurred a total of $33,773.28 in litigation expenses as set forth in the Goldberg Declaration. ¶46. This amount is comfortably below the $125,000 maximum expenses that the Notice informed potential Settlement Class Members that Lead Counsel may apply for, and to which to date there have been no objections. Goldberg Decl. at ¶34; Ex. 1 to Goldberg Decl. at ¶¶13-14. Of the total amount of requested expenses, the majority of the expenses Lead Counsel advanced were for professional services to investigators, consulting experts, and mediation services. The remaining expenses are attributable to the costs of, among other things, press releases to communicate to potential Settlement Class Members and legal and factual research. These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities class action. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement

17

fund."); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (awarding "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

For these reasons, the Court should award Lead Counsel $33,773.28 to reimburse their out of pocket expenses.

## V.    The Court Should Approve Compensatory Awards to Plaintiffs

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Courts in this Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at *19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370.

Plaintiffs dedicated time to the successful prosecution of the Actions by, among other things: reviewing pleadings filed in the Action, participating in discussions with Lead Counsel regarding the litigation and settlement negotiations, and evaluating and approving the Settlement. *See* Goldberg Decl., Ex. 5 (Declaration of David Draiman).[5] These are "precisely the types of

---

[5] Plaintiffs will supplement this Motion with a declaration from Trista Maldonado, the Owner/Director of Plaintiff 0998735 BC LTD, describing her service as Lead Plaintiff, which will be Exhibit 4 to the Goldberg Decl. Goldberg

activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). As compensation, this Court should grant Plaintiffs' requests in the amount of $20,000 in aggregate, comprised of $10,000 to each of the Lead Plaintiffs as reimbursement for their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.*; *see also In re Bank of Am. Corp.* 772 F.3d at 132 (affirming award of approximately $453,000 to representative plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *Gilat,* 2007 WL 2743675, at *19 (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation").

## VI.    The Reaction of the Settlement Class to Date Supports the Requested Fee.

The reaction of the Settlement Class to date supports the fee request. To date, the Claims Administrator has notified 4,665 potential Settlement Class Members either by mailed Postcard Notice or emailed a direct link to the Notice and Claim, informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund and up to $125,000 in expenses. Goldberg Decl. Ex. 1, ¶8. While the time to object to the fee and expense application does not expire until September 21, 2022 to date no objections have been received. Goldberg Decl. Ex. 1, ¶¶13-14. If any objections should be timely submitted, Lead Counsel will address them in reply papers.

---

Decl. ¶9.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) award Lead Counsel reasonable attorneys' fees in the total amount of one third of the Settlement Amount (or $2,333,333.33); (b) reimburse Lead Counsel for expenses and costs in the amount of $33,773.28; and (c) compensate Plaintiffs for services rendered to the Settlement Class in the amount of $10,000 to each Lead Plaintiff. A proposed order is being contemporaneously submitted as an exhibit to the Notice of Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation.

DATED:  September 14, 2022

Respectfully Submitted,
**LEVI & KORSINSKY, LLP**

/s/ Adam M. Apton
Adam M. Apton
Nicholas I. Porritt
Max E. Weiss
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapont@zlk.com
Email: nporritt@zlk.com
Email: mweiss@zlk.com

Elizabeth K. Tripodi
1101 30th Street NY, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: (212) 363-7171
Email: etripodi@zlk.com


**THE ROSEN LAW FIRM, P.A.**

s/ Jacob A. Goldberg
Jacob A. Goldberg
Leah Heifetz-Li
275 Madison Ave, 40th Floor
New York, NY 10006

20

Tel: (215) 686-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: lheifetz@rosenlegal.com


***Co-Lead Counsel for Plaintiffs and the Class***

21

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Jacob A. Goldberg
Jacob A. Goldberg

22