**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE SUNDIAL GROWERS INC. SECURITIES LITIGATION | Master File No. 1:19-cv-08913-ALC<br><br>This Document Relates To:<br><br>All Actions |

**DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS**

I, Jacob A. Goldberg, declare the following to the best of my knowledge pursuant to 28 U.S.C. §1746: [1]

1.    I am an attorney duly licensed to practice law in New York and before this Court. I am a partner of the law firm of The Rosen Law Firm, P.A. ("Rosen Law"), together with Levi & Korsinsky, LLP ("Levi & Korsinsky") court-appointed Lead Counsel for Lead Plaintiffs 998735 BC LTD and David Draiman (collectively, "Lead Plaintiffs" or "Plaintiffs") and the Settlement Class in this litigation ("Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto. I have thirty (30) years of experience, focusing on securities class actions, corporate fiduciary duty cases, and ERISA class actions.

2.    I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated December 2, 2021 and filed December 3, 2021. (ECF No. 101.)

1

Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs. I set forth herein relevant facts concerning the Action against Sundial Growers Inc. ("Sundial" or the "Company"), Torsten Kuenzlen, James Keough, Edward Hellard, Greg Mills, Gregory Turnbull, Lee Tamkee, and Elizabeth Cannon (the "Individual Defendants"), and Defendants Cowen and Company, LLC, BMO Nesbitt Burns Inc., RBC Dominion Securities Inc., Barclays Capital Canada Inc., CIBC World Markets Inc., Scotia Capital Inc. (collectively the "Underwriter Defendants" and with the Company and Individual Defendants, collectively, "Defendants"). I also set forth herein relevant facts supporting both that the Settlement is fair, reasonable, and adequate and Plaintiffs' requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable.

3.    The Settlement provides for a cash payment by and on behalf of Defendants in the amount of $7,000,000 in exchange for full releases of Plaintiffs' claims, completely resolving the Action.

4.    On June 23, 2022, the Court entered an order, preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members ("Preliminary Approval Order", ECF No. 105).

5.    Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to The Rosen Law Firm, P.A. and Levi & Korsinsky, LLP of one-third of the Settlement Fund (or $($2,333,333.33), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $33,773.28, and service awards to Plaintiffs, totaling $20,000.

6.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.").

7.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Declaration of Jacob A. Goldberg on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Goldberg Fee Decl.").

8.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Declaration of Adam M. Apton on behalf of Levi & Korsinsky, LLP Concerning Attorneys' Fees and Expenses ("Apton Fee Decl.").

9.      <u>Exhibit 4</u> will be a true and correct copy of the Declaration of Trista Maldonado, the Owner/Director of Plaintiff 0998735 BC LTD. ("Maldonado Decl."). Ms. Maldonado has been unavailable for the past week to execute her declaration. Plaintiffs will supplement their filing to provide her declaration as soon as possible.

10.     Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the Declaration of David Draiman ("Draiman Decl.").

11.     Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume").

12.     Attached hereto as <u>Exhibit 7</u> is a true and correct copy of the firm resume of Levi & Korsinsky, LLP ("Levi & Korsinsky Firm Resume").

13.     Attached as <u>Exhibit 8</u> is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

14.     Attached as Exhibit 9 is a true and correct copy of the Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review, published by NERA on January 25, 2022 ("NERA Report").

**Procedural History**

15.     This Action commenced on September 25, 2019, with the filing of a putative class action on behalf of persons who purchased or otherwise acquired Sundial securities pursuant and/or traceable to Sundial's Offering Documents issued in connection with Sundial's IPO, in a case captioned *Huang v. Sundial Growers Inc., et. al.*, 19-cv-08913 ("Huang Action") (ECF No. 1).

16.     On November 1, 2019, the related action *Gulacsy v. Sundial Growers Inc., et. al.*, 19-cv-10157 ("Gulacsy Action") was filed, alleging substantially similar facts and claims against the same defendants.

17.     On December 20, 2019, the Court consolidated the Huang Action and the Gulacsy Action into the consolidated putative class action, captioned *In re Sundial Growers Inc. Securities Litigation*, Master File No. 19-cv-08913-ALC (S.D.N.Y.) ("Action"), appointed 0998735 BC LTD and David Draiman as lead plaintiffs ("Lead Plaintiffs" or "Plaintiffs"); and appointed the Rosen Law Firm, P.A. and Levi & Korsinsky, LLP as co-lead counsel ("Lead Counsel") (ECF No. 14.)

