**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUNDIAL GROWERS INC. SECURITIES LITIGATION | Case No. 1:19-cv-08913-ALC <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR *CY PRES* DISTRIBUTION OF RESIDUAL SETTLEMENT FUNDS AND DIRECTING CASE CLOSURE** |

## I.     INTRODUCTION

On behalf of themselves and the Class, Plaintiffs David Draiman and 998735 BC LTD (collectively, "Plaintiffs"), hereby move for distribution of the $9,837.06 in residual settlement funds to the Securities Investor Protection Corporation ("SIPC") and closure of the fund and case.   As set forth in the accompanying Declaration of Paul Mulholland in Support of Plaintiffs' Unopposd Motion to Contribute Remaining Settlement Fund to A Non-Sectarian Charity ("Mulholland Decl.") and pursuant to the Distribution Order (ECF 123), the Claims Administrator Strategic Claims Services ("SCS"), carried out an initial distribution of the Net Settlement Fund to Class Members, distributing substantially all the available funds. *See* Mulholland Decl., ¶¶2-4.

After administration costs and attorney's fees and expenses, $4,691,216.07 remained to distribute to eligible class members. *See* Mulholland Decl., ¶3. On January 9, 2024, SCS sent Distribution payments to 607 Authorized Claimants in the amount of $4,691,216.07 who received a check more than $10.00.  *Id.* These checks expired on July 7, 2024. *Id.*  Most of these distribution payments have been cashed and the remaining funds in the account total $9,837.06, which was principally from a federal tax return. *Id.* at ¶4. SCS calculates that only approximately 100 of 607 Authorized Claimants would receive a second distribution over $10, rendering further distribution of the remaining $9,837.06. *Id.* at ¶5.

Given the *de minimus* amount of funds remaining and the estimated costs associated with a second distribution, Co-Lead Counsel and SCS have determined that it is not cost-effective to administer a Second Distribution. Therefore, Plaintiffs seek the Court's approval to distribute all remaining funds to *cy pres* recipient the SIPC, located at 1667 K Street N.W., Suite 1000, Washington, DC 20002, and direct that the fund and case be closed.

1

## II.      THE SETTLEMENT AGREEEMNT AND DISTRIBUTION

On December 2, 2021, the Parties signed the Stipulation of Settlement. ECF 101. The Stipulation provides that if any funds remain after the initial distribution and if further distributions are not economically feasible, "then such balance shall be contributed to a non-sectarian charity or any not-for-profit successor of it chosen by Lead Counsel, with the approval of the Court." ECF 101 at ¶7.7.

On June 6, 2023, Plaintiffs filed their Motion for Distribution of Funds. ECF 118.  The Court granted Plaintiffs' motion on November 30, 2023, adopting SCS's recommendations to accept claims, including the otherwise valid claims filed after the deadline, and to reject wholly ineligible or otherwise deficient claims. ECF 123.  On January 9, 2024, SCS sent Distribution payments to 607 Authorized Claimants in the amount of $4,691,216.07 who received a check more than $10.00. Mulholland Decl., ¶3.

As of the time of this filing, the remaining funds in the account total $9,837.06 principally from a federal tax refund. *Id.* at ¶4. SCS calculates that only approximately 100 of 607 Authorized Claimants would receive a second distribution over $10, rendering further distribution of the remaining $9,837.06 economically infeasible. *Id.* at ¶5.

Now, Pursuant to the Stipulation, Plaintiffs seek the Courts approval to direct distribution of the remaining Settlement funds in the amount of $9,837.06 to the SIPC, a nonprofit 501(c)(3).

## III.     THE COURT SHOULD APPROVE A *CY PRESS* DISTRIBUTION TO THE INVESTOR PROTECTION TRUST

As set forth above and pursuant to the Distribution Order, SCS carried out the initial distribution of the Net Settlement Fund to Class Members. Given the *de minimus* amount remaining in the fund, Plaintiffs and SCS have determined that it is not cost-effective to administer

a Second Distribution. Accordingly, Plaintiffs respectfully request approval of a *cy pres* distribution to the SIPC of unclaimed settlement funds.