18.     Upon their appointment, Plaintiffs, through Lead Counsel, further investigated the claims in this action by, among other things, reviewing public information about Sundial such as United States Securities and Exchange Commission ("SEC") filings, press releases, news articles, transcripts, and other public statements issued by or concerning Defendants. We also reviewed research reports and notes of financial analysts concerning Sundial's business and financial performance. With the help of expert consultants, we performed economic, pricing, and damages

analyses. Most importantly, we retained an investigator to locate witnesses, and spoke with witnesses who had knowledge of how Sundial recognized revenue for its IPO Offering Documents.

19.     On February 18, 2020, in light of findings of new evidence from continued investigation and with Defendants' consent and the Court's approval, Plaintiffs filed an amended complaint. (ECF No. 50.)

20.     On April 9, 2020, Defendants filed a letter requesting a pre-motion conference in connection with their anticipated motion to dismiss. (ECF No. 62.)  On April 14, 2020, Plaintiffs filed their responsive letter, stating that by April 30, 2020, they intended to file a second amended complaint, adding additional, material facts they had uncovered since filing the amended complaint. (ECF No. 63.) Plaintiffs filed the Second Amended Consolidated Complaint ("Complaint"), the operative complaint in this Action, on April 30, 2020. (ECF No. 66.)

21.     On May 27, 2020, Defendants filed their motion to dismiss. (ECF Nos. 69-71). On June 23, 2022, Plaintiffs filed their opposition. (ECF Nos. 72-73). On July 14, 2020, Defendants filed their reply. (ECF No. 74.)

22.     On March 30, 2021, the Court denied in part and granted in part Defendants' motion to dismiss on the record, sustaining the Complaint's claim under Section 11 of the Securities Act of 1933 ("Act"), 15 U.S.C. §77(k) but dismissing the claim under Section 12 of the Act, 15 U.S.C. §77(l). (ECF No. 79).

23.     On May 14, 2021, Defendants filed their answers to the Complaint. (ECF Nos. 88-89).

24.     On June 1, 2021, the Parties appeared for an initial pretrial conference. The Court entered a civil case management plan and scheduling order (ECF No. 92).

25.     On August 27, 2021, the Parties informed the Court that they had reached a settlement in principle. (ECF No. 93.)

26.     On December 3, 2021, Plaintiffs moved for preliminary approval of the Parties' proposed settlement and notice program. (ECF Nos. 98-101.)

27.     On June 23, 2022, the Court preliminarily approved the settlement and scheduled a final settlement hearing for October 12, 2022. (ECF No. 105.)

### Nature of the Allegations in the Complaint

28.     Sundial produces and distributes cannabis in Canada. The Complaint alleges that, in advance of its Initial Public Offering ("IPO"), Defendants made material false statements and omissions in Sundial's Registration Statement and Prospectus (the "Offering Documents"). Specifically, the Complaint alleges that Defendants: (1) affirmatively misstated revenue estimates for the second quarter 2019, violating accounting standards and the Company's own accounting policy on revenue recognition, and (2) omitted that a customer sought to return a material amount of Sundial's total second quarter 2019 sales.

### Settlement Negotiations and Terms

29.     In June 2021, while continuing to litigate the Action, the Parties agreed to mediate resolution of the Action. On August 10, 2021, the Parties participated in a mediation session via Zoom with Mr. David Murphy of Phillips ADR, a nationally-recognized mediator with substantial experience mediating securities fraud class action cases.

30.     In advance of the mediation, the Settling Parties prepared and exchanged detailed mediation statements, including their respective analyses of damages and loss causation.

31.     After a full day of arm's-length negotiations on August 10, 2021, on the day after the mediation, August 11, 2021, the Parties accepted the mediator's proposal to exchange a full

release of all claims against all Defendants from all Settlement Class Members that do not exclude themselves in exchange for $7,000,000. On August 24, 2021, the Parties executed a term sheet, broadly setting forth the terms of the Settlement. On August 27, 2021, the Parties alerted the Court to the Settlement in principle (ECF No. 93) and on August 30, 2021, the Court ordered a stay of the Action, pending its consideration of Plaintiffs' anticipated motion for preliminary approval of the Settlement (ECF No. 94). The Parties then finalized Settlement terms in the December 2, 2021, Stipulation of Agreement of Settlement ("Stipulation"). (ECF No. 101.).