### A. Legal Standard

"In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds. In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 161 (2d Cir. 2005); see also *Johnson v. Rausch, Sturm, Israel, Enerson & Hornick, LLP*, 333 F.R.D. 314, 322 (S.D.N.Y. 2019) *citing Reyes v. Buddha-Bar NYC*, 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010) ("Under the *cy pres* doctrine, the best application of unused settlement funds is to donate them to an organization whose purpose is closely related to the purpose of the lawsuit."); *see also Hyland v. Navient Corp.*, 48 F.4th 110, 121 (2d Cir. 2022) (Distributions pursuant to *cy pres* principles is well-established so long as class members benefit, even if indirectly, from the distribution.). *Cy pres* recipients may be identified after settlement approval and a determination that there are funds remaining for *cy pres* distribution. *In re Petrobas Secs. Litig.*, 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018).

### B. SIPC is an Appropriate *Cy Pres* Recipient

The Court should approve the SIPC as an appropriate *cy pres* recipient of the remaining settlement funds because it accounts for the nature of the lawsuit and the objectives of the Securities Act.

#### 1. Nature of the Lawsuit

The action alleged that the Defendants violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). Defendant Sundial is a licensed producer of cannabis in

3

Canada, which legalized recreational use by adults in late 2018. On July 5, 2019, the Company filed a Registration Statement on Form F-1, which was subsequently amended. Sundial launched its IPO on or about August 1, 2019 and filed a Prospectus on Form 424B4 for the sale of 11 million shares of common stock at $13.00 per share. Plaintiffs alleged that Defendants made materially false statements and omissions in the Registration Statement and Prospectus (the "Offering Documents"), including that the Defendants: (1) affirmatively misstated revenue estimates for the second quarter 2019, and (2) omitted that a customer sought to return a material amount of Sundial's total second quarter 2019 sales.

Plaintiffs sought to recover compensable damages caused by the Defendants' alleged violations of the federal securities laws and to pursue remedies under the Securities Act.  Providing a *cy pres* award to the proposed beneficiary to foster independent and unbiased investor protection efforts is in line with the nature of this lawsuit and the interests of the Settlement Class.

### 2.  Objective of the Statute

The federal securities laws grew out of the public outcry for reform of the securities markets after the Great Depression and Congress sought to regulate capital markets to protect investors. The Securities Act was passed to ensure that investors have financial and other important information about securities that are being sold to the public. It bans the use of fraud, deceit, and misrepresentation in the sale of the securities and holds many parties strictly liable for material misstatements and omissions in the registration statement. The purpose of strict liability under the Securities Act is to incentivize thorough due diligence and accurate disclosure of information in public securities offerings, by holding issuers, underwriters, and other involved parties directly liable for any material misstatements or omissions in the registration statement, even if they did not intentionally deceive investors.

Settlement Class Members purchased or otherwise acquired Sundial common stock in or pursuant and/or traceable to the offering documents issued in connection with the IPO, which they claim contained material misstatements, and were allegedly damaged thereby.  SIPC is an advocacy and investor education nonprofit that focuses on protecting investors by working to restore investors' cash and securities when their brokerage firm fails. The SIPC was created under the Securities Investor Protection Act as a non-profit membership corporation. SIPC oversees the liquidation of member firms that close when the firm is bankrupt or in financial trouble, and customer assets are missing. In a liquidation under the Securities Investor Protection Act, SIPC and the court-appointed Trustee work to return customers' securities and cash as quickly as possible. SIPC's efforts protect investors and help them recover their losses. Therefore, it is an appropriate *cy pres* recipient in the case.

Accordingly, Plaintiffs and the Settlement Class respectfully request that the Court approve the distribution of $9,837.06 to the SIPC.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion in its entirety.

DATED: December 28, 2024

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

_s/ Adam M. Apton_
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapont@zlk.com

_Co-Lead Counsel for Plaintiffs and the
Class_