32.    On December 3, 2021, Plaintiffs moved the Court for the entry of an order preliminarily approving settlement and establishing notice. (ECF Nos. 98-101.)  On June 23, 2022, the Court entered the Preliminary Approval Order. (ECF No. 105.)

33.    The Settlement provides for a cash payment of $7,000,000 to pay the Settlement Class's claims. Under the best-case scenario – assuming Plaintiffs overcome all the obstacles noted below and Defendants do not prevail on any of their arguments – Plaintiffs' maximum potentially recoverable class wide statutory damages are $58 million. The $7 million Settlement therefore represents 12.1% of the Settlement Class's best-case, maximum recoverable damages.[2] If the Court grants final approval of the Settlement, Plaintiffs and all Settlement Class Members who remain in the Class will forever release their claims against Defendants that were alleged or could have been alleged in this Action.

34.    Requests for exclusion and objections to the Settlement must be received by September 21, 2022. To date, neither the Claims Administrator nor Rosen Law has received any requests for exclusion or any objections to any aspect of the Settlement, including the Settlement,

---

[2] This percentage recovery exceeds the 1.8% median settlement value in 2021 for all securities class actions. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at pp. 23-24 (January 25, 2022) (Exhibit 9 hereto).

itself, the Settlement Class, the Plan of Allocation, or payment of attorneys' fees and expenses from the Settlement Fund. Ex. 1 ¶¶13-14. The Long Notice, as the Court approved it in the Preliminary Approval Order, describes the Plan of Allocation. (ECF No. 101-2, at 6-8); *see also* Ex. 1, Ex. A, at 5-8. With Court appointed Claims Administrator SCS, Rosen Law and Levi & Korsinsky formulated the Plan of Allocation for distributing the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged revelation of the truth. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiffs).

**<u>Complexity, Expense and Likely Duration of the Litigation</u>**

35.     Over the course of this litigation, on behalf of Plaintiffs and the Settlement Class, Rosen Law and Levi & Korsinsky devoted significant time and effort prosecuting this action, including, among other work:

- investigating and analyzing the allegations in preparing complaints in the Action, including, among other means:
  - reviewing press releases, news articles, earnings call transcripts, and other public statements issued by or concerning Defendants;
  - researching reports issued by financial analysts concerning Sundial's business and financial performance;
  - extensive review and analyses of Defendants' filings with the SEC;
  - engaging a damages consulting expert to analyze damages;

- o   retaining a private investigator to locate witnesses and conduct interviews; and

- o   interviewing witnesses with personal knowledge of the facts alleged in the Complaint.

- analyzing and responding to Defendants' pre-motion to dismiss letter after the filing of the First Amended Complaint;

- continuing the investigation described above, resulting in the Complaint;

- defeating, in part, Defendants' Motion to Dismiss;

- consulting with expert consultants on damages in connection with Plaintiffs' claims to prepare for settlement negotiations;

- engaging in good faith, arm's-length negotiations, leading to the Settlement, including:

  - o   negotiating the mediator;

  - o   drafting Plaintiffs' mediation statement;

  - o   analyzing Defendants' mediation statement;

  - o   analyzing Defendants' financial status regarding the source of funding the potential settlement;

  - o   preparing for and participating in an all-day mediation overseen by Mr. Murphy;

  - o   negotiating and drafting the Settlement Stipulation and related settlement documents;

- preparing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and related documents;

- working with consulting experts to prepare the Plan of Allocation; and

- overseeing the notice process that the Court approved.

36.     Thus, before entering into the Settlement, Lead Counsel and Lead Plaintiffs had a thorough understanding of the strengths and weaknesses of their case.

**Risks of Continued Litigation**

37.     Without a Settlement, Plaintiffs face protracted and expensive litigation that could drag the Action on for years, with no guarantee of matching or exceeding the recovery provided by the Settlement.

38.     While Plaintiffs and Lead Counsel believe that Plaintiffs' claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving and collecting a greater recovery. The Settlement provides for a cash payment of $7,000,000. This case presents material risks that Plaintiffs and the Settlement Class might recover nothing at all – or substantially less than the Settlement Amount – if the case proceeded.

39.     The Court stated on the record that it was denying Defendants' motion to dismiss because the Complaint's allegations concerning the inflation of revenue estimates for the second quarter of 2019 stated a claim. *See* Transcript of Proceedings re: Conference held on 3/30/2021 at 5-6 (ECF No. 85). Defendants continue to deny this allegation, and there is a risk that, with the benefit of evidence, they could convince the Court that it is not meritorious. Defendants also maintain that they would be able to establish negative causation as a matter of law because they would be able to show that the decline of Sundial's stock was consistent with that of similar companies in an "annus horribilis" for the cannabis industry. These issues create a risk that the Action would not survive a summary judgment motion by Defendants. There is also a material risk of non-certification or decertification of a class.

40.     Even if Plaintiffs established class certification and withstood summary judgment and pre-trial motions, they would have had to prepare for and obtain a verdict in a lengthy jury

trial on liability, litigate post-trial motions and bifurcated trials on damages, and withstand lengthy appeals.

41.    Establishing damages in cases such as this one is also always difficult. Disentangling the market's reaction to various pieces of news is complicated and requires intricate expert analysis and testimony. For example, Defendants argued that damages would be limited to declines in Sundial's stock price on the date of the filing of an action against the Company in New York state court, on September 9, 2019, rather than the September 25, 2019 filing in this action. This would limit recoverable damages by as much as 25%.  Damages may also have been limited because Plaintiffs first introduced their allegations concerning Defendants' revenue in February 2020, several months after the case was initially filed in September 2019. Damages could also be limited due to difficulty demonstrating that shares purchased after the IPO were traceable to the registration statement. Allegedly, one million unrestricted shares were released outside of the IPO less than two weeks after August 1, 2019. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts. If at any of these stages the Court or jury found Plaintiffs' damages expert and theory legally or factually insufficient, Plaintiffs would have spent much more time and money to end up with less than the $7,000,000 recovery, or nothing.

42.    Even if Plaintiffs could recover a larger judgment after a trial *and* recover from Defendants – which would be far from certain given the risks discussed herein – the additional time that it would take to litigate this case through trial, post-trial motions, and the appellate process could deny the Settlement Class any recovery for years, further reducing the value of such a judgment.

43.     The Settlement eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive a lower or no recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

44.     Lead Counsel are experienced attorneys with a track record of successfully litigating securities class actions throughout the country, including in the Southern District of New York. *See* Ex. 6, Rosen Law Firm Resume, and Ex. 7, Levi & Korsinsky Law Firm Resume. Lead Counsel negotiated with high caliber opposing counsel for Defendants: Shearman & Sterling, LLP and Goodwin Procter LLP, with deep experience defending similar actions. Given these factors, Lead Counsel believe that the Settlement is fair, adequate, and reasonable and urge this Court to approve it.

**Lead Counsel's Fee Request is Justified**

45.     Lead Counsel have worked diligently to achieve the Settlement, expending 843.33 hours for a lodestar value of $670,257.75. Ex. 2 ¶ 5; Ex. 3 ¶5. The attorneys' fees Plaintiffs request is a 3.48 multiplier of Lead Counsel's lodestar. The rates Lead Counsel billed for their attorneys are comparable to peer plaintiff and defense firms litigating similar matters. *See* Ex. 8, Peer Firms Billing Rates.

46.     Lead Counsel spent a total of $33,773.28 in unreimbursed expenses in connection with the prosecution of this Action. Ex. 2 ¶ 6; Ex. 3 ¶6. To date, Lead Counsel have received no compensation for their efforts on behalf of Plaintiffs and the Settlement Class.

47.     From the outset, Lead Counsel embarked on a complex, expensive, and likely lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiffs and the Settlement Class. In undertaking that responsibility, Lead Counsel

ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require.

48.     The hourly rates that Lead Counsel used to arrive at their lodestar calculation are current. Ex. 2 ¶ 5; Ex. 3 ¶5.

49.     Lead Counsel's work will not end with the final approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the October 12, 2022, Settlement Hearing, overseeing the claims process, and distributing the Settlement Fund to Settlement Class Members.

**<u>The Requested Award to Plaintiffs is Justified</u>**

50.     For approximately two years, Plaintiffs have spent time leading this action on behalf of the Settlement Class. Plaintiffs request an amount of $20,000 (comprised of $10,000 to each Plaintiff) to compensate them for their time and service and as an incentive for representative plaintiffs to come forward in cases in the future.

51.     Plaintiffs have devoted a substantial amount time to this case, including time reviewing pleadings, briefs, and other materials filed in this Action, and communicating and corresponding with Lead Counsel regarding the litigation and settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of September, 2022, in Jenkintown, Pennsylvania.

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg

13

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Jacob A. Goldberg
Jacob A. Goldberg